UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
F I L E D

AUG 19 2022

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| Dennis Reynard Benson,<br>Plaintiff, | §<br>§<br>§   CIVIL ACTION NO.: 3:21-cv-00200<br>§ |
| v. | §<br>§ |
| Galveston County, et al<br>Defendants. | §<br>§   JURY DEMANDED |

## DEFENDANT EDWARD BENAVIDEZ'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE DISTRICT COURT:

Defendant, Edward Benavidez ("Benavidez"), asks the Court to render summary judgment against Plaintiff as authorized by Federal Rule of Civil Procedure 56, and in support of this Motion, would show the Court as follows:

### I.
### FACTUAL BACKGROUND

On July 11, 2019, Dennis Benson ("Benson") was arrested in the 405th District Courtroom in Galveston, Texas based on an active warrant related to a drug charge.[1] The bailiff arrested Benson and placed him in a conference room adjacent to the courtroom.

---

[1] Exhibit 1, p. 68

During this time Benson accessed and swallowed four ecstasy pills that he had in his pocket.[2]

While Benson was being transferred from the courtroom to the jail, he advised the transferring deputy that he had swallowed the ecstasy and that it was starting to affect him physically. For this reason, the decision was made not to process Benson into the jail, but instead to transfer him, with a deputy, to the University of Texas Medical Branch (UTMB) Emergency Room for appropriate treatment.

Benson was secured by shackles on his legs and handcuffs on his wrists. Upon arrival at UTMB, Benson was assigned to an examining room where a deputy secured one of the handcuffs to the hospital bed rail. Benson remained secured with both legs shackled and one wrist cuffed to the hospital bed.

At approximately 5 p. m. Deputy Benavidez arrived at UTMB to relieve the prior deputy and assumed the duty of guarding Benson. Benavidez was outfitted in his official uniform and equipped with a handheld radio and firearm.[3]

Before arrival, Benavidez had been advised that Benson had ingested the drugs, but nothing more about him. Benavidez's impression of Benson after having observed him was that he was highly intoxicated and agitated.

Benavidez was the only deputy guarding Benson. Benson remained handcuffed to the bedrail and with his leg shackles in place.

---

[2] *Id.* at pages 69-70.
[3] The remainder of the factual statements are sourced from Exhibit 2, the Affidavit of Edward Benavidez, unless specified otherwise.

Benson advised Benavidez of his need to go to the restroom. Benavidez removed the handcuff from Benson's wrist, but Benson's legs remained shackled as Benavidez walked him to a restroom down the hall. When Benson was through, Benavidez escorted him back to the examination room and replaced the handcuff on Benson's wrist.

Shortly thereafter, Benson again requested access to the restroom. Following the same procedure as before, Benavidez removed the handcuff and escorted Benson to the restroom down the hall. Upon return to the examination room, and before Benavidez could reapply the handcuff, Benson physically shoved Benavidez and began his escape. The handcuffs remained attached to the bed.

Benson is taller and faster than Benavidez. Benavidez collected himself and began physical pursuit of Benson. Benson ran into an enclosed room or closet where Benavidez tried to physically tackle and restrain him. The two physically scuffled before Benson overcame Benavidez and ran from the room. Benavidez, though physically taxed by the scuffle, renewed his pursuit of Benson.

At some point the shackle on Benson's left leg came loose so that Benson was unhindered from taking full running strides. Benson can be seen in a video captured by a surveillance camera running out of the emergency room entrance at full stride with Benavidez several strides behind him.[4]

During this time Benavidez removed his gun from his holster for the first time and accidentally discharged a round, but not aimed at Benson. Benson was not struck.

---

[4] Exhibit 3

Benavidez's radio can be seen dragging on the ground behind him as he continued pursuit of Benson.[5]

A second surveillance video captures Benson increasing his lead as he ran down the ramp as Benavidez continues to chase him with his gun drawn.[6]

Throughout the chase Benavidez had repeatedly shouted commands to Benson to stop, and to get on the ground. Benson never complied.

A third video from a bystander's cell phone captures the events leading up to the shooting. Despite repeated commands to stop, to get on the ground, and finally warnings that Benavidez would shoot, Benson crawled over two walls to gain entrance to a parking garage.[7] There were numerous cars in the parking lot.

Benson had fallen after scaling the second wall and was getting up and leaning on a car. Benavidez believed that Benson was resting with the intent to reengage him physically, or to continue to run into the parking garage to further his escape. When Benson failed to comply with the last command to stay down, Benavidez fired a shot purposefully targeting Benson's leg in an effort not to kill him. Benson was struck in the leg. Benavidez approached and began applying first aid. Despite having been shot, Benson continued to squirm as if in an effort to continue to escape from Benavidez. Eventually, medical personnel arrived and returned Benson to the emergency room for treatment of the gunshot wound.

---

[5] *Id.*
[6] Exhibit 4.
[7] Exhibit 5.

4

At no point from the time that Benson first shoved Benavidez did Benson comply with any of Benavidez's verbal commands, nor did Benson ever surrender.

On February 18, 2020, Benson plead guilty to Texas Penal Code § 38.06(c), Escape While Arrested/Confined, a third-degree felony.[8]

Benson filed suit against Galveston County, Sheriff Trochesset, and Benavidez in state court. The matter was timely removed. Benson's active pleading is his First Amended Complaint (Dkt. 12). In the First Amended Complaint Benson's specific claims against Benavidez are: Count 1 Assault (State Tort Law); Count 2 Intentional Infliction of Emotional Distress (State Tort Law); Count 3 Negligence (State Tort Law); Count 4 § 1983 Excessive Force; and Count 5 § 1983 Retaliation in Violation of the *First Amendment*.

## II.
## GROUNDS FOR SUMMARY JUDGMENT

Benavidez files this motion for summary judgment on all of Plaintiff's claims based on then following grounds:

1. All of Benson's claims are barred by *Heck v. Humphrey*;

2. The force was authorized by Texas Penal Code § 9.52;

3. Benson's claims are barred by qualified immunity;

4. Alternatively, Counts 1-3 against Benavidez are barred by the Texas Tort Claims Act; and

---

[8] Exhibit 1, pages 21-22; Exhibit 6.

5

5. Alternatively, Benson cannot recover under Count 5 for retaliation in violation of the First Amendment.

## III.
## SUMMARY JUDGMENT EVIDENCE

Benavidez relies upon the following evidence to support his motion for summary judgment:

**EXHIBIT 1** Excerpts of the deposition of Dennis Benson

**EXHIBIT 2** The affidavit of Edward Benavidez

**EXHIBIT 3** Video of Benson's escape from the emergency room

**EXHIBIT 4** Video of Benson running down the ramp from the emergency room

**EXHIBIT 5** Video of the final stages of the pursuit and the gunshot

**EXHIBIT 6** Benson's conviction for Escape, Texas Penal Code 38.06(c)

## IV.
## BENSON'S CLAIMS ARE BARRED BY *HECK V. HUMPHREY*

In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the United States Supreme Court prohibited civil tort actions, including § 1983 claims, if the claims pursued by the plaintiff would necessarily challenge the validity of the plaintiff's criminal conviction. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint

6

must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

The Supreme Court went on to further explain why, suits such as this must be dismissed.

> We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

*Id.*

Benson's conviction for escape was not appealed, reversed, expunged, or invalidated.

Texas Penal Code 38.06(a)(1) specifies that "[a] person commits an offense if the person escapes from custody when the person is: (1) under arrest for, lawfully detained for, charged with, or convicted of an offense...." Further, Benson plead guilty to felony escape as he was "confined or lawfully detained in a secure correctional facility or law enforcement facility...." *Id.* at (c)(2).

The fact that Benson's escape occurred at UTMB is of no significance. It has long been the law in Texas that a detainee who escapes after transfer to a medical facility, while still subject to custody, can be charged with felony escape for an escape from the medical facility. *See Harrell v. State*, 743 S.W.2d 229 (Tex. Crim. App. 1987)(an escape conviction was upheld after an unguarded inmate escaped from the V. A. Hospital where he had been transferred for treatment); *Davis v. State*, 345 S.W.3d 71 (Tex. Crim. App. 2011)(upholding a conviction for felony escape from Parkland Hospital while in the

7

custody of the Dallas County Jail); and *Kamara v. State*, 2007 Tex. App. LEXIS 9404* (Tex. App. – Houston [1st Dist.], 2007)(upholding an escape conviction of a detainee who attempted escape after having been transferred to Ben Taub Hospital for medical treatment). Accordingly, actual presence in a correctional facility is not required to uphold a conviction under Tex. Penal Code 38.06(c).

The fact that Benson was guilty of escape while confined is significant to the force that was authorized to be used against him. The law in Texas applicable to the use of force in the prevention of an escape from custody is:

> The use of force to prevent the escape of an arrested person from custody is justifiable when force could have been employed to effect the arrest under which then person is in custody, **except that a guard employed by a correctional facility or a peace officer is justified in using any force, including deadly force, that he reasonably believes to be immediately necessary to prevent the escape of a person from the correctional facility.**

Tex. Penal Code § 9.52. (Emphasis added).

Benavidez, a deputy assigned to the Galveston County Jail, and a certified peace officer, was authorized by § 9.52 in his use of force to prevent detainee Benson's escape.

Benson's claims rest on the argument that the use of force was unjustified, but ignore that Benavidez's decisions were justified under Tex. Penal Code § 9.52. Benson's claims of unlawful force in this suit would negate an element of the crime that he committed, escape from a correctional facility. Accordingly, Benson's claims are inconsistent with his plea of guilty to Tex. Penal Code § 38.06(c), escape from a correctional facility.

8

The reasoning behind *Heck* has been extended to dismissal of state law tort claims as well. *See Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000) ("Hainze's state law assault and battery claims against the officers are premised on the same basis advanced in support of his constitutional claim. For the above noted reasons, we conclude that these causes of action also were properly dismissed." *Id*. at 799); *Cooper v. Trent*, 551 S.W.3d 325 (Tex. App.- Houston [14th Dist.] 2018, pet. denied) ( dismissing intentional infliction of emotional distress claims, among others, because, if true, would "undermine the validity of her criminal conviction". *Id*. at 337.); *Dove v. State*, 560 S.W.3d 376 (Tex. App.- Houston [14th Dist.] 2018, no pet.) ("The facts alleged in appellant's petition, if true, would undermine the validity of his criminal conviction. Therefore, unless appellant proves that his conviction has been reversed, overturned, expunged or invalidated in some manner his claim is not legally cognizable. *Id*. at 379.). As Benson's state law tort claims-assault, intentional infliction of emotional distress, and negligence-all arise out of Benavidez's use of force, they all are inconsistent with his guilty plea to felony escape from confinement. As such, they too must be dismissed based on *Heck*.

Because Benavidez was authorized to use "any force, including deadly force, that he reasonably believe[d] to be immediately necessary to prevent the escape of a person from the correctional facility," then the claims asserted in this lawsuit would undermine the validity of Benson's plea of guilty to felony escape from confinement. For these reasons, all of Benson's claims against Benavidez are *Heck*-barred.

## V.

## THE FORCE WAS AUTHORIZED UNDER TEX. PENAL CODE § 9.52

As noted above, Benson had been arrested in the courtroom of the 405th District Court based on an outstanding warrant related to a drug charge. But for his swallowing the ecstasy, he would have been processed into the Galveston County Jail. While he was physically located at UTMB, he was still under confinement and was a pretrial detainee at the time of his escape. Pretrial detainees are "those who have been charged but who have not yet been tried on the charge." *Bell v. Wolfish*, 441 U.S. 520, 523, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

The fact that Benson was a pretrial detainee does not mean that he posed a lesser security risk than a convicted inmate.

> There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order.... As a result, those who are detained prior to trial may in many cases be individuals who are charged with serious crimes or who have prior records. They also may pose a greater risk of escape than convicted inmates.

*Id.* at 546 N. 28.

Benavidez, as a deputy assigned to the Galveston County Jail, had the duty to prevent Benson's escape. Tex. Code of Crim. Proc. Art. 16.21. Further, Benavidez was authorized to use "any force, including deadly force, that he reasonably believe[d] to be immediately necessary to prevent the escape of a person from the correctional facility" pursuant to Tex. Penal Code 9.52.

A similar factual scenario occurred in *Brothers v. Klevenhagen*, 28 F.3d 452 (5th Cir. 1994). In that case sheriff's deputies who had transported a detainee from the Jersey City, Texas Police Department to the Harris County Jail, shot and killed the detainee as he escaped after being unloaded from the vehicle. Both were sued claiming that excessive force was used.

> Both defendants testified in depositions that they shot Brothers in order to prevent his escape. They knew that he was unarmed, and they had no reason to believe that he was a danger to them or anyone else. It is undisputed that the deputies acted in accordance with... Tex. Penal Code § 9.52, which authorizes the use of deadly force to prevent escape from the jail without regard to whether the person is dangerous. In granting summary judgment for the defendants, the district court held that the evidence supported the conclusion that the force used under the circumstances was necessary to prevent Brother's escape and was not unconstitutionally unreasonable.

*Id.* at 454.

The Fifth Circuit upheld the grant of a summary judgment in favor of the defendants, although based on the pre-*Kingsley* standard.

In 2015, the United States Supreme Court set forth a series of "considerations" that bear on the evaluation of the use of force against a pretrial detainee.

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injuries; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015).

Whether taken individually, or as a whole, the considerations support Benavidez's use of force against Benson. The context of the situation is important to the analysis as

well. Benson was under the influence of ecstasy. Benavidez was smaller, and slower than Benson. Benson had already pushed Benavidez with enough force to knock him backwards before he ran out of the examination room. Additionally, Benson physically overcame Benavidez in their struggle in the enclosed room. Benson had knocked Benavidez's radio off so Benavidez did not have the ability to seek additional assistance. Benson was no longer restrained by the shackles on his feet. Benavidez had no cuffs to restrain Benson had Benavidez caught him. Benson had gained access to the parking garage where he could have attacked bystanders or taken hostages; or, stolen a vehicle with which he could either flee or use as a weapon against Benavidez. This context must be evaluated without the benefit of hindsight. "We must assess the reasonableness of the force from the prospective of a jailer who is often forced to make split-second decisions in tense situations." *Fairchild v. Coryell Cnty.*, 40 F.4th 359 (5th Cir. 2022) 2022 U.S. App. LEXIS 19467* at *5.

With regard to the need for the force and the amount of the force used, Benavidez was authorized under Tex. Penal Code § 9.52 to use deadly force to prevent Benson's escape. Further, and also important is that while Benavidez used what is classified as deadly force, he targeted Benson's leg for the reason that he *did not want* to kill him. Also important is that Benavidez never wanted to shoot Benson, as he had innumerable opportunities to do so. Benavidez fired only after Benson had crossed two concrete walls to separate them and had gained access to the parking garage.

Benson suffered complications from the gunshot wound, but he was not killed based on Benavidez's decision not to take a lethal shot.

Benavidez made numerous verbal commands for Benson to stop, and to get on the ground. Benson was also warned that Benavidez would shoot. Benavidez had tried to physically recapture Benson only to be overpowered. These were all efforts to temper the amount of force used to recapture Benson.

Benavidez was concerned that Benson posed a threat to the general public after accessing the parking garage, where he could have attacked bystanders, taken hostages, or stolen a vehicle.

Lastly, and importantly, Benson was actively escaping from confinement and never surrendered or stopped his attempted escape.

All of these considerations weigh in favor of Benavidez.

Based on the statutory authority of Tex. Penal Code § 9.52, and the considerations outlined in *Kingsley*, the use of force was justified.

## VI.
### BENSON'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is

13

doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2005) (Per Curium). "Qualified immunity protects actions in the 'hazy border between excessive and acceptable force.'" *Id.* at 18.

> 'The reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. And [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (Per Curium).

"[Q]ualified immunity represents the norm', and courts should deny a defendant immunity only in rare circumstances." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). "'If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). "Consequently, '[q]ualified immunity is justified unless *no* reasonable officer could have acted as [the defendant officers] did here, or *every* reasonable officer faced with the same facts would *not* have [acted as the defendant officers did].'" *Tucker v. City of Shreveport*, 998 F. 3d 165, 174 (5th Cir. 2021)(emphasis in original).

In the present case, qualified immunity is supported by Tex. Penal Code § 9.52, as well as by *Brothers v. Klevenhagen*, 28 F. 3d 452 (5th Cir. 1994). Based on these authorities, Benavidez is protected by qualified immunity.

However, Benson bears the burden of proof that qualified immunity does not apply. "When invoked, the plaintiff must show that (1) a constitutional violation (2) was (a) objectively unreasonable (b) under clearly established law. It is the plaintiff's responsibility to show that a defendant is not entitled to qualified immunity." *Blanchard-Daigle v. Geers*, 802 Fed. Appx. 113, 119 (5th Cir. 2020) (Per Curium).

## VI.
## COUNTS 1-3 AGAINST BENAVIDEZ ARE BARRED BY THE TEXAS TORT CLAIMS ACT

Count 1-3 in Benson's First Amended Complaint (Dkt. 12) generally allege assault, intentional infliction of emotional distress, and that Benavidez was negligent. However, Counts 1-3 against Benavidez are barred by Texas Civil Practice & Remedies Code § 101.106(f), which reads:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the Plaintiff files amended pleadings dismissing the employee and naming the governmental unit as Defendant on or before the 30th day after the date the motion is filed.

The Texas Supreme Court has elaborated that any suit brought against a government employee related to work within the scope of his job performance is one in his official capacity, and in reality is a suit against the government. *Texas Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 357. (Tex. 2013).

15

> As discussed in *Franka*, 'public employees... have always been individually liable for their own torts, even when committed in the course of employment, and suit may be brought against a government employee in his individual capacity' to the extent the employee is not entitled to official immunity. However, in enacting subsection (f), the Legislature 'forclose[d] suit [under the TTCA] against a government employee in his individual capacity if he was acting within the scope of employment.' This furthers one of the primary purposes of both the TTCA generally and section 101.106 in particular- to protect governmental employees acting in the scope of employment.

*Id.* at 357.

The Texas Supreme Court elaborated on the test to determine whether claims are considered within an employee's official capacity.

> The allegations in [plaintiff's] petition that relate to the officers stem from their allegedly improper conduct in the course of arresting [plaintiff] on two separate occasions. [Plaintiff] did not allege any independent course of conduct by the officers not intended to serve any purpose of Harris County. ... Accordingly, we hold that [plaintiff's] suit is based on conduct within the general scope of the officer's employment." "Because [plaintiff's] suit against the officers was based on conduct within the general scope of their employment and could have been brought under the TTCA against the County [plaintiff's] suit is considered to be against the officers in their official capacities only. As we held in *TAGO*, such a suit [is] *not* a suit against the employee; it is, in all but name only, a suit against the governmental unit.

*Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (Per Curium) (emphasis in original) (citations omitted).

Here, Benavidez was on duty performing his official duties as a deputy assigned to the Galveston County Jail at the time of all relevant actions. Guarding Benson, as well as attempting to prevent his escape fell within Benavidez's job responsibilities. Benson's claims in Counts 1-3 must be dismissed against Benavidez.

## VII.

## BENSON CANNOT RECOVER FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT

Benson's Count 5 (DKT 12, ¶¶ 139-158) alleges that Benavidez retaliated against Benson in violation of the 5th Amendment. More specifically, Benson pleads that Benavidez shot him because Benson taunted him while "fleeing". (Dkt. 12, ¶148). First, there is no evidence that Benavidez discharged his gun because Benson taunted him. As Benavidez explains in his affidavit, he fired the shot as a last resort because of his concern that Benson would escape and presented a threat to the public.

Benson cannot meet the legal standards to sustain a claim of retaliation. As the Fifth Circuit has explained, "'[t]o prevail on a *first amendment* retaliation claim, plaintiff must demonstrate that (1) he was engaged in constitutionally protected activity, (2) the officers' action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against plaintiff's exercise of constitutionally protected conduct.'" *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017).

Escape from lawful confinement and the refusal to obey a peace officer's commands are not protected speech.

> The magistrate judge held both that Welsh's refusal to comply with officers' orders was not constitutionally protected speech and that he had not shown that the defendants used force on him due to his alleged exercise of his right to free speech. As the magistrate judge noted, both Welsh's own complaint and an authenticated video of this incident showed that he refused to comply with the

17

officers' orders. The magistrate judge further concluded that Welsh had not shown that the defendants were retaliating against him because he engaged in protected speech, but instead that the adverse action of which he complained was taken because he 'repeatedly disobeyed orders and threatened institutional security.

*Welsh v. Correct Care Recovery Sols.*, 2021 U.S. App. LEXIS 3687* at *12 (5th Cir. 2021).

For these reasons, summary judgment should be granted against Benson on Count 5.

## VIII.

## CONCLUSION AND PRAYER

Based on the evidence and arguments presented in this motion, Defendant Benavidez prays that summary judgment will be granted against Benson on all claims, and afford Benavidez all relief to which he is justly entitled in law and equity.

Respectfully submitted,

/s/ R. Lasswell

Genevieve Bacak McGarvey
Attorney-in-Charge
Federal Bar No. 11272
SBOT: 01487525
gbmcgarvey@mapalaw.com
Bryan R. Lasswell
Federal Bar No. 15715
SBOT: 00784450
brlasswell@mapalaw.com
McLeod, Alexander, Powel &
Apffel, P.C.
802 Rosenberg- P.O. Box 629
Galveston, Texas 77553
(409) 763-2481
(409) 762-1155 Facsimile

**ATTORNEYS FOR DEFENDANT
EDWARD BENAVIDEZ**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was filed electronically on the 19th day of August, 2022, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfied the requirements of Fed. R. Civ. P. 5(b)(2)(D).

/s/ Bryan R. Lasswell
Bryan R. Lasswell