IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

DENNIS REYNARD BENSON            )
    Plaintiff,                   )
                          ) CIVIL ACTION NO.:
v                                )  3:21-cv-00200
                          )
GALVESTON COUNTY, ET AL          )
    Defendants.                  )

ORAL DEPOSITION

HENRY TROCHESSET

AUGUST 26, 2022

VOLUME 1

**ORIGINAL**

ORAL DEPOSITION OF HENRY TROCHESSET, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on August 26, 2022, from 1:32 p.m. to 2:31 p.m., before Jill M. Vaughan, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine. The witness appeared at Greer, Hertz and Adams, LLP, One Moody Plaza, 18th Floor, Galveston, Texas. The deposition was taken pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

AdvancedONE LEGAL
(866) 715-7770
advancedONE.com

```
 1                         APPEARANCES

 2

      FOR THE PLAINTIFF:
 3
            Mr. Jarvis Rice
 4          ATTORNEY AT LAW
            3306 Manzanita Lane
 5          Manvel, TX 77578
            409-888-0006
 6          attorneyjarvisrice@gmaial.com

 7

 8    FOR THE DEFENDANT GALVESTON COUNTY:

 9          Mr. Joseph R. Russo, Jr
            Ms. Jordan Elton
10          GREER HERZ, ADAMS, L.L.P.
            One Moody Plaza
11          18th Floor
            Galveston, TX 77350
12          409-797-3200
            jrusso@greerherz.com
13

14    FOR THE DEFENDANT BENNAVIDES:

15          Mr. Bryan Lasswell
            Ms. Genevieve McGarvey
16          MCLEOD, ALEXANDER, POWEL & APFFEL
            802 Rosenberg
17          Galveston, TX 77550
            409-763-2481
18          brlasswell@mapalaw.com

19

20    ALSO PRESENT:

21          Eddie Benevidez, Defendant

22          Dennis Benson, Plaintiff

23          Sade Winn, mother of plaintiff

24

25
```

BENSON vs GALVESTON COUNTY, et al.                          Page 3
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1                           INDEX                        PAGE

 2      Appearances .............................         2

 3      HENRY TROCHESSET

 4           Examination by Mr. Rice  ............        4
             Examination by Mr. Lasswell .........       75
 5           Further Examination by Mr. Rice .....       84

 6      Signature and changes  .................         85
        Reporter's Certificate ..................        87
 7

 8                        EXHIBIT INDEX

 9      NO.        DESCRIPTION                           PAGE

10      EXHIBIT 1  Article 16.21 Criminal Procedure      76

11      EXHIBIT 2  Section 9.52 Penal Code .........      79

12      EXHIBIT 3  Corrections Manual ..............      81

13

14

15

16

17

18

19

20

21

22

23

24

25
```

BENSON vs GALVESTON COUNTY, et al.                          Page 4
HENRY TROCHESSET - VOL.1, 08/26/2022

1            THE COURT REPORTER:  Any stipulations?
2                 HENRY TROCHESSET
3      having been first duly sworn, testified as follows:
4            MR. LASSWELL:  I do have one -- just so we
5      don't be too disruptive, can one objection, you know,
6      be good for both defendants?
7            MR. RICE:  That's fine.
8                     EXAMINATION
9      BY MR. RICE:
10       Q.    What is your full legal name?
11       A.    Henry Andrew Trochesset.
12       Q.    Could you spell that for the record, please.
13       A.    H-e-n-r-y, A-n-d-r-e-w, T as in Tom,
14      r-o-c-h-e-s-s-e-t.
15       Q.    Thank you, sir.  Have you -- what is your
16      date of birth, excuse me?
17       A.    June 14th, 1964.
18       Q.    Have you ever given a deposition or had a
19      deposition taken before?
20       A.    Yes.
21       Q.    You understand that you're under oath?
22       A.    Yes.
23       Q.    And that means you're sworn to tell the
24      truth?
25       A.    Yes.

1    Q.   Even though we're here in this office, your
2  answers will have the same effect as if we where in
3  the court.  Do you understand that?
4    A.   Yes.
5    Q.   Are you prepared to answer my questions
6  today?
7    A.   Yes.
8    Q.   Are you taking any medications or suffering
9  from any illnesses that might prevent you from
10  understanding my questions?
11    A.   No, sir.
12    Q.   Okay.  If you don't understand one of my
13  questions, will you just let me know; and I'll repeat
14  it for you?
15    A.   Yes, sir.
16    Q.   If you need to take a break at any time,
17  just let us know; and you'll be free to take a break.
18  Okay?
19    A.   Yes, sir.
20    Q.   Let me see, where are you currently employed
21  at, sir?
22    A.   Galveston County Sheriff's Office.
23    Q.   And what is your job title?
24    A.   Sheriff of Galveston County.
25    Q.   And could you give me, like, your primary

1   job duties?

2       A.    Overseeing the Galveston County jail, patrol

3   the unincorporated areas of the county, the security

4   of the courthouse.

5       Q.    **How long have you worked there, sir?**

6       A.    December will be 39 years.

7       Q.    **Okay.  Where did you work before that?**

8       A.    Four Brothers Boat Works.

9       Q.    **Okay.  Where did you attend high school?**

10      A.    Hitchcock.

11      Q.    **Did you go to any college or trade school or**

12  **anything like that?**

13      A.    I've got some other education but as far as

14  -- I'm not sure what you're -- question.

15      Q.    **So as far as like a college, trade school,**

16  **anything like that, any kind of continuing education?**

17      A.    Well, continuing education; FBI National

18  Academy, the Law Enforcement Command College, TCOLEs,

19  jail school and law enforcement school.

20      Q.    **What year did you initially apply for the**

21  **sheriff academy?**

22      A.    Could you rephrase the question?

23      Q.    **What year did you, like, first start the**

24  **sheriff academy before you became a sheriff, like,**

25  **just the basic academy?**

1     A.   I was working at the sheriff's office when I
2  went to the basic peace officer academy.
3     **Q.   Okay.  Okay.  And could you explain the**
4  **stages of the academy?  When you went there, were**
5  **there different stages that you had to complete, or**
6  **how long did it last?**
7     A.   I was working 12-hour shifts in the jail.
8  Oh, man, that was 37 or so years ago.  Maybe eight
9  months --
10    **Q.   Okay.**
11    A.   -- at night.
12    **Q.   Okay.  So just kind of moving forward, I**
13 **know it's long -- so how long is sheriff academy now**
14 **for current deputies?**
15    A.   Can I give you some clarifying?
16    **Q.   Yes, sir.**
17    A.   There's a law enforcement academy --
18    **Q.   Okay.**
19    A.   -- peace officer academy.  We don't have
20 what you call a sheriff's office academy.
21    **Q.   Okay.**
22    A.   To get your peace officer's license, the
23 sheriff's office doesn't have one.  They have to go on
24 their own.
25    **Q.   Okay.**

1      A.    When I attended, we were having an academy
2   37 years ago.
3      Q.    Okay.  Okay.  So there's no academy now,
4   they attend a police academy to get licensed to be a
5   sheriff deputy?
6      A.    Correct.
7      Q.    Okay.  And do you know how long that academy
8   lasts?
9      A.    No.
10     Q.    Do you know -- so at the academy -- or do
11  you know if there is any deadly force training that
12  goes on during the academy?
13     A.    Should be.
14     Q.    But you're not 100 percent sure?
15     A.    Again, I went 37 years ago or so.
16     Q.    Okay.  And I'm talking about the current
17  police academy.  You're not sure if there's any deadly
18  force training that goes on there?
19     A.    I don't know.
20     Q.    Okay.  So let's just, kind of, get to then
21  once that you're hired as a Galveston County Sheriff's
22  Office -- officer -- deputy, I mean, what kind of
23  training do they go through?
24     A.    When I was hired?
25     Q.    No currently, currently.  I'm sorry, let me

1   clarify.  I only asked you those first couple of

2   questions about when you were hired; but since you

3   said it was so long ago, we're just going to move on

4   and stick to the current requirements for the police

5   academy.  So -- or current requirements for sheriff

6   deputies.

7               So once you're hired currently as a

8   sheriff deputy, then what kind of training do they

9   undergo?

10       A.   Depends what division they're going into

11   within the agency.

12       Q.   Okay.  If you're just going to be a general

13   jailer that transports inmates back and forth to the

14   hospital, what kind of training do they go through?

15       A.   Jailer's certification.

16       Q.   Okay.  And is that through y'all, or is that

17   through someone else?

18       A.   Sheriff department teaches that course.

19       Q.   Teaches that course.  And jailer's -- can

20   you say that again?

21       A.   Certification.

22       Q.   Training.  And could you kind of explain to

23   me what goes on during that jailer's certification

24   training?

25       A.   I attended that training almost 39 years

BENSON vs GALVESTON COUNTY, et al.                    Page 10
HENRY TROCHESSET - VOL.1, 08/26/2022

1  ago.

2       Q.   So you haven't -- who is in charge for

3  creating the policy for that training?  Is it you?

4       A.   Correct.

5       Q.   Okay.  But you don't know what goes on in

6  that training currently?

7       A.   Each aspect, no, sir.

8       Q.   Okay.  Is there a probationary period for a

9  sheriff?

10      A.   A new hire has one-year probation.

11      Q.   Okay.  And during that probationary period,

12  are they tested on different aspects of the job?

13      A.   Do they have evaluations?

14      Q.   Yes, sir.

15      A.   Yes, sir.

16      Q.   Okay.  Kind of moving on to your policy

17  manual.  Who creates the policy manual for the county?

18  That the sheriff's -- the main -- they read, and

19  they're given it with all the policies in it they use

20  to enforce policy and things of that nature?

21      A.   I would oversee that policy.

22      Q.   And is that policy a manual -- does that

23  policy manual guide for deputies to perform their job

24  you would say?

25      A.   Yes.

BENSON vs GALVESTON COUNTY, et al.                        Page 11
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1        Q.   Are the deputies required to know the manual
 2   front and back?
 3        A.   No.
 4        Q.   Okay.  So then they're not required to know
 5   how to perform their job duties?
 6             MR. RUSSO:  Objection.
 7        Q. (By MR. RICE) Because that's what in the
 8   manual.
 9             MR. RUSSO:  Object to form.  Misstates
10   testimony.  Assumes facts not in evidence.
11        A.   They are required to know their job duties.
12        Q.   (By Mr. Rice) Okay.  Are they tested on the
13   policy manual before they're allowed to work?
14        A.   No.
15        Q.   Are they annually tested on the policy
16   manual --
17        A.   No.
18        Q.   -- every deputy?
19        A.   No.
20             MR. RUSSO:  Objection to form and vague.
21        Q.   (By Mr. Rice) When was the policy manual
22   last updated?
23        A.   There's a review of policy update as-needed
24   per policy.
25        Q.   Okay.  So you don't know when the last date
```

 1  the manual was updated completely?

 2      A.   We update each policy as-needed.

 3      Q.   Okay.  Just veer off, do you know when the

 4  use of force policy was updated last?

 5      A.   No.

 6      Q.   Okay.  Do you believe that there has been a

 7  lot that has happened lately pertaining to use of

 8  deadly force, say, in the last ten years, that would

 9  require update of your policy?

10           MR. LASSWELL:  Objection.

11           MR. RUSSO:  Objection to form.  Vague.

12  Ambiguous.  Assumes facts.

13      A.   A review of the policy doesn't always mean

14  that it will be changed.

15      Q.   (By Mr. Rice) Okay.  Do you happen to know

16  when the last time Deputy Benavidez was tested on

17  the policy?

18           MR. RUSSO:  Object to form.  It's vague,

19  ambiguous.

20      A.   No.

21      Q.   (By Mr. Rice) Do you believe

22  Deputy Benavidez was proficient in the policy of the

23  sheriff department?

24           MR. RUSSO:  Object to form.  Calls for

25  speculation.

BENSON vs GALVESTON COUNTY, et al.                    Page 13
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1        A.    Unknown.
 2        Q.    (By Mr. Rice) So you don't know if he was
 3   proficient or not?
 4        A.    In the policy?
 5        Q.    Yes.
 6        A.    Unknown.
 7        Q.    I'd just like to talk to you a little bit
 8   about your hiring process.  Who decides the hiring
 9   process for the sheriff department?
10        A.    I have deputies do background
11   investigations.  It goes up through the chain of
12   command and ultimately arrives on my desk.
13        Q.    Okay.  So you're overall responsible for the
14   hiring process of the sheriff department as the chief?
15        A.    I hire and fire.
16        Q.    Okay.  Does each chief get to decide their
17   own hiring process, or is there a standard process
18   that's been passed on from year to years?
19        A.    Correct.
20        Q.    Okay.  Do you know when that process was
21   implemented?
22        A.    No.
23              MR. RUSSO:  Object to form, vague.
24        Q.    (By Mr. Rice) Are there any state
25   requirements when it comes to your hiring process?
```

 1        A.    Yes.

 2        **Q.    What are those requirements?**

 3        A.    Background investigation, certain

 4   information that's needed, all have to be conducted.

 5        **Q.    Okay.  So are there any tests required to**

 6   **become a sheriff from your department that y'all**

 7   **issue?**

 8        A.    We have a written test.

 9        **Q.    Yes.  And is that written test, do you have**

10   **to pass it to become a sheriff?**

11        A.    No.

12        **Q.    Is there a grade on the test?**

13        A.    Yes.

14        **Q.    So you could fail that test and still become**

15   **a sheriff?**

16              MR. RUSSO:  Object to form.  You mean a

17   sheriff deputy or --

18        **Q.    (By Mr. Rice)Sheriff deputy, yeah, deputy.**

19        A.    It's more of a guide.

20        **Q.    Are you aware that they -- they issue**

21   **letters to people who -- who fail that test stating**

22   **that they have failed that test and they're not**

23   **eligible to be hired by the sheriff department and**

24   **they can try again six months later?**

25              MR. LASSWELL:  Objection, form.

```
 1              MR. RUSSO:  Object to form.  Misstates
 2   testimony, assumes facts.
 3        A.   Correct.
 4        Q.   (By Mr. Rice) So you are aware of that
 5   letter?
 6        A.   Yes.
 7        Q.   So there is a pass/fail requirement for that
 8   test, correct, to be hired?
 9              MR. RUSSO:  Object to form.  Asked and
10   answered.
11        A.   It's a guide.
12        Q.   (By Mr. Rice) It's a guide.  Okay.  Is that
13   test sort of kind of an aptitude test?  Does it test
14   whether you can kind of read, write, do basic
15   arithmetic?
16        A.   Correct.
17        Q.   Okay.  And you say if a deputy -- so what
18   happens if a deputy fails that test?
19        A.   It would go through his chain of command to
20   determine if he has the requirements needed to still
21   process forward to enter the agency.
22        Q.   Are there people who -- let me step back.
23              Every person that applies for a
24   sheriff deputy, are you able to hire them?
25        A.   Every deputy?
```

 1        Q.   Yeah, every deputy that applies, are you

 2   able to hire them?

 3        A.   No, sir.

 4        Q.   So do you think it's fair that a deputy who

 5   may have passed the test, satisfied all the

 6   requirements is not hired; and a deputy who failed the

 7   test is hired?

 8             MR. RUSSO:   Objection, calls for

 9   speculation, is incomplete, hypothetical.

10        A.   I don't know when that has occurred.

11        Q.   (By Mr. Rice) Okay.  We'll get to that.

12             Let's see, so have you ever hired

13   someone who has failed that test?

14        A.   Yes.

15        Q.   And when you hired -- when that person was

16   hired, was there any other qualified candidates who

17   passed the test that was not hired?

18             MR. RUSSO:   Object to form.  Calls for

19   speculation.

20        A.   I don't know.

21        Q.   (By Mr. Rice) What is the purpose of the

22   sheriff department giving that test?

23        A.   To see if they can read, write and

24   comprehend.

25        Q.   So if a person fails that test, what does

BENSON vs GALVESTON COUNTY, et al.                    Page 17
HENRY TROCHESSET - VOL.1, 08/26/2022

1   that tell the sheriff department?

2       A.   That he may have an issue with read, writing

3   and comprehending.

4       Q.   And is reading, writing and comprehending an

5   important part of being a sheriff deputy?

6       A.   Correct.

7       Q.   Okay.  Are you aware that Deputy Benavidez

8   failed that test?

9            MR. LASSWELL:  Objection, form.

10      A.   Yes.

11      Q.   (By Mr. Rice) When did you become aware of

12  that?

13      A.   Not long ago.  Time-wise, I can't remember.

14      Q.   Okay.  And as to your knowledge as of today,

15  Deputy Benavidez has never passed that test?

16           MR. RUSSO:  Object to form.  Misstates

17  testimony.

18      A.   I don't know that it was ever administered

19  to him.

20      Q.   (By Mr. Rice) Okay.  Let me just clear --

21  did you just say before there that you was aware he

22  failed the test?

23      A.   I meant, I don't know that it was ever

24  administered back to him.

25      Q.   Re-administered.  Okay.  I just want to

 1    clarify that.

 2                   Okay.  Have you ever hired a deputy

 3    as a friend -- as a favor to a friend of a family?

 4         A.   I don't know.

 5         Q.   You don't know if you've hired a sheriff

 6    deputy as a friend to a family -- as a favor for a

 7    friend to a family?  Meaning someone asked you, hey,

 8    could you hire him and you hired them?

 9                   MR. RUSSO:  Object to form.  Asked and

10    answered.

11         A.   I'm almost 30 people short today.  If you

12    called me today saying you've got somebody that would

13    be a good employee --

14         Q.   (By Mr. Rice) Okay.

15         A.   -- I would consider them.

16         Q.   Okay.  Are you aware that Freddie Poor was

17    contacted about a friend -- from a friend of a family

18    in regards to Deputy Benavidez?

19                   MR. RUSSO:  Object to form.  Calls for

20    speculation.  Assumes facts not in evidence.

21         A.   No, sir.

22         Q.   (By Mr. Rice) There is an email from a

23    family friend named Rose that was turned over as part

24    of your -- as part of your discovery from your

25    department that states that Mr. Poor was contacted on

BENSON vs GALVESTON COUNTY, et al.                    Page 19
HENRY TROCHESSET - VOL.1, 08/26/2022

1   behalf of her for Deputy Benavidez after he failed a

2   test.  You haven't seen that email?

3            MR. RUSSO:  Object to form.  Assumes facts

4   not in evidence?

5        A.   I cannot remember.  I'm sorry.

6        Q.   (By Mr. Rice) You cannot remember seeing the

7   email?

8        A.   I can't remember.

9        Q.   Okay.  Is the sheriff deputy background an

10  important part of them being hired?

11       A.   Correct.

12       Q.   What kind of background checks are performed

13  on sheriff deputies?

14       A.   I've never dealt in that area of the agency

15  as far as myself through my career, so I can't answer

16  that question.

17       Q.   What sort of crimes would disqualify a

18  person from becoming a sheriff deputy?

19       A.   Texas Commission on Law Enforcement, if it's

20  a Class B, my recollection it may be five to ten years

21  you have a pro -- prohibited from joining the agency

22  if you're convicted.

23       Q.   Okay.  And so is honesty a big part of

24  becoming a sheriff deputy?

25       A.   Yes, sir.

BENSON vs GALVESTON COUNTY, et al.                          Page 20
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1      Q.   What happens if you find out that a sheriff
 2   deputy may have lied on his application?
 3           MR. RUSSO:  Object to form.  Calls for
 4   speculation.
 5      A.   I don't know at this time.  I'd have to
 6   review that.
 7      Q.   (By Mr. Rice) So if a sheriff deputy lies on
 8   his application and honesty is a big part of becoming
 9   a sheriff deputy, you would have to review if he meets
10   those qualifications?
11           MR. RUSSO:  Object to form.  Calls for
12   speculation.  Incomplete hypothetical.
13      A.   That's the hypothetical part.  I don't know
14   did they lie intentionally or did they omit something.
15      Q.   (By Mr. Rice) Okay.  So if a deputy failed
16   to omit -- if you learned that a deputy failed to omit
17   something on the application, it could be a way where
18   they're allowed to resubmit that information and the
19   application be reviewed, correct?
20      A.   Could you repeat the question?
21      Q.   If you learned that a deputy may have failed
22   to omit something from the application, would they be
23   allowed to add that to their application once you
24   found out they had failed to omit it?
25           MR. RUSSO:  Object to form, vague.
```

BENSON vs GALVESTON COUNTY, et al.                          Page 21
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1        A.   That's so hypothetical.  You're saying they
 2   would -- repeat it one more time.
 3        Q.   (By Mr. Rice) Okay.  That's okay.  We'll
 4   come back, like, just -- and it will probably be
 5   easier.
 6             So what happens if a defendant lies
 7   about drugs on the application?
 8             MR. RUSSO:  Objection, form.  Calls for
 9   speculation.
10        A.   A defendant?
11        Q.   (By Mr. Rice) I mean, I'm sorry, what
12   happens if a deputy lies about drugs on the
13   application, the uses of drugs on the application?
14        A.   That would be a mark against them for the
15   hiring process, it should.
16        Q.   Okay.  Are you aware that Deputy Benavidez
17   was involved in a felony hit-and-run DWI case?
18             MR. LASSWELL:  Objection, form.
19        A.   I believe I've read it somewhere recently.
20        Q.   (By Mr. Rice) And that has just been brought
21   to your attention recently?
22             MR. LASSWELL:  Objection, form.
23        A.   Yes.
24        Q.   (By Mr. Rice) Is a felony hit-and-run DWI
25   case higher than a Class B misdemeanor?
```

 1            MR. RUSSO:  Object to form.  Incomplete,

 2    hypothetical.

 3        A.    A felony higher than a misdemeanor?

 4        Q.    (By Mr. Rice) Yes, sir.

 5        A.    Yes.

 6        Q.    Would a felony DWI hit-and-run be something

 7    that would disqualify a sheriff deputy from becoming a

 8    deputy?

 9            MR. RUSSO:  Object to form.

10        A.    Was he convicted?

11        Q.    (By Mr. Rice) Okay.  No, sir.  So have you

12    been made aware that there was an officer who was at

13    the scene who stated that Mr. Benavidez was clearly

14    intoxicated; and that officer called

15    Deputy Benavidez' father, who was a sergeant at

16    Galveston Police Department at the time,

17    Edward Benavidez, and had him come pick his son up

18    from the scene so there wouldn't be a charge?

19            MR. RUSSO:  Object to form.

20            MR. LASSWELL:  Object to form.  Assumes

21    facts not in evidence.

22        A.    I believe I may have read that recently.

23        Q.    (By Mr. Rice) And where did you read that

24    at?

25        A.    Through the paperwork with our attorney.

BENSON vs GALVESTON COUNTY, et al.                    Page 23
HENRY TROCHESSET - VOL.1, 08/26/2022

1       Q.   And where is that paperwork come from?

2            MR. RUSSO:  Object to form.  Don't answer

3    that.  Calls for privilege.

4            MR. RICE:  Privilege.

5       Q.   (By Mr. Rice) You stated that you have seen

6    that document, correct?

7            MR. LASSWELL:  Objection, form.

8       A.   I read information.

9       Q.   (By Mr. Rice) Did you -- have you read the

10   email that was sent from Freddie Poor outlining

11   everything that had happened; the failed test, the DWI

12   incident, another alleged incident that happened?

13           MR. LASSWELL:  Objection, form.

14           MR. RUSSO:  Object to form.  Assumes facts.

15      Q.   (By Mr. Rice)It was turned over in your

16   discovery as part o f your discoverable evidence.

17           MR. RUSSO:  Object to form.  Assumes facts

18   not in evidence.

19      A.   I don't remember.

20      Q.   (By Mr. Rice) Okay.  Are you aware that this

21   DWI incident came to light through the person who was

22   over internal affairs of Galveston Police Department?

23           MR. RUSSO:  Object to form.  Assumes facts

24   not in evidence.

25      A.   No.

1    Q.   (By Mr. Rice) Are you aware that that

2    person, who is now over internal affairs, was the

3    person who went to the scene and covered up the crime

4    for Officer Benavidez, Deputy Benavidez?

5              MR. LASSWELL:  Objection, form.

6              MR. RUSSO:  Object to form.  Assumes facts

7    not in evidence and misstates testimony and the

8    evidence.

9    Q.   (By Mr. Rice) Are you aware that the officer

10   who went to the scene and did not charge Deputy

11   Benavidez is now over the internal affairs of

12   Galveston Police Department?

13             MR. LASSWELL:  Objection, form.

14             MR. RUSSO:  Object to form.

15   A.   No, sir.

16   Q.   (By Mr. Rice) You are not aware of that?

17   A.   No, sir.

18             MR. RUSSO:  Same objection.

19   Q.   (By Mr. Rice) Are you aware that that letter

20   that -- or whatever evidence that you read, the

21   evidence was created by that particular officer?

22             MR. RUSSO:  Object to form.  Assumes facts

23   not in evidence.

24   A.   No, sir.

25   Q.   (By Mr. Rice) Are you aware that

BENSON vs GALVESTON COUNTY, et al.                    Page 25
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1   Deputy Benavidez applied for the Galveston Police
 2   Department?
 3       A.   I believe I may have read that somewhere
 4   too.
 5       Q.   Do you know why he was not hired by their
 6   department?
 7       A.   No, sir.
 8       Q.   So you read he applied, but you didn't read
 9   why he was not accepted?
10           MR. RUSSO:  Object to form.  Assumes facts
11   not in evidence.
12       A.   I can't remember if that was even on it.
13       Q.   (By Mr. Rice) Would it surprise you if he
14   was not accepted because the person over internal
15   affairs stated that he was the officer that had pulled
16   Deputy Benavidez over intoxicated and turned him over
17   to his parents?
18           MR. LASSWELL:  Objection, form.
19           MR. RUSSO:  Object to form.  Assumes facts.
20   Misstates evidence.
21       A.   I don't know how to answer that.
22       Q.   (By Mr. Rice) Is part of your legal duties
23   to prosecute any law enforcement officials -- or have
24   any law enforcement officials prosecuted if you are
25   made aware of crimes they may have committed?
```

```
 1              MR. RUSSO:  Object to form.

 2       A.   Committed or may have?

 3       Q.   (By Mr. Rice) May have committed.

 4       A.   I'd communicate with the district attorney's

 5   office.

 6       Q.   Okay.  So you stated that you are aware that

 7   there was an incident that was covered up for

 8   Deputy Benavidez where he was intoxicated by an

 9   officer?

10              MR. LASSWELL:  Objection, form.

11              MR. RUSSO:  Object to form.  Assumes facts.

12   Misstates testimony.

13       Q.   (By Mr. Rice) Now that -- let me say this:

14   If that information was the whole truth, would you

15   prosecute those involved?

16              MR. RUSSO:  Object to form.  Calls for

17   speculation.  Incomplete hypothetical.  Assumes facts.

18       A.   I'd still contact the district attorney's

19   office.

20       Q.   (By Mr. Rice) Okay.  Thanks.  As a sheriff

21   deputy over the department, would you pick a relative

22   up from a scene to cover up a crime?

23       A.   No.

24       Q.   Okay.  I just like to, kind of, discuss now

25   a little bit of Deputy Benavidez' record.  Has
```

BENSON vs GALVESTON COUNTY, et al.                    Page 27
HENRY TROCHESSET - VOL.1, 08/26/2022

1   Deputy Benavidez ever been in any trouble as a deputy?
2               MR. LASSWELL:  Objection, form.
3        A.   He's been written up several times.
4        Q.   (By Mr. Rice) What were those write-ups for;
5   do you know offhand?
6        A.   No.
7        Q.   Has he ever been written up before for
8   allowing an inmate to escape?
9        A.   About six or eight years ago I think
10  something like that happened, yes.
11       Q.   Could you explain what happened?
12       A.   From what I can recall, an armband was
13  swapped out from one inmate to the other; and the
14  inmate with the wrong armband was walked to booking.
15       Q.   Okay.  And does those armbands have names on
16  it?
17       A.   I believe so.
18       Q.   And wouldn't you have to read that name on
19  that armband to know who that inmate is?
20       A.   You should.
21       Q.   Do you think that failing an aptitude test
22  that shows you might have trouble reading could have
23  led to him not being able to read that armband?
24               MR. LASSWELL:  Objection, form.
25               MR. RUSSO:  Objection to form.  Calls for

```
 1   speculation.
 2        A.   I would not know that.
 3        Q.   (By Mr. Rice) Okay.  What was
 4   Deputy Benavidez' punishment for allowing that inmate
 5   to escape?
 6        A.   I do not know.
 7        Q.   Did it cost the county a lot of money?
 8        A.   I do not know.
 9        Q.   Was several other agencies called in to --
10   for a manhunt for the suspect?
11        A.   I do not know.
12        Q.   As the head sheriff, these are things they
13   don't tell you?
14             MR. RUSSO:  Object to form.
15        A.   No.
16        Q.   (By Mr. Rice) So you're not privy to the
17   information of an inmate escaping your facility --
18             MR. RUSSO:  Objection.
19        Q.   (By Mr. Rice) -- as the head sheriff?
20             MR. RUSSO:  Object to form.  Misstates
21   testimony.  Assumes facts not in evidence.
22        A.   They do communicate with me when such an
23   event would occur.
24        Q.   (By Mr. Rice) Okay.  But you just can't
25   remember at this point what happened.  If you do
```

 1 | happen to remember, will you let your attorney know so
 2 | they can update us on it?
 3 |     A.    I'll try.
 4 |     Q.    Okay.  Could you explain to me a little bit
 5 | of your internal affairs process when it comes to
 6 | officer-involved shootings?
 7 |               Better yet:  Who investigates those
 8 | shootings?
 9 |          MR. RUSSO:  Object to form.  Compound.
10 |     Q.    (By Mr. Rice) Scratch the first question.
11 |               Who investigates those shootings,
12 | your officer-involved shootings?
13 |     A.    We call an outside agency, usually the Texas
14 | Rangers.
15 |     Q.    And is that investigation done in sync with
16 | your internal affair officers, or is it a -- two
17 | separate investigation to preserve integrity?
18 |     A.    Two separate investigations.
19 |     Q.    Okay.  Was your internal affairs officer
20 | allowed in on every witness interview and allowed to
21 | collect evidence with the Texas Ranger?
22 |     A.    I wasn't there.  I don't know.
23 |     Q.    Have you seen a video of your internal
24 | affairs officer interviewing witnesses with the Texas
25 | Ranger in the room together?

BENSON vs GALVESTON COUNTY, et al.                          Page 30
HENRY TROCHESSET - VOL.1, 08/26/2022

1        A.   No, sir, I haven't seen any video.
2        Q.   So your internal affairs officer didn't
3    report to you that he was in the room during every
4    interview of every witness?
5             MR. RUSSO:  Object to form.  Assumes facts
6    not in evidence.
7        A.   I don't know.  I haven't seen any video.
8        Q.   (By Mr. Rice) And you stated that you're not
9    aware that a video exists that we've turned over of
10   your internal affairs officer, a Texas Ranger officer
11   together interviewing witnesses?
12            MR. RUSSO:  Object to form.  Assumes facts
13   not in evidence.  Calls for speculation.
14       A.   I'm not aware.
15       Q.   (By Mr. Rice) Who handles the evidence once
16   it's collected from an officer-involved shooting?
17   Would it be your internal affairs officers, would they
18   have access to the evidence; or would it strictly be
19   the Texas Ranger's officers who have access to that
20   evidence?
21       A.   Don't know.
22       Q.   Do you believe that it's maintaining
23   independence to allow your internal affairs officer to
24   be in on every interview of a witness when your
25   officer is the one -- your deputy is the one accused

1    of committing the crime?

2                MR. RUSSO:  Objection.  Vague and ambiguous.

3        A.    Could you repeat the question?

4        Q.    (By Mr. Rice) Yes, sir.  Do you think that

5    it shows independence of investigation to allow your

6    internal affairs officer to sit in on every interview

7    with the Texas Ranger's deputy?

8        A.    Sounds fine to me.

9        Q.    Okay.  Even though your agency is the one

10   being investigated?

11       A.    Yes.

12       Q.    Okay.  Let's see, did you -- was there ever

13   a statement made about you in the press where you

14   admitted or stated that an officer was justified in

15   shooting, I believe it was a Joshua Fetes, without

16   seeing that video?

17               MR. RUSSO:  Object to form.

18       A.    Who was that?

19       Q.    (By Mr. Rice) Joshua Feast was a black male

20   that was killed in Texas City, I believe, by officer

21   -- he has -- he was the one that was involved with the

22   murder on the beach.  He shot a guy with a -- who had

23   a machete, and he was accused in this case.  It was

24   couple of years ago.  You gave a press conference on

25   it.  You don't remember?

 1            MR. RUSSO:  Object to form.  Calls for

 2    speculation.  Assumes facts not in evidence.

 3        A.   No, I don't.

 4        Q.   (By Mr. Rice) I'm going to ask the question

 5    again.  Just so -- just to clarify.  Do you ever

 6    remember making a statement to the press in a highly

 7    publicized case that garnered national attention, that

 8    the officer was justified in shooting the individual;

 9    and it was later discovered that you had not seen that

10    video?

11            MR. RUSSO:  Object to form.  Calls for

12    speculation --

13        Q.   (By Mr. Rice) You don't remember that?

14            MR. RUSSO:  -- assumes facts.

15        A.   Which case?  No.

16        Q.   (By Mr. Rice) Joshua Feast.

17        A.   No, I don't remember.

18        Q.   Have you ever had an excessive force lawsuit

19    filed against you?

20        A.   Personally?

21        Q.   In your official -- well, not in your

22    official capacity, as the result of your own actions?

23    Just like as you as a deputy, and somebody alleged you

24    did something wrong?

25        A.   No, sir.

1       Q.   Okay.  I just kind of want to touch on the

2   physical ability of deputies.  Is there a physical

3   requirement to become a sheriff deputy?

4       A.   Depends on what division or -- that you're

5   going to go in within the agency.

6       Q.   Okay.  What about just a general jailer who

7   transports inmates to the hospital?

8       A.   No, sir.

9       Q.   Okay.  Are deputies physical attributes

10  regularly tested?

11      A.   No, sir.

12      Q.   And you did state that -- are deputies

13  assigned to different divisions by their physical

14  abilities or physical fitness?

15      A.   It's one part of the equation to see if

16  they're apt to going out to that area.

17      Q.   Okay.  Does it make more sense to assign a

18  deputy that's maybe more physical fit to transport

19  inmates outside the facility in case that inmate

20  chooses to try to escape?

21           MR. RUSSO:  Object to form.  Incomplete

22  hypothetical.

23      A.   Don't know.

24      Q.   (By Mr. Rice) As the head sheriff would you

25  send a person who is in tip-top shape or a person who

1   may not have been -- who not may be in so great of

2   shape out with an inmate who has a chance of escaping?

3              MR. RUSSO:  Object to form.  Calls for

4   speculation.  Incomplete hypothetical.

5       A.   Could you repeat the question?

6       Q.   (By Mr. Rice) Which deputy would you send

7   out, a deputy that is physically fit or a deputy that

8   may have some physical limitations, to escort an

9   inmate who may have an escape problem?

10             MR. RUSSO:  Object to form.

11      A.    If he had physical limitations, I would

12  probably send the other person.

13      Q.   (By Mr. Rice) How would you assess

14  Deputy Benavidez' physical fitness at the time of the

15  incident?

16             MR. RUSSO:  Objection, form.

17             MR. LASSWELL:  Objection, form.  Calls for

18  speculation.

19      A.    I don't know.

20      Q.   (By Mr. Rice) When was last time

21  Deputy Benavidez' physical abilities was tested?

22      A.    I don't know.

23      Q.    Is being tired a valid reason -- I mean, a

24  valid reason for shooting a pretrial detainee?

25             MR. RUSSO:  Object to form.  Calls for

 1  speculation.  Incomplete hypothetical.

 2      A.   Don't know what that is.

 3      Q.   (By Mr. Rice) So if by your policies that

 4  you implemented, if a person is escaping, he's

 5  running, the deputy is running after him, the deputy

 6  just feels like I'm tired; at that point does he have

 7  the right to shoot the inmate?

 8           MR. LASSWELL:  Objection, form.

 9           MR. RUSSO:  Object to form.  Incomplete

10  hypothetical.  Assumes facts not in evidence.  Calls

11  for speculation.

12      A.   No.

13      Q.   (By Mr. Rice) Okay.  I just want to touch on

14  a little bit of transferring inmates inside and

15  outside of the facility now.  Who comes up with the

16  transporting procedures for inmates inside and outside

17  the facility?

18      A.   My jail administrator.

19      Q.   Okay.  And who is your jail administrator?

20      A.   Douglas Hudson.

21      Q.   Douglas Hudson.  Okay.  What are -- what are

22  the -- well, because that's kind of -- what is the

23  purpose of handcuffs?

24      A.   To limit the movement of their hands.

25      Q.   Okay.  And the purpose of what they would

BENSON vs GALVESTON COUNTY, et al.                    Page 36
HENRY TROCHESSET - VOL.1, 08/26/2022

1    call leg irons?

2         A.   To limit the movement of their legs.

3         Q.   And the belly chains?

4         A.   It further restricts your arm movement.

5         Q.   Okay.  And which one of those would you

6    consider the most restrictive?

7         A.   The belly chain.

8         Q.   Was Mr. Benson wearing belly chains on the

9    -- that day?  Are you aware?

10             MR. RUSSO:  Object to form.  Vague,

11   ambiguous.

12        A.   I don't know.

13        Q.   (By Mr. Rice) Okay.  So you don't -- you're

14   not aware if Mr. Benson had on handcuffs, leg irons,

15   belly chains or what he had on that day?

16             MR. RUSSO:  Object to form.  Vague and

17   ambiguous.

18        A.   No, I'm not sure what he was wearing.

19        Q.   (By Mr. Rice) Okay.  What are, like,

20   procedures for transporting inmates inside the

21   facility?  Can you just kind of give me an overview on

22   that?

23        A.   You mean if you need to go from one pod to

24   another --

25        Q.   Yes, sir.

 1        A.    -- or to the medical?

 2        Q.    Yeah, just one pod to another, just general

 3   transferring around inside the facility.

 4        A.    The deputy is called over to remove the

 5   inmate from whatever cell or pod they're in; and they

 6   walk over to medical, if that's where they're going.

 7        Q.    Okay.  Are those deputies armed?

 8        A.    No, sir.

 9        Q.    And inside the jail facility what is -- what

10   are the restraint procedures inside the facility while

11   the inmates are being moved around?

12        A.    Depends on the inmate.

13        Q.    Okay.  Just for a general inmate, what would

14   his restraints be?

15        A.    None.

16        Q.    A higher risk inmate, what would their

17   restraints be?

18        A.    Depending on the situation he may be cuffed,

19   he may be leg ironed, depends.

20        Q.    Okay.  What is the inmate/officer ratio when

21   they're working inside the jail?

22            MR. RUSSO:  Object to form.  Vague,

23   ambiguous.

24        A.    Inside of each pod?

25        Q.    (By Mr. Rice) Yes, sir.  Just on general,

 1  how many inside each pod per deputy?

 2      A.   48:1.

 3      Q.   48:1.  And are -- what kind of weapons are

 4  the deputies provided inside the jail for their

 5  protection or the protection of others, staff and so

 6  on?

 7      A.   None.

 8      Q.   Okay.  Could you explain the escalation of

 9  force as it pertains to the use of weapons inside your

10  facility?  So when would an officer -- a deputy be

11  able to get mace or when would a deputy be able to

12  access a gun?  What levels would escalate those use of

13  force with the weapons?

14      A.   Inside the jail?

15      Q.   Yes, sir, inside the jail.

16      A.   None.

17      Q.   None.  Okay.  And where's that policy found?

18  Do you know?  Is it in the policy manual?

19      A.   I do not know.

20      Q.   Okay.  Now I just want to kind of get to

21  outside the facility.  What are the procedures for

22  transporting inmates once they're going outside the

23  facility?

24      A.   Depends on if it's an ambulance or a unit.

25      Q.   If it's just an ambulance and they're going

1   to a medical visit or a unit is taking them to a

2   medical visit?

3        A.   Should be leg ironed and cuffed.

4        Q.   Okay.  When that transport -- transporting

5   takes place, what processes are in place for the

6   deputy to familiarize hisself with the inmate he's

7   going to be the transporting or going out to relieve a

8   person who transported him earlier?

9        A.   The information that the person he's

10  relieving giving him.

11       Q.   Are the deputies required to leave your

12  station with a booking sheet?

13       A.   Don't know.

14       Q.   Are you aware that there are procedures in

15  the Galveston County Sheriff's Office policy manual

16  for the transporting of inmates outside the facility?

17       A.   I haven't worked in that jail in 37 years.

18  So...

19       Q.   No, I'm saying:  Are you aware that in the

20  policy manual there are specific procedures for

21  transporting inmates outside the facility?

22       A.   Don't know.

23       Q.   Okay.  So are you familiar with the booking

24  sheet?

25       A.   Yes, sir.

BENSON vs GALVESTON COUNTY, et al.                    Page 40
HENRY TROCHESSET - VOL.1, 08/26/2022

1      Q.   Is the booking sheet less detailed or more
2   detailed than the -- the inmate's file?
3      A.   Don't know.
4      Q.   Does the booking sheet have the inmate risk
5   level on it?
6      A.   Don't know.
7      Q.   What is the policy when you're dealing with
8   the different risks levels as far as number of
9   officers?
10     A.   If it's a two-man policy or a one-man
11  policy?
12     Q.   Yes, sir.
13     A.   That's usually determined at classification.
14     Q.   And what is that determined by?
15     A.   The risk factor during the classification
16  process; history, charges, and such.
17     Q.   Would a person that has a history of fleeing
18  be considered a high risk for escape while
19  transporting out of the facility?
20     A.   Maybe.
21     Q.   Are you aware that in the policy manual that
22  any high risk inmates are required to have two
23  deputies with them?
24          MR. RUSSO:  Object to form.  Assumes facts
25  not in evidence.

 1        A.    Don't know.

 2        Q.    (By Mr. Rice) Okay.  Just kind of go over

 3   the -- the restraint procedures that's listed in your

 4   policy manual.  Once an inmate arrives at the

 5   hospital, does the deputy have the ability to remove

 6   the restraints at their own personal liberty?

 7        A.    Usually the doctor or the nurse would

 8   request that.

 9        Q.    Okay.  If the doctor or nurse requested

10   restraints to be removed, does the sheriff deputy have

11   to contact the supervising officer to have those

12   restraints removed?

13        A.    Don't know.

14        Q.    Are you aware that that's listed in your

15   policy manual as part of the procedure?

16        A.    Don't know.

17        Q.    Did Deputy Benavidez contact his supervising

18   officer to remove Mr. Benavidez -- I mean,

19   Mr. Benson's restraints on that day?

20        A.    Unknown.

21        Q.    Are you aware that another way that is

22   listed in your policy that a deputy may remove the

23   restraints is if there is a life-threatening emergency

24   going on?

25        A.    Like I said, usually the doctor or the nurse

BENSON vs GALVESTON COUNTY, et al.                    Page 42
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1   would ask us to remove them.
 2        Q.   Okay.  And was Mr. Benson's restraints
 3   removed in this situation for a life-threatening
 4   emergency?
 5        A.   I wasn't there.  I don't know.
 6        Q.   Okay.  Are you aware that the only other way
 7   that, per your policy manual, that the restraints can
 8   be removed is by a court order?
 9             MR. LASSWELL:  Objection, form.
10             MR. RUSSO:  Object to form.  Assumes facts
11   not in evidence.
12        A.   Don't know.
13        Q.   (By Mr. Rice) Was there a court order to
14   remove Mr. Benson's restraints in this case?
15        A.   Don't know.
16        Q.   Do you know why Mr. Benson's restraints was
17   removed in this case?
18        A.   I believe because he had to go to the
19   bathroom.
20        Q.   Is there a policy in your manual that
21   addresses an inmate who has to go to the bathroom who
22   is restrained?
23        A.   Not that I'm aware of.
24        Q.   Well, so you're not aware that there is a
25   policy in your manual that states that even if an
```

BENSON vs GALVESTON COUNTY, et al.                    Page 43
HENRY TROCHESSET - VOL.1, 08/26/2022

1  inmate has been -- restraints has been ordered to be

2  removed, if an inmate is to be taken to the restroom,

3  those restraints must be reapplied?

4          MR. RUSSO:  Object to form.

5          MR. LASSWELL:  Objection, form.

6          MR. RUSSO:  Assumes facts not in evidence.

7  Misstates the evidence.

8      A.  I don't know.

9      Q.  (By Mr. Rice) But you are aware that

10  Defendant Benson [sic] removed those restraints so

11  that Mr. Benson may use the restroom?

12          MR. RUSSO:  Object to forum.  You mean

13  defendant.

14      Q.  (By Mr. Rice) Defendant -- yeah,  defendant

15  Benavidez removed those restraints so Mr. Benson may

16  use the restroom?

17      A.  I believe that's what occurred.

18      Q.  Okay.  And did -- from your -- to your

19  knowledge did Deputy Benavidez have permission to

20  remove those restraints?

21      A.  I don't know.

22      Q.  Okay.  Did Mr.-  -- did Deputy Benavidez

23  admit to uncuffing Mr. Benson so that he may allow him

24  to use the restroom?

25      A.  Repeat that?

1      Q.   Did Deputy Benavidez admit to uncuffing

2   Mr. Benson so that he may be allowed to use the

3   restroom?

4      A.   I believe that's what occurred.

5      Q.   Okay.  Was there another guard guarding

6   Mr. Benson before Deputy Benavidez -- before

7   Deputy Benavidez?

8      A.   Yes, sir.

9      Q.   Was that deputy named Deputy Stedman?

10     A.   No, sir.

11     Q.   What was his name?

12     A.   Steadham.

13     Q.   Okay.  Steadham.  Yes, sir.  Did

14  Deputy Steadham give a statement?

15     A.   I'm assuming.

16     Q.   Did Deputy Stedman [sic] admit to

17  unrestraining Mr. Benson so that he may use the

18  restroom?

19     A.   I don't know.  Don't remember.

20     Q.   Did Deputy Stedman [sic] get approval from a

21  supervisor to unrestrain Mr. Benson?

22          MR. RUSSO:  Objection, asked and answered.

23     A.   I don't know.

24     Q.   (By Mr. Rice) Did Deputy Stedman [sic]

25  unrestrain Mr. Benson due to a medical emergency?

 1        A.   Don't know.

 2        Q.   **Did Deputy Stedman [sic] follow the**

 3   **Sheriff's Department restrain policy?**

 4        A.   Don't know.

 5        Q.   **Were there two other officers for a total**

 6   **of, I believe, six officers that sat with Mr. Benson**

 7   **after he was shot that was in two-man teams, I**

 8   **believe, for eight-hour shifts?**

 9        A.   Can you repeat that question?

10        Q.   **Was there officers that sat with Mr. Benson**

11   **in two-man teams after he was shot and still in the**

12   **hospital unconscious around the clock and eight-hour**

13   **shifts?**

14        A.   I don't know.

15        Q.   **Did those officers unrestrain Mr. Benson to**

16   **use the restroom?**

17        A.   I don't know.

18        Q.   **Did those officers have a court order to**

19   **remove those restraints?**

20             MR. RUSSO:   Objection, form.   Asked and

21   answered.

22        A.   I don't know.

23        Q.   **(By Mr. Rice) Did those officers remove**

24   **those restraints due to a medical emergency?**

25             MR. RUSSO:   Same objection.

1       A.   I don't know.

2       Q.   (By Mr. Rice) Why did at least eight

3  different sheriff deputies violate your restraint

4  policy that's listed in your manual while guarding

5  Mr. Benson?

6            MR. RUSSO:  Objection, form.  Assumes facts

7  not in evidence.

8       A.   Don't know.

9       Q.   (By Mr. Rice) How often are your deputies

10 tested on the restraint policy?

11      A.   Don't know.

12      Q.   Is it a common practice for your deputies to

13 unrestrain inmates as they see fit when out in -- when

14 taking them to medical visits?

15           MR. RUSSO:  Object to form.  Assumes facts

16 not in evidence.

17      A.   Don't know that either.

18      Q.   (By Mr. Rice) Is it a common practice to

19 allow your deputy to make their own decisions and

20 disregard policy when it comes to restraining inmates?

21           MR. RUSSO:  Object to form.  Assumes facts

22 not in evidence.

23      A.   No.

24      Q.   (By Mr. Rice)Whose responsibility ultimately

25 is for -- whose responsible ultimately is the deputy's

 1   actions?  Does that fall on you?

 2        A.   Yes.

 3        Q.   So it is your responsibility to know whether

 4   your deputies are unrestraining and restraining

 5   inmates by your policy, correct?

 6        A.   I'm not sitting there with them.

 7        Q.   It's not your job to make sure that's done

 8   no matter if you're there with them or over in Alaska?

 9             MR. RUSSO:  Object to form.

10        A.   It's my job.

11        Q.   (By Mr. Rice) Okay.  Is there any special

12   procedures for guarding inmates who may be highly

13   intoxicated, that you're aware of?

14        A.   No.

15        Q.   If I told you that was in your policy

16   manual, you wouldn't know either way either, huh?

17             MR. RUSSO:  Object to form.

18        A.   No.

19        Q.   (By Mr. Rice) Is there a difference between

20   a pretrial detainee and an innate?

21        A.   Most every inmate in the county jail is a

22   pretrial detention.

23        Q.   Are you familiar with the different rights

24   of these individuals might have?

25             MR. RUSSO:  Object to form.  Calls for

```
 1   speculation.

 2        A.   No.

 3        Q.   (By Mr. Rice) Are there different ways that

 4   you can escalate the use of force when it pertains to

 5   a pretrial detainee and an inmate?

 6             MR. RUSSO:  Object to form.  Calls for

 7   speculation.  Incomplete hypothetical and seeks legal

 8   conclusion.

 9        A.   Don't know.

10        Q.   (By Mr. Rice) Okay.  Does Galveston County

11   Sheriff Department teach their deputies on a different

12   levels of the use of force when dealing with pretrial

13   detainees or inmates?

14        A.   Repeat that question.

15        Q.   Does Galveston County Sheriff Department

16   teach their deputies the difference -- the different

17   levels of use of force between pretrial detainees and

18   inmates?

19             MR. RUSSO:  Object to form.

20        Q.   (By Mr. Rice) Or is the use of force blanket

21   for everyone?

22             MR. RUSSO:  Object to form.  Assumes facts

23   not in evidence.  Incomplete hypothetical.

24        A.   We have a use of force policy, one.

25        Q.   (By Mr. Rice) And that goes for everyone?
```

1        A.    Correct.

2        Q.    Are your deputies tested annually on this,

3    on their knowledge on the use of force?

4        A.    Not that I'm aware of.

5        Q.    What equipment is provided to a deputy while

6    transporting inmates outside of the facility?  Are

7    they provided with a gun?

8        A.    No, sir.

9        Q.    What equipment are they provided with?

10       A.    Possibly leg irons, belly chain, maybe

11   handcuffs.

12       Q.    Oh, okay, I see.  So are they allowed to

13   have a gun?

14       A.    Outside the facility?

15       Q.    Yes, when they're transporting inmates to

16   the medical facility, are the deputies required to

17   carry a gun?

18       A.    Yes.

19       Q.    Okay.  And what procedure guides that use of

20   equipment, that gun.  So if a deputy needed to go say,

21   hey, what are my legal rights for using this gun,

22   where could they go and find that information from

23   your department?

24            MR. RUSSO:  Object to form.  Compound.  Go

25   ahead.  If you can answer it, go ahead.

 1        A.   The policy manual.

 2        Q.   (By Mr. Rice) Okay.  And would you be

 3   surprised if I told you that your policy manual did

 4   not describe how they could use their weapon?

 5             MR. RUSSO:  Object to form.

 6        A.   Explain that again.

 7        Q.   (By Mr. Rice) Would you be surprised if

 8   there was no detailed procedure or guidelines for the

 9   use of a gun outside the facility?

10        A.   I'm confused.  Repeat the question again.

11        Q.   So for the gun that is issued for the -- to

12   the deputy who leaves outside the facility, is there a

13   policy that he can look at that tells him the

14   guidelines for using that gun?  For instance, if it's

15   a crowded hospital, am I able to shoot inside the

16   hospital, what allows me to shoot inside the hospital

17   when other people may be around?  Is there a policy

18   that guides them through that from your department?

19             MR. RUSSO:  Object to form, compound.

20        A.   No.

21        Q.   (By Mr. Rice) Okay.  Is transporting inmates

22   to a medical facility a regular function that the

23   sheriff office performs for its inmates?

24        A.   Yes.

25        Q.   Are you aware that inmates may try to escape

 1   from your county jail?

 2        A.   Yes.

 3        Q.   Are you aware that the chances of escape

 4   might be heightened when inmates are transported

 5   outside the facility, far as medical visits and stuff?

 6        A.   Could.

 7        Q.   Is that the reason why you arm your deputies

 8   with that weapon, just in case the inmate tries to

 9   escape?

10        A.   They own their own weapons.

11        Q.   Well, the -- inside the jail, they're not

12   allowed to carry their own weapons.  Outside the jail,

13   you allow them to carry their own weapons.  So I'm

14   asking that is the reason that they're allowed to

15   carry their own weapon outside -- when they're

16   transferring the inmates outside the facility, is

17   because an inmate may try to escape?

18             MR. RUSSO:  Object to form.  Compound, vague

19   and ambiguous.

20        Q.   (By Mr. Rice) What would be the reason they

21   would have the gun for transporting inmates outside

22   the facility?

23        A.   For their safety and the safety of the

24   public.

25        Q.   So what would compromise their safety?

```
 1             MR. RUSSO:  Object to form.  Calls for
 2    speculation.  Incomplete hypothetical --
 3        Q.   (By Mr. Rice) Would an inmate trying to
 4    escape, could that possibly compromise the officer's
 5    safety?
 6        A.   Could.
 7        Q.   Would an inmate trying to escape possibly
 8    compromise the public's safety?
 9        A.   Could.
10        Q.   Okay.  So once again, is one of the reasons
11    that your deputies are allowed to carry their gun
12    while transporting inmates outside the facility is
13    that there is a chance that the inmate may try to
14    escape?
15        A.   It's for the protection of them and the
16    public.
17        Q.   In case the inmate tries to escape?
18             MR. RUSSO:  Object to form.  Asked and
19    answered.
20        A.   Repeat your question.
21        Q.   (By Mr. Rice) Is one of the reasons that a
22    deputy is allowed to carry his own weapon while
23    transporting inmates outside the facility, when he's
24    not allowed to carry the weapon inside the facility,
25    because an inmate may try to escape?
```

1      A.   It depends on the circumstance if the weapon

2  is needed.

3      Q.   Okay.  Are you aware that a situation can

4  arise where the deputy has to use their weapon outside

5  the facility?

6      A.   Say that one more time.

7      Q.   Are you aware that a situation can arise

8  where that deputy has to use his weapon, such as in

9  this case, outside the facility?

10     A.   It could arise.

11     Q.   Yes.  What kind of training do you offer the

12  deputy to help them equip -- equip them with that?

13     A.   He -- every deputy qualifies every year with

14  their firearm, and there is other training issued from

15  shoot/don't shoot scenarios and such.

16     Q.   Okay.  So what -- that's sort of what I'm

17  getting into.  What kind of shoot/don't shoot

18  scenarios do your department offer?

19     A.   It depends on what comes through.  Like,

20  different state organizations teach; and different

21  ones come down and teach certain -- they bring a

22  simulator where the officer can go through scenarios

23  when to shoot or not shoot.

24     Q.   Do you know when the last time

25  Deputy Benavidez took that training, or if he even

1  took that training?

2       A.   Don't know.

3            MR. LASSWELL:  Objection, form.

4       Q.   (By Mr. Rice) What kind of specialized

5  trainings do you offer deputies to deal with

6  specifically the use of deadly force?

7       A.   Repeat that question.

8       Q.   What kind of training do you offer your

9  deputies to deal with the use of excessive force,

10 specifically deadly force?

11      A.   Excessive force?

12      Q.   Deadly force.

13      A.   Well, each year they go through a scenario

14 of how to learn and shoot their weapon, which is

15 qualification.

16      Q.   No, I'm saying what kind of specialized

17 training, not just I'm shooting at a target to show I

18 can shoot.  What kind of specialized training do they

19 go through that deals with the use of deadly force?

20           MR. RUSSO:  Object to form.  Asked and

21 answered.

22      A.   We offer different training.  You're asking

23 for a specific name to it?  I don't know at this time.

24      Q.   (By Mr. Rice) Okay.  Is there a requirement

25 that the sheriff department has where officers have to

BENSON vs GALVESTON COUNTY, et al.                    Page 55
HENRY TROCHESSET - VOL.1, 08/26/2022

1    go through this training every year, every two years

2    or --

3         A.   (Witness shakes head.)

4         Q.   No?

5         A.   No, sir.

6         Q.   Okay.  What policy would your sheriff deputy

7    use to guide them through deadly force?

8         A.   The use of force policy.

9         Q.   How many pages is that policy?

10        A.   Front and back, maybe five.

11        Q.   Would it surprise you if I told you the use

12   of force policy was total three pages and deadly force

13   was half a page?

14             MR. RUSSO:  Object to form.  Assumes facts

15   not in evidence.

16        A.   Could.

17        Q.   (By Mr. Rice) Would it surprise you that the

18   uniform requirement in your policy takes up ten pages?

19             MR. RUSSO:  Object to form.

20        A.   Could.

21        Q.   (By Mr. Rice) Does it seem odd to you that

22   your policy pertaining uniform is three times longer

23   than your policy pertaining to the use of deadly

24   force?

25             MR. RUSSO:  Object to form.  Assumes facts

 1 | not in evidence.  Misstates the record.

 2 |      A.   No.

 3 |      Q.   (By Mr. Rice) Do you believe your use of

 4 | deadly force is -- is vague?

 5 |      A.   We have a sound policy.

 6 |      Q.   Does your policy discuss or have any legal

 7 | explanations in it for your deputies, such as

 8 | pertaining to law as Tennessee vs. Garner or anything

 9 | that deals with the use of deadly force?

10 |           MR. RUSSO:  Object to form as vague and

11 | ambiguous.

12 |      A.   Unsure.

13 |      Q.   (By Mr. Rice) Are your officers trained on

14 | the legal aspects of deadly force?

15 |      A.   From time to time, yes, mostly in the police

16 | academy.

17 |      Q.   You stated earlier that you wasn't sure how

18 | much training they got in the police academy when it

19 | came to deadly force, correct?

20 |           MR. RUSSO:  Object to form.  Misstates prior

21 | testimony.

22 |      A.   Hours of course, I don't know.

23 |      Q.   (By Mr. Rice) Okay.  Just to, kind of, dig

24 | into your use of force policy:  Is deadly force

25 | defined and detailed in your use of force policy?

1      A.   It is defined in the policy.

2      **Q.   Does that definition consist of maybe**

3   **1 1/2 lines?**

4           MR. RUSSO:  Object to form.  Calls for

5   speculation.

6      A.   Yes.

7      **Q.   (By Mr. Rice) How is deadly force defined in**

8   **your policy manual?**

9      A.   For the officer's protection or the

10  protection of others where deadly force may be needed

11  or something to that affect.  I can't remember the

12  exact verse.

13     **Q.   As the head sheriff aren't your required to**

14  **know the deadly force policy?**

15          MR. RUSSO:  Object to form.

16     A.   I could read it to you, if you want to hand

17  it to me.

18     **Q.   (By Mr. Rice) No, I said required to know**

19  **the deadly force policy?**

20     A.   I know what my policy is.

21     **Q.   Can you state that policy for us now?**

22     A.   Word-for-word, no, sir.

23     **Q.   Not even word-for-word, just anywhere close**

24  **to the policy?**

25          MR. RUSSO:  Object to form.  Asked and

BENSON vs GALVESTON COUNTY, et al.                          Page 58
HENRY TROCHESSET - VOL.1, 08/26/2022

 1   answered.  Vague and ambiguous.
 2        A.   According to you, no.
 3        Q.   (By Mr. Rice) Not -- I mean, I'm -- take as
 4   long as you want.
 5             MR. RUSSO:  There's no question pending.
 6        Q.   (By Mr. Rice) Okay.  So my question, just
 7   again, to reask:  Are you able to recite your deadly
 8   force policy for me today?
 9             MR. RUSSO:  Object to form --
10        A.   No.
11             MR. RUSSO:  -- asked and answered.
12        Q.   (By Mr. Rice) If Mr.-  -- I'm going to come
13   back to that, make a note.
14                  What would -- just digging into your
15   policy, what is considered to be a reasonable belief
16   that an officer is in imminent threat of death or
17   serious bodily harm?
18             MR. RUSSO:  Object to form.  Vague and
19   ambiguous.
20        A.   That would be determined by every officer
21   and every situation.
22        Q.   (By Mr. Rice) So your understanding that the
23   reasonable belief requirement under the law is based
24   on each individual's officer belief?
25             MR. RUSSO:  Object to form.

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

 1        A.   And each circumstance.

 2        Q.   (By Mr. Rice) So it's not based on what a

 3   reasonable officer would think, not what you would

 4   think?

 5             MR. RUSSO:  Object to form.  Vague and

 6   ambiguous.

 7        A.   I would hope that all the officers are

 8   reasonable.

 9        Q.   (By Mr. Rice) No, I'm talking about the

10   reasonable -- in your policy it states that the

11   officer is considered to be reasonable belief when he

12   commits or uses deadly force.  Is that reasonable

13   belief a belief of that officer or all reasonable

14   officers?  Meaning that that officer belief may be

15   misconstrued, but 30 other officer's beliefs are

16   different?  Which one is correct?

17             MR. RUSSO:  Object to form.  Calls for legal

18   conclusions.  Calls for speculation and misstates the

19   record.

20        A.   I'm not even sure how to answer that.

21        Q.   (By Mr. Rice) So you don't understand what

22   your own policy means by reasonable belief?  Can you

23   tell me what that is then?

24        A.   No, sir, I don't understand your question.

25        Q.   My question is:  What does reasonable belief

BENSON vs GALVESTON COUNTY, et al.                           Page 60
HENRY TROCHESSET - VOL.1, 08/26/2022

1    mean in your policy?  And I'll ask you once again.
2    What is considered to be a reasonable belief that the
3    officer is in imminent threat or death or seriously
4    bodily harm?  That came straight out your policy
5    manual.  I'm asking what is that reasonable belief?
6              MR. RUSSO:  Object to form.  Vague and
7    ambiguous.
8         A.   Every situation that occurs and every
9    employee would have to come up with that during that
10   situation.
11        Q.   (By Mr. Rice) Okay.  I'm going to veer off
12   just for a second because -- so was Deputy Benavidez
13   fired in this situation?
14             MR. RUSSO:  Objection, form.
15             MR. LASSWELL:  Objection, form.
16        A.   Yes.
17        Q.   (By Mr. Rice) Why was the reason he was
18   fired?
19             MR. LASSWELL:  Objection, form.
20        A.   The administrative committee determined he
21   breached the policy of the Galveston Sheriff's Office.
22        Q.   (By Mr. Rice) And what policy was that?
23        A.   The use of force policy.
24        Q.   And did Deputy Benavidez state in his
25   statement that he believed he was acting according to

BENSON vs GALVESTON COUNTY, et al.                    Page 61
HENRY TROCHESSET - VOL.1, 08/26/2022

1  your policy?

2      A.   I believe he did.

3      Q.   So why wasn't his belief believed?  Why

4  wasn't his belief, the reasonable belief that's in

5  your policy manual?

6           MR. RUSSO:  Object to form.  Calls for

7  speculation --

8      A.   Could you explain that?

9           MR. RUSSO:  -- it's an incomplete

10  hypothetical.

11     Q.   (By Mr. Rice) Deputy Benavidez was fired,

12  and he believed he acted accordingly to your policy.

13          MR. LASSWELL:  Objection, form.

14     Q.   (By Mr. Rice) Your statement was just that

15  the policy means that it's the officer's belief and

16  the situation.  And that situation, Deputy Benavidez

17  believed he was acting accordingly.  Why wasn't his

18  belief believed?

19          MR. RUSSO:  Object to form.  Misstating his

20  prior testimony.  He never testified that -- to that

21  belief.

22     Q.   (By Mr. Rice) I believe you stated that

23  Mr. Benavidez stated that he believed he acted under

24  your policy.

25          MR. RUSSO:  That's right.  And he also

BENSON vs GALVESTON COUNTY, et al.                     Page 62
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1   testified that he was --
 2        Q.   (By Mr. Rice) Why was that belief not
 3   believed?
 4        A.   The disciplinary committee met and found
 5   that he breached the policy.
 6        Q.   Under reasonable officer standard -- under a
 7   reasonable deputy standard, correct?
 8             MR. LASSWELL:  Objection, form.
 9        A.   (Witness shrugs shoulders.)
10        Q.   (By Mr. Rice) Could Deputy Benavidez, after
11   reading your policy, think that he was acting
12   reasonably?
13        A.   I'm not Deputy Benavidez.  I don't know.
14        Q.   Okay.  What makes a person to be considered
15   armed and dangerous?
16             MR. RUSSO:  Object to form.  Incomplete
17   hypothetical.
18        A.   I'd assume if they had a weapon.
19        Q.   (By Mr. Rice) Is there information in your
20   policy that describes what can be considered armed and
21   dangerous?
22        A.   No.
23        Q.   So you're not aware of no information in
24   your policy that describes what is considered to be
25   armed and dangerous?
```

1          A.   I believe there is a slight description in
2     the policy, but there's so many different variables to
3     that.
4          **Q.   How do you -- how are your deputies taught**
5     **in all those different variables?**
6          A.   There's no way to teach them in every
7     variable.
8          **Q.   So there's no way for a deputy to be trained**
9     **on different scenarios they may face while you --**
10    **while faced with using deadly force?**
11              MR. RUSSO:  Object to form.  Misstates
12    testimony.
13         A.   There is a way to train them; but there's so
14    many different variables, it's tough to train them on
15    every one of them.
16         **Q.   (By Mr. Rice) Okay.  What procedures do you**
17    **have to try to train them on any of them?**
18              MR. RUSSO:  Objection, asked and answered.
19         A.   Sorry, repeat the question.
20         **Q.   (By Mr. Rice) What courses, classes,**
21    **seminars do you currently have in place to help your**
22    **deputies be up -- like, equipped to handle all those**
23    **different scenarios?  Now, might can't discuss all of**
24    **them; but they're in there giving them the majority of**
25    **them?**

1    A.   I don't even know the majority part because

2  anything from a glass bottle could be a weapon,

3  depending on how it's used.  Again, that's part of

4  that use of force when they come in for the

5  shoot/don't shoot scenarios, even our qualifications.

6    **Q.   Okay.  And are those -- those things**

7  **repeated annually, or is that just something you maybe**

8  **do every five to ten years?**

9    A.   The qualification is every year.  The

10  trainings -- the training different trainings are put

11  on -- and again, depending on if he's allowed to go or

12  signs up to go.

13    **Q.   Okay.  And do y'all keep a record of all the**

14  **deputies that attended those trainings?**

15    A.   Yes.

16    **Q.   Would y'all have a record of**

17  **Deputy Benavidez' training?**

18    A.   Should.

19    **Q.   Do you know if that record was turned over**

20  **with the discovery?**

21    A.   Should have been.

22    **Q.   If not, could y'all get that to us?**

23    MR. RUSSO:  Objection, form.  If we have it,

24  we'll get -- we gave you everything we have.

25    MR. RICE:  Well --

BENSON vs GALVESTON COUNTY, et al.                    Page 65
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1             MR. RUSSO:  We gave you what we have.
 2             MR. RICE:  All right.
 3             MR. RUSSO:  That's the response.
 4             MR. RICE:  Okay.
 5         Q.  (By Mr. Rice) Does your sheriff department
 6    offer any firearm training for deputies yourself?
 7    Like, each year for you have to go complete training,
 8    not for your license?
 9         A.  Repeat that question.
10         Q.  Does your department require any weapons
11    training through your department, not state ordered or
12    license required?
13         A.  The scenarios like I told you.  The
14    shoot/don't shoot and different truck classes --
15         Q.  Are those required?
16         A.  -- do come up.
17         Q.  That was my question.
18         A.  Are they required?
19         Q.  Yes, sir.
20         A.  No, sir.
21         Q.  Okay.  Does your sheriff department teach
22    its deputies how to fire a gun at fleeing suspects?
23         A.  No.
24         Q.  Just, kind of, some questions from the day
25    in question.
```

1              Can you just take me to -- through
2    from the time you were notified of the shooting, to
3    the time you arrived on the scene to assess the
4    scene?
5         A.    That's going to be tough.  I can't remember
6    if I called the Texas Rangers and the district
7    attorney before I arrived at the scene or after, but I
8    went to the scene at the hospital and I met with the
9    Texas Ranger at the time.  And at that point once I
10   knew they were doing the investigation, I backed away.
11        Q.    Okay.  And that was the last, kind of,
12   dealings you had with the case?
13        A.    Correct.
14        Q.    Are you familiar -- familiar with
15   Tennessee vs. Garner, the criminal case?
16        A.    The name rings a bell, but I can't remember
17   the whole scenario.
18        Q.    Are you familiar with the term "deliberate
19   indifference"?
20        A.    Heard of it, but...
21        Q.    Okay.  Just -- this is going to be, kind of,
22   a couple of random questions that I added last minute.
23   Just, kind of -- with y'all's internal affairs, what
24   was the outcome of the internal affair investigation
25   regarding deputy -- I mean, Deputy Benavidez?

BENSON vs GALVESTON COUNTY, et al.                    Page 67
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1              MR. LASSWELL:  Objection, form.
 2       A.   What was the outcome with internal affairs?
 3       Q.   (By Mr. Rice) Yes, sir.  Yes, sir.
 4       A.   That the policy of use of force was
 5   breached.
 6       Q.   Okay.  And were you privy to any of the
 7   evidence that was used to determine why they felt
 8   their policy was breached?
 9       A.   I believe I saw a piece of a tape shortly
10   after the shooting, that was probably it.
11       Q.   What did -- what did you observe on that
12   tape?
13       A.   Seemed like him fighting the deputy, going
14   through the hall and then they came down the -- the
15   drive from the -- from the hospital and then I lost
16   him after he hopped over the wall.
17       Q.   Okay.  And your department finding was that
18   Deputy Benavidez acted unlawfully in shooting
19   Mr. Benson?
20              MR. LASSWELL:  Objection, form.
21              MR. RUSSO:  Objection, form.  Asked and
22   answered.
23       A.   No, not unlawfully.
24       Q.   (By Mr. Rice) Explain to me how he can
25   violate your policy and it still be lawful?
```

BENSON vs GALVESTON COUNTY, et al.                    Page 68
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1            MR. RUSSO:  Object to form.  Calls for
 2   speculation.
 3        A.   He was no billed at grand jury.
 4        Q.   (By Mr. Rice) Have you ever heard that a
 5   grand jury can indict a ham sandwich?
 6            MR. RUSSO:  Objection, form.
 7            MR. RICE:  Withdrawn.
 8        A.   No.
 9        Q.   (By Mr. Rice) So if Deputy Benavidez acted
10   lawfully, then he could probably have some redress for
11   wrongful termination against your department, correct?
12            MR. RUSSO:  Object to form.  Calls for
13   speculation.
14        A.   Don't know.
15        Q.   (By Mr. Rice) Okay.  So why was he
16   ultimately fired, if he did nothing wrong?
17            MR. LASSWELL:  Objection, form.
18            MR. RUSSO:  Objection, form.  Asked and
19   answered.
20        A.   The evidence was collected, brought to the
21   -- the disciplinary committee, the committee found
22   that he did breach the use of force policy.
23        Q.   (By Mr. Rice) And your use of force policy
24   is based on state law and past precedence from cases,
25   correct?
```

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

1            MR. LASSWELL:  Objection, form.

2      A.   Somewhat.

3      Q.   (By Mr. Rice) Is your policy somewhat law

4  and somewhat made up, or is it all law?

5      A.   Could you repeat that question?

6      Q.   My original question was:  Is your policy

7  based on law and precedence, meaning case law and past

8  law that may have been passed or -- from what I'm

9  gathering, you're saying that it's half that and half

10  something else?

11            MR. RUSSO:  Object to form.  Misstates prior

12  testimony.

13      Q.   (By Mr. Rice) Just to reask you:  Is your

14  policy based on the current law regarding the use of

15  deadly force and the current cases that set that

16  precedence?

17      A.   Mostly.

18      Q.   What other area do you draw on for your

19  policy that's not that?

20      A.   Well, if you read certain areas, it's based

21  on the protection and what may needed to be done to

22  protect.

23      Q.   And where are those protections defined at?

24  Doesn't that come from case law and prior policy

25  that's already been determined?

BENSON vs GALVESTON COUNTY, et al.                    Page 70
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1              MR. RUSSO:  Object to form.  Calls for
 2    speculation.
 3         A.   I wouldn't know how to answer your question.
 4         Q.   (By Mr. Rice) You don't know where your
 5    policy come from?
 6              MR. RUSSO:  Object to form.  Asked and
 7    answered.
 8         A.   Our policy is put together from, again, laws
 9    and cases that were put together and other policies
10    from certain things that need to be done to protect
11    integrity of evidence.
12         Q.   (By Mr. Rice) Okay.  And all that is done
13    still under legal precedence, correct?
14         A.   I don't know.
15         Q.   Let me see what else I got.  Did your
16    internal affairs turn any evidence over to the
17    district attorney's office to your knowledge?
18         A.   Don't know.
19         Q.   Did you speak to the district attorney's
20    office about this case?
21         A.   One of my first phone calls.
22         Q.   What was that phone call about?
23         A.   The day of the shooting.
24         Q.   What was that phone call about?
25         A.   That there was a shooting, and I notified
```

Case 3:21-cv-00200   Document 45-3   Filed on 10/17/22 in TXSD   Page 71 of 127

BENSON vs GALVESTON COUNTY, et al.                          Page 71
HENRY TROCHESSET - VOL.1, 08/26/2022

 1    the district attorney at the time and the Texas
 2    Ranger.
 3        Q.   That was your only communication with the
 4    district attorney's office pertaining to this case?
 5        A.   That I can remember.
 6        Q.   Are there any emails?
 7        A.   Not sure.
 8        Q.   You're not sure if you didn't send the
 9    district attorney emails about this case?
10        A.   I can't remember.
11        Q.   Will you be willing to turnover your emails?
12             MR. RUSSO:  Object to form.
13        A.   I don't even know if I have any.
14             MR. RUSSO:  If you need us to provide you
15    something, you ask for it.
16             MR. RICE:  Yeah.
17             JUDGE:  Request.  Whether or not the witness
18    is willing to provide it is --
19             MR. RICE:  Well, I just need to know if it's
20    there because I haven't received them; and he's said
21    several things that he's aware of that I haven't been
22    given.
23             MR. RUSSO:  Understood.
24        Q.   (By Mr. Rice) Let's see, do you know Deputy
25    Benavidez' parents?

BENSON vs GALVESTON COUNTY, et al.                          Page 72
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1        A.    Could you repeat that one more time?
 2        Q.    Do you know Deputy Benavidez' parents?
 3        A.    Correct.
 4        Q.    What kind of relationship do you have with
 5   them?
 6        A.    One was a captain within the Galveston
 7   Police Department, and one was a secretary to the
 8   chief of police.
 9        Q.    What kind of personal relationship do you
10   have with them?
11        A.    Law enforcement business.
12        Q.    Do y'all attend parties together?
13        A.    I have seen them at parties before.
14        Q.    What about family functions?
15        A.    Never been to one that I can remember.
16        Q.    How long have you known them?
17        A.    Probably my entire career.
18        Q.    Thirty plus years?
19        A.    I believe his father was there and his
20   mother was there way before I started, yes, sir.
21        Q.    Have you done any favors for them pertaining
22   to this case?
23        A.    No, sir.
24        Q.    Have you spoken to them about this case?
25        A.    Yes, sir.
```

1    Q.   What was that conversation?

2    A.   About the case and the scenario about him

3  being terminated.

4    Q.   What aspects did you speak to them with

5  about this case?

6    A.   Repeat that.

7    Q.   What aspects of the case did you speak with

8  them about?

9    A.   Can you re --

10    Q.   What did you tell them about the case?  Did

11  you tell them what happened, how it happened, when it

12  happened, why it happened?

13    A.   No.

14    Q.   What did you share with them?

15    A.   They were asking me about would he be

16  terminated and if I could review it.

17    Q.   Why would they ask you to do that?

18         MR. RUSSO:  Object to form.  Calls for

19  speculation.

20    A.   Don't know.

21    Q.   (By Mr. Rice) Would that be considered an

22  asking of a favor for you to review that termination?

23    A.   I review all terminations.

24    Q.   Why would they ask?

25         MR. RUSSO:  Object to form.  Calls for

 1  speculation.

 2        A.   (Witness shrugs shoulders.)

 3        **Q.   (By Mr. Rice) Was that done through a phone**

 4  **call?**

 5        A.   No, I seen her in the hallway.

 6        **Q.   Okay.**

 7             MR. RICE:  Excuse me, Mr. Russo?

 8             MR. RUSSO:  Yes.

 9             MR. RICE:  May I ask him, can he provide me

10  with a transcript of that conversation?

11             MR. RUSSO:  In testimony-wise?

12             MR. RICE:  Just whatever.

13             MR. RUSSO:  You can ask -- you can ask him

14  if he can recall the conversation all you want or if a

15  transcript exists.

16        **Q.   (By Mr. Rice) Can you recall that**

17  **conversation, or can you provide me with what that**

18  **conversation was about?**

19        A.   His mother asked me if I would look at the

20  review of the -- if he was going to be terminated, and

21  I told her I review all terminations.

22        **Q.   Was she asking in a favor-way far as can you**

23  **see what you can do for him; or was it just, hey,**

24  **what's happening?**

25        A.   I can't answer that.  I don't know.

BENSON vs GALVESTON COUNTY, et al.                          Page 75
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1      Q.   Okay.  Did you speak with them any other
 2   times about the investigation?
 3      A.   I don't recall.  I mean, he was terminated
 4   anyway.
 5      Q.   Have you spoken with him after he's been
 6   terminated?
 7      A.   I was at her retirement party.
 8      Q.   Okay.  No further questions.
 9           MR. LASSWELL:  You want to take a break?
10           THE WITNESS:  Yeah, that would be good.
11                    (Recess taken)
12                       EXAMINATION
13   BY MR. LASSWELL:
14      Q.   Sheriff, I introduced myself to you earlier.
15   My name is Bryan Lasswell, and I represent Eddie
16   Benavidez.  And so not a lot of questions, but a few.
17   For instance, was this -- was this incident involving
18   the shooting of Mr. Benson, was it investigated by a
19   law enforcement agency?
20      A.   Yes, sir, the Texas Rangers.
21      Q.   Okay.  And are you -- do you know what the
22   outcome of that investigation was?
23      A.   It was brought to the district attorney and
24   brought to the grand jury and he was no billed that
25   I'm aware of.
```

BENSON vs GALVESTON COUNTY, et al.                        Page 76
HENRY TROCHESSET - VOL.1, 08/26/2022

1        Q.   And for the jury, what does a no bill mean?

2        A.   That he will not go forward to a trial.

3        Q.   Okay.  So they were not going to investigate

4   it any further, correct?

5        A.   Criminally, no, sir.

6        Q.   Okay.  Okay.  Now, you as the sheriff, I

7   think you talked about earlier, among your duties are

8   to oversee the county jail, to patrol unincorporated

9   areas and to provide security at the courthouse,

10  correct?

11       A.   Correct.

12       Q.   Now your use of force policy, my

13  interpretation of it is that it's most applicable to

14  your patrol officers in terms of the scenarios they

15  may face as opposed to someone who is assigned to the

16  corrections divisions -- division?

17       A.   On a day-to-day, yes, sir.

18       Q.   Okay.  All right.  One of the things that

19  I've provided there or is attached as Exhibit No. 1 is

20  Article 16.21 of the Texas Code of Criminal Procedure.

21  And if you want take yourself -- take a second there

22  and familiarize yourself with that.

23                 (Exhibit 1 marked.)

24       A.   (Witness reviews document.)

25       Q. (By Mr. Lasswell) And generally what I'm

1   focused on is this talks about the duty of the

2   sheriff as to prisoners.  And if you look at the

3   second line, it states as a sheriff, which would be

4   you, shall adopt all necessary measures to prevent

5   the escape of a prisoner.  Do you see that?

6        A.   Yes, sir, I do.

7        Q.   Okay.  And by extension that duty not only

8   applies to you, but it applies to the deputies under

9   your command; is that correct?

10       A.   Correct.

11       Q.   Okay.  So that would have applied to

12  Mr. Benavidez back in July of 2019, on the day of the

13  incident, correct?

14       A.   Could.

15       Q.   Okay.  Now, Mr. Benson -- are you familiar

16  with the circumstances as to how he came into custody?

17       A.   From the courthouse?

18       Q.   Yes, sir.

19       A.   Yes, sir.

20       Q.   Okay.  It's our understanding that he had

21  made a court appearance, and that at that time it was

22  determined that there was an outstanding warrant for

23  his arrest.  Did you know that?

24       A.   From what I was told.

25       Q.   Okay.  And that -- so he was taken into

BENSON vs GALVESTON COUNTY, et al.                    Page 78
HENRY TROCHESSET - VOL.1, 08/26/2022

1   custody by one of the bailers in the courtroom; do you
2   understand that?
3       A.   From what I was told, yes, sir.
4       Q.   Okay.  Okay.  And at some point he gained
5   access to some drugs that he had on his person and
6   swallowed some ecstasy; do you understand that?
7       A.   From what I was told.
8       Q.   Okay.  So he was taken into custody subject
9   to a warrant and was going to be processed into the
10  jail but for his taking of the ecstasy.  Is that a
11  fair summary of things?
12      A.   From what I was told, yes, sir.
13      Q.   Okay.  So he was at that time a pretrial
14  detainee; would you agree with that?
15      A.   Yes, sir.
16      Q.   Okay.  So whether he was at the courthouse
17  or at UTMB, he was not -- he was not a free man,
18  correct?  He was subject to confinement?
19      A.   Correct.  He was not free to go.
20      Q.   Okay.  And are you -- this is something that
21  I just thought of.
22            Are you familiar with the use of
23  force policy for the Texas Department of Corrections
24  or criminal justice, the entity that administers our
25  correctional facilities?

```
 1        A.   No, sir.
 2        Q.   Okay.  Okay.  All right.  Take a look at
 3   what I've marked as Exhibit No. 2, which should be in
 4   front of you, which is Texas Penal Code Section 9.52.
 5                  (Exhibit 2 marked.)
 6        A.   (Witness reviews document.)
 7        Q. (By Mr. Lasswell) Okay.  Would you agree
 8   with me that, I believe it was July 11th of 2019,
 9   that Deputy Benavidez was an employee of the
10   correctional facility at the Galveston County Jail?
11        A.   Yes, sir.
12        Q.   Okay.  And he was also a certified peace
13   officer, correct?
14        A.   Yes, sir.
15        Q.   Okay.  And under the Penal Code
16   Section 9.52, Mr. Benavidez or Deputy Benavidez at the
17   time -- and I'll just quote:  "Was justified in using
18   any force, including deadly force, that he reasonably
19   believed to be immediately necessary to prevent the
20   escape of a person from the correctional facility."
21                  Now, you would agree that Mr. Benson
22   was -- was a pretrial detainee who was not subject
23   to -- or let me just start over.  That's horrible,
24   sorry.
25                  Mr. Benson on July 11th, 2019, at
```

1  UTMB was under confinement at the Galveston County

2  Jail, correct?

3       A.   Not free to go, yes, sir.

4       Q.   Okay.  All right.  And he did escape, or he

5  attempted to escape, correct?

6       A.   Correct.

7       Q.   And under the penal code, Deputy Benavidez

8  was allowed to use whatever he believed to be

9  reasonably necessary to prevent that escape, including

10 deadly force.  Correct?

11      A.   Reading this, yes.

12      Q.   When you say reading this, you're referring

13 to the Penal Code Section 9.52?

14      A.   Correct.

15      Q.   Okay.  Now, the county -- the sheriff's

16 office use of force policy is more restrained than the

17 penal code, correct?

18      A.   Yes.

19      Q.   But would you agree with me then in the

20 hierarchy of things, the penal code is more -- what am

21 I trying to say here.

22            In the hierarchy of the laws, the

23 penal code carries greater weight than the Galveston

24 County Sheriff's Office policies?

25      A.   It's probably why he wasn't indicted.

 1       Q.   Okay.  But would you agree with me that it
 2   carries greater weight, the penal code than the
 3   sheriff's office policy?
 4       A.   Not sure about the weight factor but.
 5       Q.   Okay.  All right.  And then lastly,
 6   Exhibit No. 3.
 7                  (Exhibit 3 marked.)
 8       Q. (By Mr. Lasswell) I believe this is a --
 9   portions of manual from the corrections department.
10   And we're not going to go through this page-by-page
11   word-for-word; but if you look at the second page, I
12   believe under Section B is what I'm going to focus
13   on.
14       A.   (Witness reviews document.)
15       Q.   Okay.  You ready?
16       A.   Oh, yes.
17       Q.   Okay.  All right.  Well, I'm going to change
18   my -- if you look at the first page, it's got an
19   effective date, I believe -- or a revised date of
20   April 1st, 2019?
21       A.   Yes.
22       Q.   Okay.  And by the way just for the record,
23   these are documents that have been Bates stamped
24   Benson 774 through 778, if you look down there at the
25   bottom.

1      A.   Yes.

2      Q.   Okay.  Then back to the second page of the

3   document, to B, it reads that all staff members are

4   bound by duty to take any measure as may be legally

5   possible to prevent escapes.  Correct?

6      A.   Yes, sir.

7      Q.   And that would have included

8   Deputy Benavidez?

9      A.   Yes, sir.

10      Q.   And when we talk about legally possible,

11   under the Texas Penal Code that we just went over,

12   Exhibit No. 2, that -- that's up to and including use

13   of deadly force, correct?

14      A.   From what I'm reading.

15      Q.   Okay.  I think we touched on this; but when

16   Deputy Benavidez came to the sheriff's department and

17   applied, he had been -- what is your understanding as

18   to what type of training he received at that point?

19      A.   Well, he went through years of the Marine

20   Corps, service to his country.  And his peace

21   officer -- he was a certified policeman, peace

22   officer.

23      Q.   Okay.  And is that a standardized program,

24   to your knowledge?

25      A.   Yes, sir.

1    Q.   Okay.  So he had -- did he have all the
2  qualifications necessary in terms of his training to
3  be considered for the Galveston County Sheriff's
4  Office?
5    A.   Yes, sir.
6    Q.   Okay.  And, in fact, he was hired, correct?
7    A.   Correct.
8    Q.   And he worked there for over ten years, from
9  what I understand?
10   A.   I believe around ten.  I can't remember the
11 dates.
12   Q.   All right.  One last thing.  I think you
13 touched on this, but as a department you don't equip
14 your deputies, like, with firearms for instance; do
15 you?
16   A.   No, sir.
17   Q.   And what about other devices?  Is there any
18 standardized equipment that is supplied by the
19 sheriff's office to a deputy?
20   A.   Their uniform.
21   Q.   Okay.  And I guess more specifically, to
22 someone in the corrections division.
23   A.   Their uniform.
24   Q.   Okay.  So if they want any other type of
25 equipment, be it a firearm or leg irons or handcuffs,

BENSON vs GALVESTON COUNTY, et al.                          Page 84
HENRY TROCHESSET - VOL.1, 08/26/2022

1   that's something they have to provide for themselves?

2       A.   Leg irons and handcuffs, we would probably

3   provide if he's transporting.

4       Q.   Okay.  But in terms of other -- like, pepper

5   spray, anything like that, that's not standard

6   equipment that's provided by the sheriff's office?

7       A.   No, sir.

8       Q.   Okay.  Thank you, sir.

9            MR. RUSSO:  All right.  We done?

10                    FURTHER EXAMINATION

11   BY MR. RICE:

12       Q.   Are the deputies required to check in their

13   service weapon, or are they -- just can use any weapon

14   they want?

15       A.   You're talking about service weapon --

16   you're talking about the firearm that they carry?

17       Q.   Yes.

18       A.   They're supposed to qualify prior to

19   carrying that weapon.

20       Q.   Okay.

21       A.   They have to show proficiency.

22       Q.   Using that same weapon?

23       A.   Correct.

24       Q.   No further questions.

25            MR. RUSSO:  We'll reserve until trial.

```
 1              CHANGES AND SIGNATURE

 2   WITNESS NAME: HENRY TROCHESSET

 3   DATE OF DEPOSITION:  August 22, 2022

 4   PAGE LINE   CHANGE                    REASON

 5   _____

 6   _____

 7   _____

 8   _____

 9   _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____
```



BENSON vs GALVESTON COUNTY, et al.                          Page 86
HENRY TROCHESSET - VOL.1, 08/26/2022

1

2       I,_____, do hereby certify that I

3   have read the foregoing pages, and that the same is a

4   correct transcription of the answers given by me to the

5   questions therein propounded, except for the corrections

6   or changes in form or substance, if any, noted in the

7   attached Errata Sheet.

8

9       _____

10      WITNESS SIGNATURE DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                          Page 87
HENRY TROCHESSET - VOL.1, 08/26/2022

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
 2                        GALVESTON DIVISION

 3   DENNIS REYNARD BENSON          )
          Plaintiff,               )
 4                                  ) CIVIL ACTION NO.:
     v                              )  #;21-cv-00200
 5                                  )
     GALVESTON COUNTY, ET AL        )
 6        Defendants.              )

 7                 REPORTER'S CERTIFICATION FOR THE

 8                 ORAL DEPOSITION OF HENRY TROCHESSET

 9                       AUGUST 22, 2022

10        I, Jill M. Vaughan, Certified Shorthand Reporter in

11   and for the State of Texas, hereby certify pursuant to

12   the Federal Rules and/or agreement of the parties present

13   to the following:

14        That the witness, HENRY TROCHESSET, was duly sworn

15   by the officer and that the transcript of the oral

16   deposition is a true record of the testimony given by the

17   witness;

18        That the deposition transcript was duly submitted on

19   _____ to the witness or to the attorney for

20   the witness for examination, signature, and return to

21   AdvancedOne by _____.

22        I further certify that I am neither counsel for,

23   related to, nor employed by any of the parties in the

24   action in which this proceeding was taken, and further

25   that I am not financially or otherwise interested in the
```

BENSON vs GALVESTON COUNTY, et al.                    Page 88
HENRY TROCHESSET - VOL.1, 08/26/2022

1   outcome of this action.

2        Certified to by me on this 31stday of

3   August, 2022.

4

5                    _____

6                    Jill M. Vaughan, CSR, RPR
                     CSR No.  6192
7                    Expiration date: 7-31-24
                     AdvancedOne
8                    Firm No. 69
                     2777 N. Stemmons Freeway
9                    Suite 1025
                     Dallas, TX 75207
10                   888-656-3376

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

BENSON vs GALVESTON COUNTY, et al.
HENRY TROCHESSET - VOL.1, 08/26/2022

89
Index: 1..added

### Exhibits

**Trochesset, Henry 08-22-22 (Benson) Exhibit 1**
3:10 76:19,23

**Trochesset, Henry 08-22-22 (Benson) Exhibit 2**
3:11 79:3,5 82:12

**Trochesset, Henry 08-22-22 (Benson) Exhibit 3**
3:12 81:6,7

---

### 1

**1**
57:3 76:19,23

**1/2**
57:3

**100**
8:14

**11th**
79:8,25

**12-hour**
7:7

**14th**
4:17

**16.21**
76:20

**1964**
4:17

**1st**
81:20

---

### 2

**2**

79:3,5 82:12

**2019**
77:12 79:8,25 81:20

---

### 3

**3**
81:6,7

**30**
18:11 59:15

**37**
7:8 8:2,15 39:17

**39**
6:6 9:25

---

### 4

**48:1**
38:2,3

---

### 7

**774**
81:24

**778**
81:24

---

### 9

**9.52**
79:4,16 80:13

---

### A

**A-N-D-R-E-W**
4:13

**abilities**
33:14 34:21

**ability**
33:2 41:5

**able**
15:24 16:2 27:23 38:11 50:15 58:7

**about**
8:16 9:2 13:8 18:17 21:7,12 27:9 31:13 33:6 59:9 70:20,22,24 71:9 72:14,24 73:2,5,8,10,15 74:18 75:2 76:7 77:1 81:4 82:10 83:17 84:15,16

**academy**
6:18,21,24,25 7:2,4,13,17,19,20 8:1,3,4,7,10,12,17 9:5 56:16,18

**accepted**
25:9,14

**access**
30:18,19 38:12 78:5

**according**
58:2 60:25

**accordingly**
61:12,17

**accused**
30:25 31:23

**acted**
61:12,23 67:18 68:9

**acting**
60:25 61:17 62:11

**actions**
32:22 47:1

**add**
20:23

**added**
66:22

**addresses**
42:21

**administered**
17:18,24

**administers**
78:24

**administrative**
60:20

**administrator**
35:18,19

**admit**
43:23 44:1,16

**admitted**
31:14

**adopt**
77:4

**affair**
29:16 66:24

**affairs**
23:22 24:2,11 25:15
29:5,19,24 30:2,10,17,23
31:6 66:23 67:2 70:16

**affect**
57:11

**after**
19:1 35:5 45:7,11 62:10
66:7 67:10,16 75:5

**again**
8:15 9:20 14:24 32:5
50:6,10 52:10 58:7 60:1
64:3,11 70:8

**against**
21:14 32:19 68:11

**agencies**
28:9

**agency**
9:11 15:21 19:14,21
29:13 31:9 33:5 75:19

**ago**
7:8 8:2,15 9:3 10:1 17:13
27:9 31:24

**agree**
78:14 79:7,21 80:19 81:1

**ahead**
49:25

**Alaska**
47:8

**all**
10:19 14:4 16:5 59:7,13
63:5,22,23 64:13 65:2
69:4 70:12 73:23 74:14,
21 76:18 77:4 79:2 80:4
81:5,17 82:3 83:1,12
84:9

**alleged**
23:12 32:23

**allow**
30:23 31:5 43:23 46:19
51:13

**allowed**
11:13 20:18,23 29:20
44:2 49:12 51:12,14
52:11,22,24 64:11 80:8

**allowing**
27:8 28:4

**allows**
50:16

**almost**
9:25 18:11

**already**
69:25

**also**
61:25 79:12

**always**
12:13

**am**
50:15 80:20

**ambiguous**
12:12,19 31:2 36:11,17
37:23 51:19 56:11 58:1,
19 59:6 60:7

**ambulance**
38:24,25

**among**
76:7

**an**
8:1 15:13 17:2,4 18:22
19:9 22:12 26:7,8 27:8,
12,21 28:17,22 29:13
30:16 31:14 32:18 34:2,
8,9 36:21 38:10,24,25
41:4 42:21,25 43:2 47:20
48:5 51:17 52:3,7,25
58:16 61:9 73:21 77:22
79:9 81:18

**and**
4:23 5:13,17,23,25 6:19
7:3 8:7,16 9:4,13,16,19,
22 10:11,18,20,22 11:2,
20 13:12,15 14:9,14,22,
23 15:9,17 16:6,15,23
17:3,4,14 18:8,9 19:23
20:8,18 21:4,20 22:14,
17,23 23:1 24:3,7,10
25:16 27:13,15,18 29:15,
20 30:8 31:2,23 32:9,23
33:12 35:14,16,19,25
36:3,5,16 37:5,9 38:3,5,
17,25 39:3 40:14,16 42:2
43:18 44:22 45:11,12,20

AdvancedONE
LEGAL
(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.
HENRY TROCHESSET - VOL.1, 08/26/2022

46:19 47:4,20 48:5,7,17,
25 49:19,22 50:2 51:5,
19,23 52:15,18 53:14,15,
20,21 54:14,20 55:10,12
56:10,25 57:25 58:1,11,
18,21 59:1,5,18 60:1,6,8,
22,24 61:12,15,16,25
62:4,15,20,25 63:18
64:6,11,13 65:14 66:6,8,
9,11 67:6,14,15,17,21,25
68:18,23,24 69:4,7,9,15,
21,23,24 70:6,9,12,25
71:1,20 72:7,19 73:2,16
74:20 75:15,16,21,23,24
76:1,9,21,22,25 77:2,7,
21,25 78:4,5,9,20 79:12,
15,17 80:4,7 81:5,10,22
82:7,10,12,16,20,23
83:6,8,17,21 84:2 85:1

**Andrew**
4:11

**annually**
11:15 49:2 64:7

**another**
23:12 36:24 37:2 41:21
44:5

**answer**
5:5 19:15 23:2 25:21
49:25 59:20 70:3 74:25

**answered**
15:10 18:10 44:22 45:21
52:19 54:21 58:1,11
63:18 67:22 68:19 70:7

**answers**
5:2

**any**
4:1 5:8,9,16 6:11,16
8:11,17 13:24 14:5 16:16
25:23,24 27:1 30:1,7

40:22 47:11 56:6 63:17
65:6,10 67:6 70:16 71:6,
13 72:21 75:1 76:4 79:18
82:4 83:17,24 84:13

**anything**
6:12,16 56:8 64:2 84:5

**anyway**
75:4

**anywhere**
57:23

**appearance**
77:21

**applicable**
76:13

**application**
20:2,8,17,19,22,23 21:7,
13

**applied**
25:1,8 77:11 82:17

**applies**
15:23 16:1 77:8

**apply**
6:20

**approval**
44:20

**April**
81:20

**apt**
33:16

**aptitude**
15:13 27:21

**are**
5:5,8,20 10:12 11:1,11,
12,15 13:24 14:2,5,20
15:4,22,24 16:1 17:7
18:16 19:12 21:16 23:20

24:1,9,16,19,25 25:24
26:6 28:12 33:9,12 35:21
36:9,19 37:7,10,11 38:3,
21 39:5,11,14,19,20,23
40:21,22 41:14,21 42:6
43:9 46:9 47:4,23 48:3
49:2,6,9,12,16,21 50:25
51:3,4 52:11 53:3,7
56:13 58:7 59:7,15 63:4
64:6,10 65:15,18 66:14,
18 69:23 71:6 75:21 76:7
77:15 78:20,22 81:23
82:3 84:12,13

**area**
19:14 33:16 69:18

**areas**
6:3 69:20 76:9

**aren't**
57:13

**arise**
53:4,7,10

**arithmetic**
15:15

**arm**
36:4 51:7

**armband**
27:12,14,19,23

**armbands**
27:15

**armed**
37:7 62:15,20,25

**around**
37:3,11 45:12 50:17
83:10

**arrest**
77:23

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.
HENRY TROCHESSET - VOL.1, 08/26/2022

92

Index: arrived..bathroom

**arrived**
66:3,7

**arrives**
13:12 41:4

**Article**
76:20

**as**
4:3,13 5:2 6:13,15 8:21
9:7 13:14 17:14 18:3,6,
23,24 19:15 23:16 26:20
27:1 28:12,19 32:22,23
33:24 38:9 40:8 41:15
46:13 51:5 53:8 56:7,8,
10 57:13 58:3,4 74:22
76:6,15,19 77:2,3,16
79:3 82:4,17 83:13

**as-needed**
11:23 12:2

**ask**
32:4 42:1 60:1 71:15
73:17,24 74:9,13

**asked**
9:1 15:9 18:7,9 44:22
45:20 52:18 54:20 57:25
58:11 63:18 67:21 68:18
70:6 74:19

**asking**
51:14 54:22 60:5 73:15,
22 74:22

**aspect**
10:7

**aspects**
10:12 56:14 73:4,7

**assess**
34:13 66:3

**assign**
33:17

**assigned**
33:13 76:15

**assume**
62:18

**assumes**
11:10 12:12 15:2 18:20
19:3 22:20 23:14,17,23
24:6,22 25:10,19 26:11,
17 28:21 30:5,12 32:2,14
35:10 40:24 42:10 43:6
46:6,15,21 48:22 55:14,
25

**assuming**
44:15

**at**
5:16,21 7:1,11 8:10 20:5
22:12,15,16,24 28:25
34:14 35:6 40:13 41:4,6
46:2 50:13 54:17,23
65:22 66:7,8,9 68:3
69:23 71:1 72:13 74:19
75:7 76:9 77:2,21 78:4,
13,16,17 79:2,10,16,25
80:1 81:11,18,24 82:18

**attached**
76:19

**attempted**
80:5

**attend**
6:9 8:4 72:12

**attended**
8:1 9:25 64:14

**attention**
21:21 32:7

**attorney**
22:25 29:1 66:7 71:1,9
75:23

**attorney's**
26:4,18 70:17,19 71:4

**attributes**
33:9

**aware**
14:20 15:4 17:7,11,21
18:16 21:16 22:12 23:20
24:1,9,16,19,25 25:25
26:6 30:9,14 36:9,14
39:14,19 40:21 41:14,21
42:6,23,24 43:9 47:13
49:4 50:25 51:3 53:3,7
62:23 71:21 75:25

**away**
66:10

---

**B**

**back**
9:13 11:2 15:22 17:24
21:4 55:10 58:13 77:12
82:2

**backed**
66:10

**background**
13:10 14:3 19:9,12

**bailers**
78:1

**based**
58:23 59:2 68:24 69:7,
14,20

**basic**
6:25 7:2 15:14

**Bates**
81:23

**bathroom**
42:19,21

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

**be**
4:5,6 5:17 6:6 8:4,13
9:12 12:14 14:4,23 15:8
18:13 19:20 20:17,19,22
21:4,14 22:6,18 30:17,
18,24 34:1 37:14,17,18,
19 38:10,11 39:3,7 40:18
41:10 42:8 43:1,2,3 44:2
47:12 50:2,7,17 51:4,20
57:10 58:15,20 59:11,14
60:2 62:14,20,24 63:8,22
64:2 66:5,21 67:25 69:21
70:10 71:11 73:15,21
74:20 75:10 77:3 78:9
79:3,19 80:8 82:4 83:3,
25

**beach**
31:22

**became**
6:24

**because**
11:7 25:14 35:22 42:18
51:17 52:25 60:12 64:1
71:20

**become**
14:6,10,14 17:11 33:3

**becoming**
19:18,24 20:8 22:7

**been**
4:3 12:6 13:18 21:20
22:12 27:1,3,7 34:1 43:1
64:21 69:8,25 71:21
72:15 75:5 81:23 82:17

**before**
4:19 6:7,24 11:13 17:21
27:7 44:6 66:7 72:13,20

**behalf**
19:1

**being**
17:5 19:10 27:23 31:10
34:23 37:11 73:3

**belief**
58:15,23,24 59:11,13,14,
22,25 60:2,5 61:3,4,15,
18,21 62:2

**beliefs**
59:15

**believe**
12:6,21 21:19 22:22 25:3
27:17 30:22 31:15,20
42:18 43:17 44:4 45:6,8
56:3 61:2,22 63:1 67:9
72:19 79:8 81:8,12,19
83:10

**believed**
60:25 61:3,12,17,18,23
62:3 79:19 80:8

**bell**
66:16

**belly**
36:3,7,8,15 49:10

**Benavidez**
12:16,22 17:7,15 18:18
19:1 21:16 22:13,17
24:4,11 25:1,16 26:8
27:1 41:17,18 43:15,19,
22 44:1,6,7 53:25 60:12,
24 61:11,16,23 62:10,13
66:25 67:18 68:9 75:16
77:12 79:9,16 80:7 82:8,
16

**Benavidez'**
22:15 26:25 28:4 34:14,
21 64:17 71:25 72:2

**Benson**
36:8,14 43:10,11,15,23

44:2,6,17,21,25 45:6,10,
15 46:5 67:19 75:18
77:15 79:21,25 81:24

**Benson's**
41:19 42:2,14,16

**Better**
29:7

**between**
47:19 48:17

**big**
19:23 20:8

**bill**
76:1

**billed**
68:3 75:24

**birth**
4:16

**bit**
13:7 26:25 29:4 35:14

**black**
31:19

**blanket**
48:20

**Boat**
6:8

**bodily**
58:17 60:4

**booking**
27:14 39:12,23 40:1,4

**both**
4:6

**bottle**
64:2

**bottom**
81:25

AdvancedONE LEGAL

(866) 715-7770
advancedONE.com

**bound**
82:4

**breach**
68:22

**breached**
60:21 62:5 67:5,8

**break**
5:16,17 75:9

**bring**
53:21

**Brothers**
6:8

**brought**
21:20 68:20 75:23,24

**Bryan**
75:15

**business**
72:11

**but**
6:13 8:14 9:2 10:5 25:8 28:24 43:9 59:15 63:2, 13,24 66:7,16,20 75:16 77:8 78:10 80:19 81:1,4, 11 82:15 83:13 84:4

**by**
4:9 11:7,12,21 12:15,21 13:2,24 14:18,23 15:4,12 16:11,21 17:11,20 18:14, 22 19:6 20:7,15 21:3,11, 20,24 22:4,11,23 23:5,9, 15,20 24:1,9,16,19,21,25 25:5,13,22 26:3,8,13,20 27:4 28:3,16,19,24 29:10 30:8,15 31:4,19,20 32:4, 13,16 33:13,24 34:6,13, 20 35:3,13 36:13,19 37:25 40:14 41:2 42:8,13

43:9,14 44:24 45:23 46:2,9,18,24 47:5,11,19 48:3,10,20,25 50:2,7,21 51:20 52:3,21 54:4,24 55:17,21 56:3,13,23 57:7,18 58:3,6,12,20,22 59:2,9,21,22 60:11,17,22 61:11,14,22 62:2,10,19 63:16,20 65:5 67:3,24 68:4,9,15,23 69:3,13 70:4,12 71:24 73:21 74:3,16 75:13,18 76:25 77:7 78:1 79:7 81:8,22 82:4 83:18 84:6,11

---

### C

**call**
7:20 29:13 36:1 70:22,24 74:4

**called**
18:12 22:14 28:9 37:4 66:6

**calls**
12:24 16:8,18 18:19 20:3,11 21:8 23:3 26:16 27:25 30:13 32:1,11 34:3,17,25 35:10 47:25 48:6 52:1 57:4 59:17,18 61:6 68:1,12 70:1,21 73:18,25

**came**
23:21 56:19 60:4 67:14 77:16 82:16

**can**
4:5 7:15 9:19 14:24 15:14 16:23 27:12 29:2 36:21 42:7 45:9 48:4 49:25 50:13 53:3,7,22 54:18 57:21 59:22 62:20

66:1 67:24 68:5 71:5 72:15 73:9 74:9,13,14, 16,17,22,23 84:13

**can't**
17:13 19:8,15 25:12 28:24 57:11 63:23 66:5, 16 71:10 74:25 83:10

**candidates**
16:16

**cannot**
19:5,6

**capacity**
32:22

**captain**
72:6

**career**
19:15 72:17

**carries**
80:23 81:2

**carry**
49:17 51:12,13,15 52:11, 22,24 84:16

**carrying**
84:19

**case**
21:17,25 31:23 32:7,15 33:19 42:14,17 51:8 52:17 53:9 66:12,15 69:7,24 70:20 71:4,9 72:22,24 73:2,5,7,10

**cases**
68:24 69:15 70:9

**cell**
37:5

**certain**
14:3 53:21 69:20 70:10

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                    95
HENRY TROCHESSET - VOL.1, 08/26/2022  Index: certification..conclusions

**certification**
9:15,21,23

**certified**
79:12 82:21

**chain**
13:11 15:19 36:7 49:10

**chains**
36:3,8,15

**chance**
34:2 52:13

**chances**
51:3

**change**
81:17

**changed**
12:14

**CHANGES**
85:1

**charge**
10:2 22:18 24:10

**charges**
40:16

**check**
84:12

**checks**
19:12

**chief**
13:14,16 72:8

**chooses**
33:20

**circumstance**
53:1 59:1

**circumstances**
77:16

**City**
31:20

**clarify**
9:1 18:1 32:5

**clarifying**
7:15

**Class**
19:20 21:25

**classes**
63:20 65:14

**classification**
40:13,15

**clear**
17:20

**clearly**
22:13

**clock**
45:12

**close**
57:23

**code**
76:20 79:4,15 80:7,13,
17,20,23 81:2 82:11

**collect**
29:21

**collected**
30:16 68:20

**college**
6:11,15,18

**come**
21:4 22:17 23:1 53:21
58:12 60:9 64:4 65:16
69:24 70:5

**comes**
13:25 29:5 35:15 46:20

53:19

**command**
6:18 13:12 15:19 77:9

**Commission**
19:19

**commits**
59:12

**committed**
25:25 26:2,3

**committee**
60:20 62:4 68:21

**committing**
31:1

**common**
46:12,18

**communicate**
26:4 28:22

**communication**
71:3

**complete**
7:5 65:7

**completely**
12:1

**compound**
29:9 49:24 50:19 51:18

**comprehend**
16:24

**comprehending**
17:3,4

**compromise**
51:25 52:4,8

**conclusion**
48:8

**conclusions**
59:18

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                    96
HENRY TROCHESSET - VOL.1, 08/26/2022          Index: conducted..dates

**conducted**
14:4

**conference**
31:24

**confinement**
78:18 80:1

**confused**
50:10

**consider**
18:15 36:6

**considered**
40:18 58:15 59:11 60:2
62:14,20,24 73:21 83:3

**consist**
57:2

**contact**
26:18 41:11,17

**contacted**
18:17,25

**continuing**
6:16,17

**conversation**
73:1 74:10,14,17,18

**convicted**
19:22 22:10

**Corps**
82:20

**correct**
8:6 10:4 13:19 15:3,8,16
17:6 19:11 20:19 23:6
47:5 49:1 56:19 59:16
62:7 66:13 68:11,25
70:13 72:3 76:4,10,11
77:9,10,13 78:18,19
79:13 80:2,5,6,10,14,17
82:5,13 83:6,7 84:23

**correctional**
78:25 79:10,20

**corrections**
76:16 78:23 81:9 83:22

**cost**
28:7

**could**
4:12 5:25 6:22 7:3 9:22
14:14 18:8 20:17,20
27:11,22 29:4 31:3 34:5
38:8 49:22 50:4 51:6
52:4,6,9 53:10 55:16,20
57:16 61:8 62:10 64:2,22
68:10 69:5 72:1 73:16
77:14

**country**
82:20

**county**
5:22,24 6:2,3 8:21 10:17
28:7 39:15 47:21 48:10,
15 51:1 76:8 79:10 80:1,
15,24 83:3

**couple**
9:1 31:24 66:22

**course**
9:18,19 56:22

**courses**
63:20

**court**
4:1 5:3 42:8,13 45:18
77:21

**courthouse**
6:4 76:9 77:17 78:16

**courtroom**
78:1

**cover**
26:22

**covered**
24:3 26:7

**created**
24:21

**creates**
10:17

**creating**
10:3

**crime**
24:3 26:22 31:1

**crimes**
19:17 25:25

**criminal**
66:15 76:20 78:24

**Criminally**
76:5

**crowded**
50:15

**cuffed**
37:18 39:3

**current**
7:14 8:16 9:4,5 69:14,15

**currently**
5:20 8:25 9:7 10:6 63:21

**custody**
77:16 78:1,8

---

**D**

**dangerous**
62:15,21,25

**date**
4:16 11:25 81:19

**dates**
83:11

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

**day**
36:9,15 41:19 65:24
70:23 77:12

**day-to-day**
76:17

**deadly**
8:11,17 12:8 54:6,10,12,
19 55:7,12,23 56:4,9,14,
19,24 57:7,10,14,19 58:7
59:12 63:10 69:15 79:18
80:10 82:13

**deal**
54:5,9

**dealing**
40:7 48:12

**dealings**
66:12

**deals**
54:19 56:9

**dealt**
19:14

**death**
58:16 60:3

**December**
6:6

**decide**
13:16

**decides**
13:8

**decisions**
46:19

**defendant**
21:6,10 43:10,13,14

**defendants**
4:6

**defined**
56:25 57:1,7 69:23

**definition**
57:2

**deliberate**
66:18

**department**
9:18 12:23 13:9,14 14:6,
23 16:22 17:1 18:25
22:16 23:22 24:12 25:2,6
26:21 45:3 48:11,15
49:23 50:18 53:18 54:25
65:5,10,11,21 67:17
68:11 72:7 78:23 81:9
82:16 83:13

**depending**
37:18 64:3,11

**depends**
9:10 33:4 37:12,19 38:24
53:1,19

**deposition**
4:18,19

**deputies**
7:14 9:6 10:23 11:1
13:10 19:13 33:2,9,12
37:7 38:4 39:11 40:23
46:3,9,12 47:4 48:11,16
49:2,16 51:7 52:11 54:5,
9 56:7 63:4,22 64:14
65:6,22 77:8 83:14 84:12

**deputy**
8:5,22 9:8 11:18 12:16,
22 14:17,18 15:17,18,24,
25 16:1,4,6 17:5,7,15
18:2,6,18 19:1,9,18,24
20:2,7,9,15,16,21 21:12,
16 22:7,8,15 24:4,10
25:1,16 26:8,21,25 27:1

28:4 30:25 31:7 32:23
33:3,18 34:6,7,14,21
35:5 37:4 38:1,10,11
39:6 41:5,10,17,22
43:19,22 44:1,6,7,9,14,
16,20,24 45:2 46:19
49:5,20 50:12 52:22
53:4,8,12,13,25 55:6
60:12,24 61:11,16 62:7,
10,13 63:8 64:17 66:25
67:13,18 68:9 71:24 72:2
79:9,16 80:7 82:8,16
83:19

**deputy's**
46:25

**describe**
50:4

**describes**
62:20,24

**description**
63:1

**desk**
13:12

**detailed**
40:1,2 50:8 56:25

**detainee**
34:24 47:20 48:5 78:14
79:22

**detainees**
48:13,17

**detention**
47:22

**determine**
15:20 67:7

**determined**
40:13,14 58:20 60:20
69:25 77:22

**devices**
83:17

**did**
6:7,9,11,20,23 7:6 17:11,
21 20:14 22:23 23:9
24:10 28:7 31:12 32:24
33:12 41:17 43:18,19,22
44:1,13,16,20,24 45:2,
15,18,23 46:2 50:3 60:24
61:2 67:11 68:16,22
70:15,19 73:4,7,10,14
75:1 77:23 80:4 83:1

**didn't**
25:8 30:2 71:8

**difference**
47:19 48:16

**different**
7:5 10:12 33:13 40:8
46:3 47:23 48:3,11,16
53:20 54:22 59:16 63:2,
5,9,14,23 64:10 65:14

**dig**
56:23

**digging**
58:14

**disciplinary**
62:4 68:21

**discoverable**
23:16

**discovered**
32:9

**discovery**
18:24 23:16 64:20

**discuss**
26:24 56:6 63:23

**disqualify**
19:17 22:7

**disregard**
46:20

**disruptive**
4:5

**district**
26:4,18 66:6 70:17,19
71:1,4,9 75:23

**division**
9:10 33:4 76:16 83:22

**divisions**
33:13 76:16

**do**
4:4 5:3 8:7,10,23 9:8,14
10:13 12:3,6,15,21
13:10,20 14:9 15:14 16:4
25:5 27:5,21 28:6,8,11,
22,25 30:22 31:4 32:5
38:18,19 42:16 53:11,18,
24 54:5,8,18 56:3 63:4,
16,21 64:8,13,19 65:16
69:18 71:24 72:2,4,9,12
73:17 74:23 75:21 77:5,6
78:1,6 83:14

**doctor**
41:7,9,25

**document**
23:6 76:24 79:6 81:14
82:3

**documents**
81:23

**does**
10:22 13:16 15:13 16:25
27:15 33:17 35:6 40:4
41:5,10 47:1 48:10,15
55:21 56:6 57:2 59:25
65:5,10,21 76:1

**doesn't**

7:23 12:13 69:24

**doing**
66:10

**don't**
4:5 5:12 7:19 8:19 10:5
11:25 13:2 16:10,20
17:18,23 18:4,5 20:5,13
23:2,19 25:21 28:13
29:22 30:7,21 31:25
32:3,13,17 33:23 34:19,
22 35:2 36:12,13 39:13,
22 40:3,6 41:1,13,16
42:5,12,15 43:8,21
44:19,23 45:1,4,14,17,22
46:1,8,11,17 48:9 54:2,
23 56:22 59:21,24 62:13
64:1 68:14 70:4,14,18
71:13 73:20 74:25 75:3
83:13

**done**
29:15 47:7 69:21 70:10,
12 72:21 74:3 84:9

**Douglas**
35:20,21

**down**
53:21 67:14 81:24

**draw**
69:18

**drive**
67:15

**drugs**
21:7,12,13 78:5

**due**
44:25 45:24

**duly**
4:3

**during**

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.
HENRY TROCHESSET - VOL.1, 08/26/2022

8:12 9:23 10:11 30:3
40:15 60:9

**duties**
6:1 11:5,11 25:22 76:7

**duty**
77:1,7 82:4

**DWI**
21:17,24 22:6 23:11,21

———————————

**E**

**each**
10:7 12:2 13:16 37:24
38:1 54:13 58:24 59:1
65:7

**earlier**
39:8 56:17 75:14 76:7

**easier**
21:5

**ecstasy**
78:6,10

**Eddie**
75:15

**education**
6:13,16,17

**Edward**
22:17

**effect**
5:2

**effective**
81:19

**eight**
7:8 27:9 46:2

**eight-hour**
45:8,12

**either**
46:17 47:16

**eligible**
14:23

**else**
9:17 69:10 70:15

**email**
18:22 19:2,7 23:10

**emails**
71:6,9,11

**emergency**
41:23 42:4 44:25 45:24

**employed**
5:20

**employee**
18:13 60:9 79:9

**enforce**
10:20

**enforcement**
6:18,19 7:17 19:19
25:23,24 72:11 75:19

**enter**
15:21

**entire**
72:17

**entity**
78:24

**equation**
33:15

**equip**
53:12 83:13

**equipment**
49:5,9,20 83:18,25 84:6

**equipped**
63:22

**escalate**
38:12 48:4

**escalation**
38:8

**escape**
27:8 28:5 33:20 34:9
40:18 50:25 51:3,9,17
52:4,7,14,17,25 77:5
79:20 80:4,5,9

**escapes**
82:5

**escaping**
28:17 34:2 35:4

**escort**
34:8

**evaluations**
10:13

**even**
5:1 25:12 31:9 42:25
53:25 57:23 59:20 64:1,5
71:13

**event**
28:23

**ever**
4:18 16:12 17:18,23 18:2
27:1,7 31:12 32:5,18
68:4

**every**
11:18 15:23,25 16:1
29:20 30:3,4,24 31:6
47:21 53:13 55:1 58:20,
21 60:8 63:6,15 64:8,9

**everyone**
48:21,25

**everything**
23:11 64:24

**evidence**
11:10 18:20 19:4 22:21
23:16,18,24 24:7,8,20,
21,23 25:11,20 28:21
29:21 30:6,13,15,18,20
32:2 35:10 40:25 42:11
43:6,7 46:7,16,22 48:23
55:15 56:1 67:7 68:20
70:11,16

**exact**
57:12

**EXAMINATION**
4:8 75:12 84:10

**excessive**
32:18 54:9,11

**excuse**
4:16 74:7

**exhibit**
76:19,23 79:3,5 81:6,7
82:12

**exists**
30:9 74:15

**explain**
7:3 9:22 27:11 29:4 38:8
50:6 61:8 67:24

**explanations**
56:7

**extension**
77:7

**F**

**face**
63:9 76:15

**faced**
63:10

**facilities**
78:25

**facility**
28:17 33:19 35:15,17
36:21 37:3,9,10 38:10,
21,23 39:16,21 40:19
49:6,14,16 50:9,12,22
51:5,16,22 52:12,23,24
53:5,9 79:10,20

**fact**
83:6

**factor**
40:15 81:4

**facts**
11:10 12:12 15:2 18:20
19:3 22:21 23:14,17,23
24:6,22 25:10,19 26:11,
17 28:21 30:5,12 32:2,14
35:10 40:24 42:10 43:6
46:6,15,21 48:22 55:14,
25

**fail**
14:14,21

**failed**
14:22 16:6,13 17:8,22
19:1 20:15,16,21,24
23:11

**failing**
27:21

**fails**
15:18 16:25

**fair**
16:4 78:11

**fall**
47:1

**familiar**
39:23 47:23 66:14,18

77:15 78:22

**familiarize**
39:6 76:22

**family**
18:3,6,7,17,23 72:14

**far**
6:13,15 19:15 40:8 51:5
74:22

**father**
22:15 72:19

**favor**
18:3,6 73:22

**favor-way**
74:22

**favors**
72:21

**FBI**
6:17

**Feast**
31:19 32:16

**feels**
35:6

**felony**
21:17,24 22:3,6

**felt**
67:7

**Fetes**
31:15

**few**
75:16

**fighting**
67:13

**file**
40:2

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                    101
HENRY TROCHESSET - VOL.1, 08/26/2022                    Index: filed..from

**filed**
 32:19

**find**
 20:1 49:22

**finding**
 67:17

**fine**
 4:7 31:8

**fire**
 13:15 65:22

**firearm**
 53:14 65:6 83:25 84:16

**firearms**
 83:14

**fired**
 60:13,18 61:11 68:16

**first**
 4:3 6:23 9:1 29:10 70:21
 81:18

**fit**
 33:18 34:7 46:13

**fitness**
 33:14 34:14

**five**
 19:20 55:10 64:8

**fleeing**
 40:17 65:22

**focus**
 81:12

**focused**
 77:1

**follow**
 45:2

**follows**
 4:3

**for**
 4:6,12 5:14 6:20 7:14
 9:4,5 10:2,3,8,17,23
 12:24 13:9,13 15:7,23
 16:8,18 18:6,19 19:1
 20:3,11 21:8,14 23:3
 24:4 25:1 26:7,16 27:4,7,
 25 28:4,10 30:13 32:1,11
 34:3,17,24,25 35:11,16
 36:20 37:13 38:4,21
 39:5,16,20 40:18 42:3
 45:5,8 46:12,25 47:12,25
 48:6,21,25 49:21 50:8,
 11,14,23 51:21,23 52:1,
 15 54:23 56:7 57:4,9,21
 58:8 59:17,18 60:12 61:6
 63:8 64:4 65:6,7,8 68:1,
 10,12 69:18 70:1 71:15
 72:21 73:18,22,25 74:23
 75:17 76:1 77:22 78:10,
 23 81:22 83:3,8,14 84:1

**force**
 8:11,18 12:4,8 32:18
 38:9,13 48:4,12,17,20,24
 49:3 54:6,9,10,11,12,19
 55:7,8,12,24 56:4,9,14,
 19,24,25 57:7,10,14,19
 58:8 59:12 60:23 63:10
 64:4 67:4 68:22,23 69:15
 76:12 78:23 79:18 80:10,
 16 82:13

**form**
 11:9,20 12:11,18,24
 13:23 14:16,25 15:1,9
 16:18 17:9,16 18:9,19
 19:3 20:3,11,25 21:8,18,
 22 22:1,9,19,20 23:2,7,
 13,14,17,23 24:5,6,13,
 14,22 25:10,18,19 26:1,
 10,11,16 27:2,24,25
 28:14,20 29:9 30:5,12

31:17 32:1,11 33:21
34:3,10,16,17,25 35:8,9
36:10,16 37:22 40:24
42:9,10 43:4,5 45:20
46:6,15,21 47:9,17,25
48:6,19,22 49:24 50:5,19
51:18 52:1,18 54:3,20
55:14,19,25 56:10,20
57:4,15,25 58:9,18,25
59:5,17 60:6,14,15,19
61:6,13,19 62:8,16 63:11
64:23 67:1,20,21 68:1,6,
12,17,18 69:1,11 70:1,6
71:12 73:18,25

**forth**
 9:13

**forum**
 43:12

**forward**
 7:12 15:21 76:2

**found**
 20:24 38:17 62:4 68:21

**Four**
 6:8

**Freddie**
 18:16 23:10

**free**
 5:17 78:17,19 80:3

**friend**
 18:3,6,7,17,23

**from**
 5:9 13:18 14:6 18:17,22,
 24 19:18,21 20:22 22:7,
 18 23:1,10 26:22 27:12,
 13 30:16 36:23 37:5
 43:18 44:20 49:22 50:18
 51:1 53:14 56:15 64:2
 65:24 66:2 67:15 68:24

BENSON vs GALVESTON COUNTY, et al.
HENRY TROCHESSET - VOL.1, 08/26/2022

102

Index: front..had

69:8,24 70:5,8,10 77:17,
24 78:3,7,12 79:20 81:9
82:14 83:8

**front**
11:2 55:10 79:4

**full**
4:10

**function**
50:22

**functions**
72:14

**further**
36:4 75:8 76:4 84:10,24

---

**G**

---

**gained**
78:4

**Galveston**
5:22,24 6:2 8:21 22:16
23:22 24:12 25:1 39:15
48:10,15 60:21 72:6
79:10 80:1,23 83:3

**Garner**
56:8 66:15

**garnered**
32:7

**gathering**
69:9

**gave**
31:24 64:24 65:1

**general**
9:12 33:6 37:2,13,25

**generally**
76:25

**get**
7:22 8:4,20 13:16 16:11
38:11,20 44:20 64:22,24

**getting**
53:17

**give**
5:25 7:15 36:21 44:14

**given**
4:18 10:19 71:22

**giving**
16:22 39:10 63:24

**glass**
64:2

**go**
6:11 7:23 8:23 9:14
15:19 33:5 36:23 41:2
42:18,21 49:20,22,24,25
53:22 54:13,19 55:1
64:11,12 65:7 76:2 78:19
80:3 81:10

**goes**
8:12,18 9:23 10:5 13:11
48:25

**going**
9:3,10,12 32:4 33:5,16
37:6 38:22,25 39:7 41:24
58:12 60:11 66:5,21
67:13 74:20 76:3 78:9
81:10,12,17

**good**
4:6 18:13 75:10

**got**
6:13 18:12 56:18 70:15
81:18

**grade**
14:12

**grand**
68:3,5 75:24

**great**
34:1

**greater**
80:23 81:2

**guard**
44:5

**guarding**
44:5 46:4 47:12

**guess**
83:21

**guide**
10:23 14:19 15:11,12
55:7

**guidelines**
50:8,14

**guides**
49:19 50:18

**gun**
38:12 49:7,13,17,20,21
50:9,11,14 51:21 52:11
65:22

**guy**
31:22

---

**H**

---

**H-E-N-R-Y**
4:13

**had**
4:18 7:5 20:24 22:17
23:11 25:15 31:22 32:9,
18 34:11 36:14,15 42:18
62:18 66:12 77:20 78:5
82:17 83:1

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                   103
HENRY TROCHESSET – VOL.1, 08/26/2022              Index: half..hired

**half**
  55:13 69:9

**hall**
  67:14

**hallway**
  74:5

**ham**
  68:5

**hand**
  57:16

**handcuffs**
  35:23 36:14 49:11 83:25
  84:2

**handle**
  63:22

**handles**
  30:15

**hands**
  35:24

**happen**
  12:15 29:1

**happened**
  12:7 23:11,12 27:10,11
  28:25 73:11,12

**happening**
  74:24

**happens**
  15:18 20:1 21:6,12

**harm**
  58:17 60:4

**has**
  10:10 12:6,7 15:20
  16:10,13 17:15 21:20
  26:25 27:7 31:21 34:2
  40:17 42:21 43:1 53:4,8
  54:25

**have**
  4:4,15,18 5:2 6:5 7:19,23
  10:13 13:10 14:4,8,9,22
  16:5,12 17:2 18:2 19:21
  20:2,5,9,21 22:11,22
  23:5,9 25:3,23,25 26:2,3
  27:15,18,22 29:23 30:18,
  19 32:18 34:1,8,9 35:6
  40:4,22 41:5,10,11 43:19
  45:18 47:24 48:24 49:13
  51:21 54:25 56:5,6 60:9
  63:17,21 64:16,21,23,24
  65:1,7 68:4,10 69:8
  71:13 72:4,10,13,16,21,
  24 75:5 77:11 81:23 82:7
  83:1 84:1,21

**haven't**
  10:2 19:2 30:1,7 39:17
  71:20,21

**having**
  4:3 8:1

**he**
  13:2 15:20 17:2,21 19:1
  20:9 22:10 25:5,8,9,13,
  15 26:8 27:7 30:3 31:21,
  22,23 34:11 35:6 36:15,
  18 37:18,19 42:18 43:23
  44:2,17 45:7,11 50:13
  53:13,25 59:11 60:17,20,
  25 61:2,12,17,20,23,25
  62:1,5,11 67:16,24 68:3,
  10,15,16,22 73:15 74:9,
  14,20 75:3,24 76:2
  77:16,20,25 78:4,5,8,13,
  16,17,18,19 79:12,18
  80:4,8,25 82:17,18,19,21
  83:1,6,8

**he's**
  27:3 35:4 39:6,9 52:23
  64:11 71:20,21 75:5 84:3

**head**
  28:12,19 33:24 55:3
  57:13

**heard**
  66:20 68:4

**heightened**
  51:4

**help**
  53:12 63:21

**Henry**
  4:2,11

**her**
  19:1 74:5,21 75:7

**here**
  5:1 80:21

**hey**
  18:7 49:21 74:23

**hierarchy**
  80:20,22

**high**
  6:9 40:18,22

**higher**
  21:25 22:3 37:16

**highly**
  32:6 47:12

**him**
  17:19,24 18:8 22:17
  25:16 27:23 35:5 39:8,10
  43:23 50:13 67:13,16
  73:2 74:9,13,23 75:5

**hire**
  10:10 13:15 15:24 16:2
  18:8

**hired**
  8:21,24 9:2,7 14:23 15:8
  16:6,7,12,15,16,17 18:2,

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                              104
HENRY TROCHESSET - VOL.1, 08/26/2022          Index: hiring..in

5,8 19:10 25:5 83:6

**hiring**
13:8,14,17,25 21:15

**his**
15:19 20:2,8 22:17 25:17
37:14 41:17 44:11 52:22
53:8 60:24 61:3,4,17,19
72:19 74:19 77:23 78:5,
10 82:20 83:2

**hisself**
39:6

**history**
40:16,17

**hit-and-run**
21:17,24 22:6

**Hitchcock**
6:10

**honesty**
19:23 20:8

**hope**
59:7

**hopped**
67:16

**horrible**
79:23

**hospital**
9:14 33:7 41:5 45:12
50:15,16 66:8 67:15

**Hours**
56:22

**how**
6:5 7:6,13 8:7 11:5 25:21
34:13 38:1 46:9 50:4
54:14 55:9 56:17 57:7
59:20 63:4 64:3 65:22
67:24 70:3 72:16 73:11

77:16

**Hudson**
35:20,21

**huh**
47:16

**hypothetical**
16:9 20:12,13 21:1 22:2
26:17 33:22 34:4 35:1,10
48:7,23 52:2 61:10 62:17

---

**I**

**I'D**
13:7 20:5 26:4,18 62:18

**I'LL**
5:13 29:3 60:1 79:17

**I'M**
6:14 8:16,25 18:11 19:5
21:11 30:14 32:4 35:6
36:18 39:19 42:23 44:15
47:6 49:4 50:10 51:13
53:16 54:16,17 58:3,12
59:9,20 60:5,11 62:13
69:8 75:25 76:25 81:12,
17 82:14

**I'VE**
6:13 19:14 21:19 76:19
79:3

**if**
5:2,12,16 8:11,17 9:12
13:2 15:17,18,20 16:23,
25 18:5,11 19:19,22
20:1,7,9,15,16,21 21:6,
12 25:12,13,24 26:14
28:25 33:15 34:11 35:3,4
36:14,23 37:6 38:24,25
40:10 41:9,23 42:25 43:2
47:8,15 49:20,25 50:3,7,

14 53:1,25 55:11 57:16
58:12 62:18 64:11,19,22,
23 66:6 68:9,16 69:20
71:8,13,14,19 73:16
74:14,19,20 76:21 77:2
81:11,18,24 83:24 84:3

**illnesses**
5:9

**immediately**
79:19

**imminent**
58:16 60:3

**implemented**
13:21 35:4

**important**
17:5 19:10

**in**
4:13 5:1,2 7:7 10:2,5,19
11:7,10 12:8,22 13:4
18:18,20 19:4,14 21:17
22:21 23:15,18,24 24:7,
23 25:11 27:1 28:9,21
29:15,20,25 30:3,6,13,24
31:6,13,14,20,23 32:2,6,
8,21 33:5,19,25 34:1
35:10 37:5 38:18 39:5,
14,17,19 40:21,25 41:3,
14,22 42:3,11,14,17,20,
25 43:6 45:7,11 46:4,7,
13,16,22 47:8,15,21
48:23 51:8 52:17 53:8
55:15,18 56:1,7,15,18,25
57:1,7 58:16 59:10 60:1,
3,13,24 61:4 62:19,23
63:1,5,6,21,24 64:4
65:25 67:18 74:5,11,22
76:14 77:12 78:1 79:3,17
80:19,22 83:2,6,22 84:4,
12

BENSON vs GALVESTON COUNTY, et al.                                              105
HENRY TROCHESSET - VOL.1, 08/26/2022                        Index: incident..is

**incident**
23:12,21 26:7 34:15
75:17 77:13

**included**
82:7

**including**
79:18 80:9 82:12

**incomplete**
16:9 20:12 22:1 26:17
33:21 34:4 35:1,9 48:7,
23 52:2 61:9 62:16

**independence**
30:23 31:5

**indict**
68:5

**indicted**
80:25

**indifference**
66:19

**individual**
32:8

**individual's**
58:24

**individuals**
47:24

**information**
14:4 20:18 23:8 26:14
28:17 39:9 49:22 62:19,
23

**initially**
6:20

**inmate**
27:8,13,14,19 28:4,17
33:19 34:2,9 35:7 37:5,
12,13,16 39:6 40:4 41:4
42:21 43:1,2 47:21 48:5

**inmate's**
40:2

**inmate/officer**
37:20

**inmates**
9:13 33:7,19 35:14,16
36:20 37:11 38:22 39:16,
21 40:22 46:13,20 47:5,
12 48:13,18 49:6,15
50:21,23,25 51:4,16,21
52:12,23

**innate**
47:20

**inside**
35:14,16 36:20 37:3,9,
10,21,24 38:1,4,9,14,15
50:15,16 51:11 52:24

**instance**
50:14 75:17 83:14

**integrity**
29:17 70:11

**intentionally**
20:14

**internal**
23:22 24:2,11 25:14
29:5,16,19,23 30:2,10,
17,23 31:6 66:23,24 67:2
70:16

**interpretation**
76:13

**interview**
29:20 30:4,24 31:6

**interviewing**
29:24 30:11

**into**

51:8,17 52:3,7,13,17,25

9:10 53:17 56:24 58:14
77:16,25 78:8,9

**intoxicated**
22:14 25:16 26:8 47:13

**introduced**
75:14

**investigate**
76:3

**investigated**
31:10 75:18

**investigates**
29:7,11

**investigation**
14:3 29:15,17 31:5
66:10,24 75:2,22

**investigations**
13:11 29:18

**involved**
21:17 26:15 31:21

**involving**
75:17

**ironed**
37:19 39:3

**irons**
36:1,14 49:10 83:25 84:2

**is**
4:10,15 5:23 7:13 8:11
9:16 10:2,3,8,22 13:17
14:9,12 15:7,12 16:6,7,9,
21 17:4 18:22 19:9,23
20:8 21:24 23:1 24:2,11
25:22 27:19 29:15,16
30:25 31:9 33:2,25 34:7,
23 35:2,4,5,19,22 37:4,9,
20 38:18 39:1 40:1,7,14
41:21,23 42:8,20,22,24
43:2 46:12,18,25 47:3,

11,19,21 48:20 49:5
50:11,12,17,21 51:7,14,
16 52:10,12,13,21,22
53:2,14 54:14,24 55:9,22
56:4,24 57:1,7,20 58:15,
16,23 59:11,12,16,23,25
60:2,3,5 62:19,24 63:1,
13 64:7,9 66:21 68:24
69:3,4,6,13 70:8,12
71:18 75:15 76:13,15,19
77:1,9 78:10,20 79:4
80:16,20 81:8,12 82:17,
23 83:17,18

**issue**
14:7,20 17:2

**issued**
50:11 53:14

**it**
5:14 7:6 9:3 10:3,19
12:14 13:11,25 14:10
15:13,19 17:18,23 19:20
20:17,24 21:2,4,15,19
25:12,13 27:16 28:7
29:2,5,16 30:17,18 31:5,
15,23,25 32:9 33:17 36:4
38:9,18 40:5 46:12,18,20
47:3 48:4 49:25 53:1,10,
19 54:23 55:11,17,21
56:7,18 57:1,16,17 59:10
64:23 66:20 67:10,25
69:4 71:15,18 73:11,12,
16 74:23 75:18,23 76:4,
13 77:3,8,21 79:8 81:1
82:3 83:25

**it's**
7:13 12:18 14:19 15:11,
12 16:4 19:19 30:16,22
33:15 38:24,25 40:10
47:7,10 50:14 52:15 59:2
61:9,15 63:14 64:3 69:9,

20 71:19 76:13 77:20
80:25 81:18

**its**
50:23 65:22

---

## J

**jail**
6:2,19 7:7 35:18,19 37:9,
21 38:4,14,15 39:17
47:21 51:1,11,12 76:8
78:10 79:10 80:2

**jailer**
9:13 33:6

**jailer's**
9:15,19,23

**job**
5:23 6:1 10:12,23 11:5,
11 47:7,10

**joining**
19:21

**Joshua**
31:15,19 32:16

**JUDGE**
71:17

**July**
77:12 79:8,25

**June**
4:17

**jury**
68:3,5 75:24 76:1

**just**
4:4 5:13,17 6:25 7:12
8:20 9:3,12 12:3 13:7
17:20,21,25 21:4,20
26:24 28:24 32:5,23
33:1,6 35:6,13 36:21

37:2,13,25 38:20,25 41:2
51:8 54:17 56:23 57:23
58:6,14 60:12 61:14 64:7
65:24 66:1,21,23 69:13
71:19 74:12,23 78:21
79:17,23 81:22 82:11
84:13

**justice**
78:24

**justified**
31:14 32:8 79:17

---

## K

**keep**
64:13

**killed**
31:20

**kind**
6:16 7:12 8:20,22 9:8,14,
22 10:16 15:13,14 19:12
26:24 33:1 35:22 36:21
38:3,20 41:2 53:11,17
54:4,8,16,18 56:23 65:24
66:11,21,23 72:4,9

**knew**
66:10

**know**
4:5 5:13,17 7:13 8:7,10,
11,19 10:5 11:1,4,11,25
12:3,15 13:2,20 16:10,20
17:18,23 18:4,5 20:5,13
25:5,21 27:5,19 28:2,6,8,
11 29:1,22 30:7,21 33:23
34:19,22 35:2 36:12
38:18,19 39:13,22 40:3,6
41:1,13,16 42:5,12,15,16
43:8,21 44:19,23 45:1,4,
14,17,22 46:1,8,11,17

47:3,16 48:9 53:24 54:2,
23 56:22 57:14,18,20
62:13 64:1,19 68:14
70:3,4,14,18 71:13,19,24
72:2 73:20 74:25 75:21
77:23

**knowledge**
17:14 43:19 49:3 70:17
82:24

**known**
72:16

---

**L**

---

**Lasswell**
4:4 12:10 14:25 17:9
21:18,22 22:20 23:7,13
24:5,13 25:18 26:10
27:2,24 34:17 35:8 42:9
43:5 54:3 60:15,19 61:13
62:8 67:1,20 68:17 69:1
75:9,13,15 76:25 79:7
81:8

**last**
7:6 11:22,25 12:4,8,16
34:20 53:24 66:11,22
83:12

**lastly**
81:5

**lasts**
8:8

**lately**
12:7

**later**
14:24 32:9

**law**
6:18,19 7:17 19:19
25:23,24 56:8 58:23

68:24 69:3,4,7,8,14,24
72:11 75:19

**lawful**
67:25

**lawfully**
68:10

**laws**
70:8 80:22

**lawsuit**
32:18

**learn**
54:14

**learned**
20:16,21

**least**
46:2

**leave**
39:11

**leaves**
50:12

**led**
27:23

**leg**
36:1,14 37:19 39:3 49:10
83:25 84:2

**legal**
4:10 25:22 48:7 49:21
56:6,14 59:17 70:13

**legally**
82:4,10

**legs**
36:2

**less**
40:1

**let**

5:13,17,20 8:25 15:22
17:20 26:13 29:1 70:15
79:23

**let's**
8:20 16:12 31:12 71:24

**letter**
15:5 24:19

**letters**
14:21

**level**
40:5

**levels**
38:12 40:8 48:12,17

**liberty**
41:6

**license**
7:22 65:8,12

**licensed**
8:4

**lie**
20:14

**lied**
20:2

**lies**
20:7 21:6,12

**life-threatening**
41:23 42:3

**light**
23:21

**like**
5:25 6:12,15,16,23,24
13:7 21:4 26:24 27:10
32:23 35:6 36:19 41:25
53:19 63:22 65:7,13
67:13 83:14 84:4,5

**limit**
35:24 36:2

**limitations**
34:8,11

**line**
77:3

**lines**
57:3

**listed**
41:3,14,22 46:4

**little**
13:7 26:25 29:4 35:14

**long**
6:5 7:6,13 8:7 9:3 17:13
58:4 72:16

**longer**
55:22

**look**
50:13 74:19 77:2 79:2
81:11,18,24

**lost**
67:15

**lot**
12:7 28:7 75:16

---

**M**

**mace**
38:11

**machete**
31:23

**made**
22:12 25:25 31:13 69:4
77:21

**main**
10:18

**maintaining**
30:22

**majority**
63:24 64:1

**make**
33:17 46:19 47:7 58:13

**makes**
62:14

**making**
32:6

**male**
31:19

**man**
7:8 78:17

**manhunt**
28:10

**manual**
10:17,22,23 11:1,8,13,
16,21 12:1 38:18 39:15,
20 40:21 41:4,15 42:7,
20,25 46:4 47:16 50:1,3
57:8 60:5 61:5 81:9

**many**
38:1 55:9 63:2,14

**Marine**
82:19

**mark**
21:14

**marked**
76:23 79:3,5 81:7

**matter**
47:8

**may**
16:5 17:2 19:20 20:2,21
22:22 25:3,25 26:2,3
34:1,8,9 37:18,19 41:22

43:11,15,23 44:2,17
47:12 50:17,25 51:17
52:13,25 57:10 59:14
63:9 69:8,21 74:9 76:15
82:4

**maybe**
7:8 33:18 40:20 49:10
55:10 57:2 64:7

**me**
4:16 5:13,20,25 8:25
9:23 15:22 17:20 18:12
26:13 28:22 29:4 31:8
36:21 50:16 57:17 58:8
59:23 66:1 67:24 70:15
73:15 74:7,9,17,19 79:8,
23 80:19 81:1

**mean**
8:22 12:13 14:16 21:11
34:23 36:23 41:18 43:12
58:3 60:1 66:25 75:3
76:1

**meaning**
18:7 59:14 69:7

**means**
4:23 59:22 61:15

**meant**
17:23

**measure**
82:4

**measures**
77:4

**medical**
37:1,6 39:1,2 44:25
45:24 46:14 49:16 50:22
51:5

**medications**
5:8

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                     109
HENRY TROCHESSET - VOL.1, 08/26/2022          Index: meets..name

**meets**
20:9

**members**
82:3

**met**
62:4 66:8

**might**
5:9 27:22 47:24 51:4
63:23

**minute**
66:22

**misconstrued**
59:15

**misdemeanor**
21:25 22:3

**misstates**
11:9 15:1 17:16 24:7
25:20 26:12 28:20 43:7
56:1,20 59:18 63:11
69:11

**Misstating**
61:19

**money**
28:7

**months**
7:9 14:24

**more**
14:19 21:2 33:17,18 40:1
53:6 72:1 80:16,20 83:21

**most**
36:6 47:21 76:13

**mostly**
56:15 69:17

**mother**
72:20 74:19

**move**
9:3

**moved**
37:11

**movement**
35:24 36:2,4

**moving**
7:12 10:16

**Mr**
4:4,7,9 11:6,7,9,12,20,21
12:10,11,15,18,21,24
13:2,23,24 14:16,18,25
15:1,4,9,12 16:8,11,18,
21 17:9,11,16,20 18:9,
14,19,22,25 19:3,6 20:3,
7,11,15,25 21:3,8,11,18,
20,22,24 22:1,4,9,11,13,
19,20,23 23:2,4,5,7,9,13,
14,15,17,20,23 24:1,5,6,
9,13,14,16,18,19,22,25
25:10,13,18,19,22 26:1,
3,10,11,13,16,20 27:2,4,
24,25 28:3,14,16,18,19,
20,24 29:9,10 30:5,8,12,
15 31:2,4,17,19 32:1,4,
11,13,14,16 33:21,24
34:3,6,10,13,16,17,20,25
35:3,8,9,13 36:8,10,13,
14,16,19 37:22,25 40:24
41:2,18,19 42:2,9,10,13,
14,16 43:4,5,6,9,11,12,
14,15,23 44:2,6,17,21,
22,24,25 45:6,10,15,20,
23,25 46:2,5,6,9,15,18,
21,24 47:9,11,17,19,25
48:3,6,10,19,20,22,25
49:24 50:2,5,7,19,21
51:18,20 52:1,3,18,21
54:3,4,20,24 55:14,17,
19,21,25 56:3,10,13,20,

23 57:4,7,15,18,25 58:3,
5,6,9,11,12,18,22,25
59:2,5,9,17,21 60:6,11,
14,15,17,19,22 61:6,9,
11,13,14,19,22,23,25
62:2,8,10,16,19 63:11,
16,18,20 64:23,25 65:1,
2,3,4,5 67:1,3,19,20,21,
24 68:1,4,6,7,9,12,15,17,
18,23 69:1,3,11,13 70:1,
4,6,12 71:12,14,16,19,
23,24 73:18,21,25 74:3,
7,8,9,11,12,13,16 75:9,
13,18 76:25 77:12,15
79:7,16,21,25 81:8 84:9,
11,25

**Mr.-**
43:22 58:12

**much**
56:18

**murder**
31:22

**must**
43:3

**my**
5:5,10,12 13:12 19:15,20
35:18 47:10 49:21 57:20
58:6 59:25 65:17 69:6
70:21 72:17 75:15 76:12
81:18

**myself**
19:15 75:14

---

**N**

**name**
4:10 27:18 44:11 54:23
66:16 75:15



AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                    110
HENRY TROCHESSET - VOL.1, 08/26/2022              Index: named..occur

**named**
  18:23 44:9

**names**
  27:15

**national**
  6:17 32:7

**nature**
  10:20

**necessary**
  77:4 79:19 80:9 83:2

**need**
  5:16 36:23 70:10 71:14,
  19

**needed**
  14:4 15:20 49:20 53:2
  57:10 69:21

**never**
  17:15 19:14 61:20 72:15

**new**
  10:10

**night**
  7:11

**no**
  5:11 8:3,9,25 10:7 11:3,
  14,17,19 12:5,20 13:22
  14:11 16:3 18:21 22:11
  23:25 24:15,17,24 25:7
  26:23 27:6 28:15 30:1
  32:3,15,17,25 33:8,11
  35:12 36:18 37:8 39:19
  44:10 46:23 47:8,14,18
  48:2 49:8 50:8,20 54:16
  55:4,5 56:2 57:18,22
  58:2,5,10 59:9,24 62:22,
  23 63:6,8 65:20,23 67:23
  68:3,8 72:23 73:13 74:5
  75:8,24 76:1,5,19 79:1,3

  81:6 82:12 83:16 84:7,24

**None**
  37:15 38:7,16,17

**not**
  6:14 8:14,17 11:4,10
  13:3 14:22 16:6,17 17:13
  18:20 19:4 22:21 23:18,
  24 24:7,10,16,23 25:5,9,
  11,14 27:23 28:2,6,8,11,
  16,21 30:6,8,13,14 32:2,
  9,21 34:1 35:10 36:14,18
  38:19 40:25 42:11,23,24
  43:6 46:7,16,22 47:6,7
  48:23 49:4 50:4 51:11
  52:24 53:23 54:17 55:15
  56:1 57:23 58:3 59:2,3,
  20 62:2,13,23 64:22
  65:8,11 67:23 69:19
  71:7,8,17 75:16 76:2,3
  77:7 78:17,19 79:22 80:3
  81:4,10 84:5

**note**
  58:13

**nothing**
  68:16

**notified**
  66:2 70:25

**now**
  7:13 8:3 24:2,11 26:13,
  24 35:15 38:20 57:21
  63:23 76:6,12 77:15
  79:21 80:15

**number**
  40:8

**nurse**
  41:7,9,25

**O**

**oath**
  4:21

**Object**
  11:9 12:18,24 13:23
  14:16 15:1,9 16:18 17:16
  18:9,19 19:3 20:3,11,25
  22:1,9,19,20 23:2,14,17,
  23 24:6,14,22 25:10,19
  26:1,11,16 28:14,20 29:9
  30:5,12 31:17 32:1,11
  33:21 34:3,10,25 35:9
  36:10,16 37:22 40:24
  42:10 43:4,12 46:15,21
  47:9,17,25 48:6,19,22
  49:24 50:5,19 51:18
  52:1,18 54:20 55:14,19,
  25 56:10,20 57:4,15,25
  58:9,18,25 59:5,17 60:6
  61:6,19 62:16 63:11
  68:1,12 69:11 70:1,6
  71:12 73:18,25

**objection**
  4:5 11:6,20 12:10,11
  14:25 16:8 17:9 21:8,18,
  22 23:7,13 24:5,13,18
  25:18 26:10 27:2,24,25
  28:18 31:2 34:16,17 35:8
  42:9 43:5 44:22 45:20,25
  46:6 54:3 60:14,15,19
  61:13 62:8 63:18 64:23
  67:1,20,21 68:6,17,18
  69:1

**observe**
  67:11

**occur**
  28:23

**occurred**
16:10 43:17 44:4

**occurs**
60:8

**odd**
55:21

**of**
4:16 5:12,24 6:3,4,16
7:4,12 8:20,22 9:1,8,14,
22 10:12,16,20 11:23
12:4,7,9,13,22 13:11,14
14:19 15:4,13,14,19
16:21 17:5,11,14 18:3,
17,24 19:1,10,12,14,17,
23 20:8 21:13 23:22
24:11,16 25:22,25 26:24,
25 28:7,17 29:5,23 30:4,
9,24 31:1,5,24 32:22
33:1,2,15 34:1,2,14
35:14,15,22,23,24,25
36:2,5,21 37:24 38:3,5,8,
9,12,20 39:16 40:8,17,19
41:2,15 42:23 45:6
47:13,24 48:4,12,17,20,
24 49:3,4,6,19 50:9 51:3,
23 52:10,15,21 53:11,16,
17 54:4,6,8,9,14,16,18,
19 55:8,12,23 56:3,9,14,
22,23,24,25 57:2,10
58:16 59:13 60:21,23
62:23 63:15,17,23,24
64:3,4,13,16 65:24 66:2,
11,20,21,22,23,24 67:4,
6,9 68:22,23 69:14
70:11,21,23 71:21 72:4,
8,9 73:7,22 74:10,20
75:16,18,22,25 76:12,13,
14,18,20 77:1,5,12 78:1,
10,11,21,22,23 79:4,8,9,
20 80:16,20,22 81:9,19

82:2,13,18,19 83:2,24
84:4

**off**
12:3 60:11

**offer**
53:11,18 54:5,8,22 65:6

**offhand**
27:5

**office**
5:1,22 7:1,20,23 8:22
26:5,19 39:15 50:23
60:21 70:17,20 71:4
80:16,24 81:3 83:4,19
84:6

**officer**
7:2,19 8:22 22:12,14
24:4,9,21 25:15 26:9
29:19,24 30:2,10,23,25
31:6,14,20 32:8 38:10
41:11,18 53:22 58:16,20,
24 59:3,11,13,14 60:3
62:6 79:13 82:21,22

**officer's**
7:22 52:4 57:9 59:15
61:15

**officer-involved**
29:6,12 30:16

**officers**
29:16 30:17,19 40:9
45:5,6,10,15,18,23 54:25
56:13 59:7,14 76:14

**official**
32:21,22

**officials**
25:23,24

**often**
46:9

**Oh**
7:8 49:12 81:16

**okay**
5:12,18 6:7,9 7:3,10,12,
18,21,25 8:3,7,16,20
9:12,16 10:5,8,11,16
11:4,12,25 12:3,6,15
13:13,16,20 14:5 15:12,
17 16:11 17:7,14,20,25
18:2,14,16 19:9,23 20:15
21:3,16 22:11 23:20
26:6,20,24 27:15 28:3,24
29:4,19 31:9,12 33:1,6,9,
17 35:13,19,21,25 36:5,
13,19 37:7,13,20 38:8,
17,20 39:4,23 41:2,9
42:2,6 43:18,22 44:5,13
47:11 48:10 49:12,19
50:2,21 52:10 53:3,16
54:24 55:6 56:23 58:6
60:11 62:14 63:16 64:6,
13 65:4,21 66:11,21
67:6,17 68:15 70:12 74:6
75:1,8,21 76:3,6,18 77:7,
11,15,20,25 78:4,8,13,
16,20 79:2,7,12,15 80:4,
15 81:1,5,15,17,22 82:2,
15,23 83:1,6,21,24 84:4,
8,20

**omit**
20:14,16,22,24

**on**
7:23 8:12,18 9:3,23 10:5,
12,16 11:12,15 12:16
13:12,18 14:12 18:25
19:13,19 20:2,7,17 21:7,
12,13 25:12 27:15,18
29:2,20 30:24 31:6,22,24
33:1,4 35:13 36:8,14,15,
21 37:12,18,25 38:6,24

40:5 41:19,24 46:10 47:1
48:11 49:2,3 53:1,19
56:13 58:24 59:2 63:9,
14,17 64:3,11 66:3 67:11
68:24 69:7,14,18,21
76:17 77:1,12 78:5 79:25
81:13 82:15 83:13

**once**
8:21 9:7 20:23 30:15
38:22 41:4 52:10 60:1
66:9

**one**
4:4,5 5:12 7:23 21:2
27:13 30:25 31:9,21
33:15 36:5,23 37:2 48:24
52:10,21 53:6 59:16
63:15 70:21 72:1,6,7,15
76:18 78:1 83:12

**one-man**
40:10

**one-year**
10:10

**ones**
53:21

**only**
9:1 42:6 71:3 77:7

**opposed**
76:15

**or**
4:18 5:8 6:11 7:5,8 8:10,
15 9:5,16 13:3,17 14:17
20:14 24:20 25:23 26:2
27:9 29:16 30:18 31:14
33:4,14,25 34:7 36:15
37:1,5 38:5,11,24 39:1,7
40:1,10 41:7,9,25 47:8
48:13,20 50:8 53:23,25
55:2 56:6,8 57:9,11

58:16 59:12,13 60:3
64:7,11 65:11 66:7 69:4,
8 71:17 74:14,17,23
76:19 78:17,24 79:16,23
80:4 81:19 83:25 84:13

**order**
42:8,13 45:18

**ordered**
43:1 65:11

**organizations**
53:20

**original**
69:6

**other**
6:13 16:16 27:13 28:9
34:12 42:6 45:5 50:17
53:14 59:15 69:18 70:9
75:1 83:17,24 84:4

**others**
38:5 57:10

**our**
22:25 64:5 70:8 77:20
78:24

**out**
20:1,24 27:13 33:16
34:2,7 39:7 40:19 46:13
60:4

**outcome**
66:24 67:2 75:22

**outlining**
23:10

**outside**
29:13 33:19 35:15,16
38:21,22 39:16,21 49:6,
14 50:9,12 51:5,12,15,
16,21 52:12,23 53:4,9

**outstanding**
77:22

**over**
18:23 23:15,22 24:2,11
25:14,16 26:21 30:9
37:4,6 41:2 47:8 64:19
67:16 70:16 79:23 82:11
83:8

**overall**
13:13

**oversee**
10:21 76:8

**Overseeing**
6:2

**overview**
36:21

**own**
7:24 13:17 32:22 41:6
46:19 51:10,12,13,15
52:22 59:22

---

**P**

**page**
55:13 81:11,18 82:2

**page-by-page**
81:10

**pages**
55:9,12,18

**paperwork**
22:25 23:1

**parents**
25:17 71:25 72:2

**part**
17:5 18:23,24 19:10,23
20:8,13 23:16 25:22
33:15 41:15 64:1,3



**particular**
24:21

**parties**
72:12,13

**party**
75:7

**pass**
14:10

**pass/fail**
15:7

**passed**
13:18 16:5,17 17:15 69:8

**past**
68:24 69:7

**patrol**
6:2 76:8,14

**peace**
7:2,19,22 79:12 82:20,21

**penal**
79:4,15 80:7,13,17,20,23
81:2 82:11

**pending**
58:5

**people**
14:21 15:22 18:11 50:17

**pepper**
84:4

**per**
11:24 38:1 42:7

**percent**
8:14

**perform**
10:23 11:5

**performed**
19:12

**performs**
50:23

**period**
10:8,11

**permission**
43:19

**person**
15:23 16:15,25 19:18
23:21 24:2,3 25:14 33:25
34:12 35:4 39:8,9 40:17
62:14 78:5 79:20

**personal**
41:6 72:9

**Personally**
32:20

**pertaining**
12:7 55:22,23 56:8 71:4
72:21

**pertains**
38:9 48:4

**phone**
70:21,22,24 74:3

**physical**
33:2,9,13,14,18 34:8,11,
14,21

**physically**
34:7

**pick**
22:17 26:21

**piece**
67:9

**place**
39:5 63:21

**please**
4:12

**plus**
72:18

**pod**
36:23 37:2,5,24 38:1

**point**
28:25 35:6 66:9 78:4
82:18

**police**
8:4,17 9:4 22:16 23:22
24:12 25:1 56:15,18
72:7,8

**policeman**
82:21

**policies**
10:19 35:3 70:9 80:24

**policy**
10:3,16,17,20,21,22,23
11:13,15,21,23,24 12:2,
4,9,13,17,22 13:4 38:17,
18 39:15,20 40:7,10,11,
21 41:4,15,22 42:7,20,25
45:3 46:4,10,20 47:5,15
48:24 50:1,3,13,17 55:6,
8,9,12,18,22,23 56:5,6,
24,25 57:1,8,14,19,20,
21,24 58:8,15 59:10,22
60:1,4,21,22,23 61:1,5,
12,15,24 62:5,11,20,24
63:2 67:4,8,25 68:22,23
69:3,6,14,19,24 70:5,8
76:12 78:23 80:16 81:3

**Poor**
18:16,25 23:10

**portions**
81:9

**possible**
82:5,10

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                    114
HENRY TROCHESSET - VOL.1, 08/26/2022          Index: possibly..question

**possibly**
49:10 52:4,7

**practice**
46:12,18

**precedence**
68:24 69:7,16 70:13

**prepared**
5:5

**preserve**
29:17

**press**
31:13,24 32:6

**pretrial**
34:24 47:20,22 48:5,12,
17 78:13 79:22

**prevent**
5:9 77:4 79:19 80:9 82:5

**primary**
5:25

**prior**
56:20 61:20 69:11,24
84:18

**prisoner**
77:5

**prisoners**
77:2

**privilege**
23:3,4

**privy**
28:16 67:6

**pro**
19:21

**probably**
21:4 34:12 67:10 68:10
72:17 80:25 84:2

**probation**
10:10

**probationary**
10:8,11

**problem**
34:9

**procedure**
41:15 49:19 50:8 76:20

**procedures**
35:16 36:20 37:10 38:21
39:14,20 41:3 47:12
63:16

**process**
13:8,9,14,17,20,25 15:21
21:15 29:5 40:16

**processed**
78:9

**processes**
39:5

**proficiency**
84:21

**proficient**
12:22 13:3

**program**
82:23

**prohibited**
19:21

**prosecute**
25:23 26:15

**prosecuted**
25:24

**protect**
69:22 70:10

**protection**
38:5 52:15 57:9,10 69:21

**protections**
69:23

**provide**
71:14,18 74:9,17 76:9
84:1,3

**provided**
38:4 49:5,7,9 76:19 84:6

**public**
51:24 52:16

**public's**
52:8

**publicized**
32:7

**pulled**
25:15

**punishment**
28:4

**purpose**
16:21 35:23,25

**put**
64:10 70:8,9

**Q**

**qualification**
54:15 64:9

**qualifications**
20:10 64:5 83:2

**qualified**
16:16

**qualifies**
53:13

**qualify**
84:18

**question**
6:14,22 19:16 20:20

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

29:10 31:3 32:4 34:5
45:9 48:14 50:10 52:20
54:7 58:5,6 59:24,25
63:19 65:9,17,25 69:5,6
70:3

**questions**
5:5,10,13 9:2 65:24
66:22 75:8,16 84:24

**quote**
79:17

**R**

**r-o-c-h-e-s-s-e-t**
4:14

**random**
66:22

**Ranger**
29:21,25 30:10 66:9 71:2

**Ranger's**
30:19 31:7

**Rangers**
29:14 66:6 75:20

**ratio**
37:20

**re**
73:9

**Re-administered**
17:25

**read**
10:18 15:14 16:23 17:2
21:19 22:22,23 23:8,9
24:20 25:3,8 27:18,23
57:16 69:20

**reading**
17:4 27:22 62:11 80:11,
12 82:14

**reads**
82:3

**ready**
81:15

**reapplied**
43:3

**reask**
58:7 69:13

**reason**
34:23,24 51:7,14,20
60:17

**reasonable**
58:15,23 59:3,8,10,11,
12,13,22,25 60:2,5 61:4
62:6,7

**reasonably**
62:12 79:18 80:9

**reasons**
52:10,21

**recall**
27:12 74:14,16 75:3

**received**
71:20 82:18

**recently**
21:19,21 22:22

**recess**
75:11

**recite**
58:7

**recollection**
19:20

**record**
4:12 26:25 56:1 59:19
64:13,16,19 81:22

**redress**

**referring**
80:12

**regarding**
66:25 69:14

**regards**
18:18

**regular**
50:22

**regularly**
33:10

**relationship**
72:4,9

**relative**
26:21

**relieve**
39:7

**relieving**
39:10

**remember**
17:13 19:5,6,8 23:19
25:12 28:25 29:1 31:25
32:6,13,17 44:19 57:11
66:5,16 71:5,10 72:15
83:10

**remove**
37:4 41:5,18,22 42:1,14
43:20 45:19,23

**removed**
41:10,12 42:3,8,17 43:2,
10,15

**repeat**
5:13 20:20 21:2 31:3
34:5 43:25 45:9 48:14
50:10 52:20 54:7 63:19
65:9 69:5 72:1 73:6

68:10



**repeated**
64:7

**rephrase**
6:22

**report**
30:3

**REPORTER**
4:1

**represent**
75:15

**request**
41:8 71:17

**requested**
41:9

**require**
12:9 65:10

**required**
11:1,4,11 14:5 39:11
40:22 49:16 57:13,18
65:12,15,18 84:12

**requirement**
15:7 33:3 54:24 55:18
58:23

**requirements**
9:4,5 13:25 14:2 15:20
16:6

**reserve**
84:25

**response**
65:3

**responsibility**
46:24 47:3

**responsible**
13:13 46:25

**restrain**

45:3

**restrained**
42:22 80:16

**restraining**
46:20 47:4

**restraint**
37:10 41:3 46:3,10

**restraints**
37:14,17 41:6,10,12,19,
23 42:2,7,14,16 43:1,3,
10,15,20 45:19,24

**restrictive**
36:6

**restricts**
36:4

**restroom**
43:2,11,16,24 44:3,18
45:16

**resubmit**
20:18

**result**
32:22

**retirement**
75:7

**review**
11:23 12:13 20:6,9
73:16,22,23 74:20,21

**reviewed**
20:19

**reviews**
76:24 79:6 81:14

**revised**
81:19

**Rice**
4:7,9 11:7,12,21 12:15,

21 13:2,24 15:4,12
16:11,21 17:11,20 18:14,
22 19:6 20:7,15 21:3,11,
20,24 22:4,11,23 23:4,5,
9,20 24:1,9,16,19,25
25:13,22 26:3,13,20 27:4
28:3,16,19,24 29:10
30:8,15 31:4,19 32:4,13,
16 33:24 34:6,13,20
35:3,13 36:13,19 37:25
41:2 42:13 43:9,14 44:24
45:23 46:2,9,18 47:11,19
48:3,10,20,25 50:2,7,21
51:20 52:3,21 54:4,24
55:17,21 56:3,13,23
57:7,18 58:3,6,12,22
59:2,9,21 60:11,17,22
61:11,14,22 62:2,10,19
63:16,20 64:25 65:2,4,5
67:3,24 68:4,7,9,15,23
69:3,13 70:4,12 71:16,
19,24 73:21 74:3,7,9,12,
16 84:11

**right**
35:7 61:25 65:2 76:18
79:2 80:4 81:5,17 83:12
84:9

**rights**
47:23 49:21

**rings**
66:16

**risk**
37:16 40:4,15,18,22

**risks**
40:8

**room**
29:25 30:3

**Rose**
18:23

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

**running**
35:5

**Russo**
11:6,9,20 12:11,18,24
13:23 14:16 15:1,9 16:8,
18 17:16 18:9,19 19:3
20:3,11,25 21:8 22:1,9,
19 23:2,14,17,23 24:6,
14,18,22 25:10,19 26:1,
11,16 27:25 28:14,18,20
29:9 30:5,12 31:2,17
32:1,11,14 33:21 34:3,
10,16,25 35:9 36:10,16
37:22 40:24 42:10 43:4,
6,12 44:22 45:20,25
46:6,15,21 47:9,17,25
48:6,19,22 49:24 50:5,19
51:18 52:1,18 54:20
55:14,19,25 56:10,20
57:4,15,25 58:5,9,11,18,
25 59:5,17 60:6,14 61:6,
9,19,25 62:16 63:11,18
64:23 65:1,3 67:21 68:1,
6,12,18 69:11 70:1,6
71:12,14,23 73:18,25
74:7,8,11,13 84:9,25

**S**

**safety**
51:23,25 52:5,8

**said**
9:3 41:25 57:18 71:20

**same**
5:2 24:18 45:25 84:22

**sandwich**
68:5

**sat**
45:6,10

**satisfied**
16:5

**saw**
67:9

**say**
9:20 10:24 12:8 15:17
17:21 26:13 49:20 53:6
80:12,21

**saying**
18:12 21:1 39:19 54:16
69:9

**scenario**
54:13 66:17 73:2

**scenarios**
53:15,18,22 63:9,23 64:5
65:13 76:14

**scene**
22:13,18 24:3,10 26:22
66:3,4,7,8

**school**
6:9,11,15,19

**Scratch**
29:10

**second**
60:12 76:21 77:3 81:11
82:2

**secretary**
72:7

**Section**
79:4,16 80:13 81:12

**security**
6:3 76:9

**see**
5:20 16:12,23 31:12
33:15 46:13 49:12 70:15
71:24 74:23 77:5

**seeing**
19:6 31:16

**seeks**
48:7

**seem**
55:21

**Seemed**
67:13

**seen**
19:2 23:5 29:23 30:1,7
32:9 72:13 74:5

**seminars**
63:21

**send**
33:25 34:6,12 71:8

**sense**
33:17

**sent**
23:10

**separate**
29:17,18

**sergeant**
22:15

**serious**
58:17

**seriously**
60:3

**service**
82:20 84:13,15

**set**
69:15

**several**
27:3 28:9 71:21

**shakes**
55:3

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                          118
HENRY TROCHESSET - VOL.1, 08/26/2022          Index: shall..some

**shall**
77:4

**shape**
33:25 34:2

**share**
73:14

**she**
74:22

**sheet**
39:12,24 40:1,4

**sheriff**
5:24 6:21,24 7:13 8:5
9:5,8,18 10:9 12:23 13:9,
14 14:6,10,15,17,23
15:24 16:22 17:1,5 18:5
19:9,13,18,24 20:1,7,9
22:7 26:20 28:12,19
33:3,24 41:10 46:3
48:11,15 50:23 54:25
55:6 57:13 65:5,21 75:14
76:6 77:2,3

**sheriff's**
5:22 7:1,20,23 8:21
10:18 39:15 45:3 60:21
80:15,24 81:3 82:16
83:3,19 84:6

**shifts**
7:7 45:8,13

**shoot**
35:7 50:15,16 53:15,17,
23 54:14,18 64:5 65:14

**shoot/don't**
53:15,17 64:5 65:14

**shooting**
30:16 31:15 32:8 34:24
54:17 66:2 67:10,18
70:23,25 75:18

**shootings**
29:6,8,11,12

**short**
18:11

**shortly**
67:9

**shot**
31:22 45:7,11

**should**
8:13 21:15 27:20 39:3
64:18,21 79:3

**shoulders**
62:9 74:2

**show**
54:17 84:21

**shows**
27:22 31:5

**shrugs**
62:9 74:2

**sic**
43:10 44:16,20,24 45:2

**SIGNATURE**
85:1

**signs**
64:12

**simulator**
53:22

**since**
9:2

**sir**
4:15 5:11,15,19,21 6:5
7:16 10:7,14,15 16:3
18:21 19:25 22:4,11
24:15,17,24 25:7 30:1
31:4 32:25 33:8,11 36:25
37:8,25 38:15 39:25

40:12 44:8,10,13 49:8
55:5 57:22 59:24 65:19,
20 67:3 72:20,23,25
75:20 76:5,17 77:6,18,19
78:3,12,15 79:1,11,14
80:3 82:6,9,25 83:5,16
84:7,8

**sit**
31:6

**sitting**
47:6

**situation**
37:18 42:3 53:3,7 58:21
60:8,10,13 61:16

**six**
14:24 27:9 45:6

**slight**
63:1

**so**
4:4 6:15 7:8,12,13 8:3,
10,15,20 9:3,5,7 10:2
11:4,25 13:2,13 14:5,14
15:4,7,17 16:4,12,25
19:15,23 20:7,15 21:1,6
22:11,18 25:8 26:6 27:17
28:16 29:1 30:2 32:5
34:1 35:3 36:13 38:5,10
39:18,23 42:24 43:10,15,
23 44:2,17 47:3 49:12,20
50:11 51:13,25 52:10
53:16 58:6,22 59:2,21
60:12 61:3 62:23 63:2,8,
13 68:9,15 75:16 76:3
77:11,25 78:8,13,16
83:1,24

**some**
6:13 7:15 34:8 65:24
68:10 78:4,5,6

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

**somebody**
18:12 32:23

**someone**
9:17 16:13 18:7 76:15
83:22

**something**
20:14,17,22 22:6 27:10
32:24 57:11 64:7 69:10
71:15 78:20 84:1

**somewhat**
69:2,3,4

**somewhere**
21:19 25:3

**son**
22:17

**sorry**
8:25 19:5 21:11 63:19
79:24

**sort**
15:13 19:17 53:16

**sound**
56:5

**Sounds**
31:8

**speak**
70:19 73:4,7 75:1

**special**
47:11

**specialized**
54:4,16,18

**specific**
39:20 54:23

**specifically**
54:6,10 83:21

**speculation**

12:25 16:9,19 18:20
20:4,12 21:9 26:17 28:1
30:13 32:2,12 34:4,18
35:1,11 48:1,7 52:2 57:5
59:18 61:7 68:2,13 70:2
73:19 74:1

**spell**
4:12

**spoken**
72:24 75:5

**spray**
84:5

**staff**
38:5 82:3

**stages**
7:4,5

**stamped**
81:23

**standard**
13:17 62:6,7 84:5

**standardized**
82:23 83:18

**start**
6:23 79:23

**started**
72:20

**state**
13:24 33:12 53:20 57:21
60:24 65:11 68:24

**stated**
22:13 23:5 25:15 26:6
30:8 31:14 56:17 61:22,
23

**statement**
31:13 32:6 44:14 60:25
61:14

**states**
18:25 42:25 59:10 77:3

**stating**
14:21

**station**
39:12

**Steadham**
44:12,13,14

**Stedman**
44:9,16,20,24 45:2

**step**
15:22

**stick**
9:4

**still**
14:14 15:20 26:18 45:11
67:25 70:13

**stipulations**
4:1

**straight**
60:4

**strictly**
30:18

**stuff**
51:5

**subject**
78:8,18 79:22

**such**
28:22 40:16 53:8,15 56:7

**suffering**
5:8

**summary**
78:11

**supervising**
41:11,17

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

**supervisor**
44:21

**supplied**
83:18

**supposed**
84:18

**sure**
6:14 8:14,17 36:18 47:7
56:17 59:20 71:7,8 81:4

**surprise**
25:13 55:11,17

**surprised**
50:3,7

**suspect**
28:10

**suspects**
65:22

**swallowed**
78:6

**swapped**
27:13

**sworn**
4:3,23

**sync**
29:15

---

**T**

**take**
5:16,17 58:3 66:1 75:9
76:21 79:2 82:4

**taken**
4:19 43:2 75:11 77:25
78:8

**takes**
39:5 55:18

**taking**
5:8 39:1 46:14 78:10

**talk**
13:7 82:10

**talked**
76:7

**talking**
8:16 59:9 84:15,16

**talks**
77:1

**tape**
67:9,12

**target**
54:17

**taught**
63:4

**TCOLES**
6:18

**teach**
48:11,16 53:20,21 63:6
65:21

**teaches**
9:18,19

**teams**
45:7,11

**tell**
4:23 17:1 28:13 59:23
73:10,11

**tells**
50:13

**ten**
12:8 19:20 55:18 64:8
83:8,10

**Tennessee**
56:8 66:15

**term**
66:18

**terminated**
73:3,16 74:20 75:3,6

**termination**
68:11 73:22

**terminations**
73:23 74:21

**terms**
76:14 83:2 84:4

**test**
14:8,9,12,14,21,22 15:8,
13,18 16:5,7,13,17,22,25
17:8,15,22 19:2 23:11
27:21

**tested**
10:12 11:12,15 12:16
33:10 34:21 46:10 49:2

**testified**
4:3 61:20 62:1

**testimony**
11:10 15:2 17:17 24:7
26:12 28:21 56:21 61:20
63:12 69:12

**testimony-wise**
74:11

**tests**
14:5

**Texas**
19:19 29:13,21,24 30:10,
19 31:7,20 66:6,9 71:1
75:20 76:20 78:23 79:4
82:11

**than**
21:25 22:3 40:2 55:23
80:16,23 81:2

**AdvancedONE**
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                    121
HENRY TROCHESSET - VOL.1, 08/26/2022                     Index: Thank..their

**Thank**
4:15 84:8

**Thanks**
26:20

**that**
4:12,21,23 5:3,9 6:7,12,
16 7:5,8 8:7,11,18,21
9:13,16,18,19,20,23,25
10:3,6,11,18,20,21,22
12:6,7,8,14 13:20 14:6,9,
14,20,21,22 15:4,7,12,
18,23 16:1,4,10,11,13,
15,17,22,25 17:1,2,7,8,
12,15,18,21,23 18:1,12,
16,23,25 19:2,14,16
20:1,6,16,18,21,23
21:14,16,20 22:7,12,13,
14,22,23 23:1,3,5,6,10,
11,12,20 24:1,9,16,19,
20,21,25 25:3,12,15,21
26:6,7,13,14 27:10,18,
19,21,22,23 28:2,4 29:15
30:3,8,9,19,22 31:4,14,
16,18,20,21 32:7,9,13
33:4,12,16,19 34:7 35:2,
3,6 36:9,15,22 38:17
39:4,9,14,17,19 40:14,
17,21 41:8,14,19,21,22
42:6,7,20,23,24,25 43:9,
11,23,25 44:2,9,17 45:6,
7,9,10 46:17 47:1,13,15
48:3,14,25 49:4,19,20,22
50:3,6,11,13,14,18,22,25
51:3,7,8,14 52:4,11,13,
21 53:3,6,7,8,12,25 54:1,
7,19,25 55:9,17,21 56:9,
17 57:2,11,21 58:13,16,
20,22 59:7,10,12,13,14,
20,23 60:2,4,5,8,9,22,25
61:8,14,15,16,20,22,23
62:1,2,5,11,20,24 63:3

64:4,7,14,19,22 65:9,17
66:9,11,22 67:4,7,10,11,
17 68:4,22 69:5,8,9,15,
19,24 70:9,10,12,22,24,
25 71:3,5,21 72:1,15
73:1,6,17,21,22 74:3,10,
16,17,25 75:10,22,24
76:2,13,18,22 77:5,7,9,
11,20,21,22,23,25 78:2,
5,6,10,13,14,20,24 79:8,
9,18,21 80:9 81:1,23
82:3,7,11,12,18,23 83:18
84:5,16,19,22

**that's**
4:7 11:7 13:18 14:4
20:13 21:1,3 33:18 35:22
37:6 40:13 41:3,14 43:17
44:4 46:4 47:7 53:16
61:4,25 64:3 65:3 66:5
69:19,25 79:23 82:12
84:1,5,6

**the**
4:1,12,23 5:2,3 6:2,3,4,
18,20,22,23,25 7:1,2,3,4,
7,22 8:10,12,16 9:4,11,
13 10:3,12,17,18,19
11:1,7,12,15,21,25 12:1,
3,8,13,16,17,22 13:4,8,9,
11,13,14 14:12,23 15:20,
21 16:5,6,17,21 17:1,22
19:6,9,14,21 20:13,17,
18,20,22 21:7,12,13,14
22:13,16,18,25 23:9,11,
21 24:2,3,7,9,10,11,20
25:1,14,15 26:4,14,18,21
27:13,14 28:7,10,12,16,
19 29:10,13,21,24,25
30:3,15,18,19,25 31:1,3,
7,9,13,21,22 32:4,6,8,22
33:1,5,7,15,19,24 34:5,
12,14 35:5,7,15,17,22,

24,25 36:2,3,6,7,8,20
37:1,3,4,9,10,11,12,18,
20,21 38:4,5,8,9,13,14,
15,18,21,22 39:5,6,7,9,
11,15,16,19,21,23 40:1,
2,4,7,8,15,19,21 41:3,4,
5,6,7,9,10,11,15,22,25
42:6,7,18,21 43:2,7,11,
16,24 44:2,17 45:2,11,
12,16 46:10,25 47:21,23
48:4,12,16,20 49:3,6,14,
16 50:1,8,9,10,11,12,13,
15,16,22 51:3,5,7,8,11,
12,14,16,20,21,22,23
52:4,8,10,12,13,15,17,
21,23,24 53:1,4,5,9,11,
22,24 54:6,9,19,25 55:8,
11,17,23 56:1,9,14,15,18
57:1,9,11,13,14,19,24
58:22,23 59:7,9,10,18
60:2,17,20,21,23 61:4,
15,16 62:4,5 63:2,19,24
64:1,4,9,10,13,20 65:3,
13,24 66:2,3,6,7,8,9,10,
11,12,15,16,17,18,24
67:2,4,6,10,13,14,15,16
68:20,21,22 69:14,15,21
70:16,19,23 71:1,3,8,17
72:6,7 73:2,7,10 74:5,14,
19,20 75:2,10,18,20,21,
23,24 76:1,6,8,9,14,15,
18,20 77:1,2,5,8,12,16,
17 78:1,9,10,16,22,23,24
79:9,10,15,16,19,20
80:1,7,13,15,16,19,20,
22,23 81:2,4,9,11,18,22,
24 82:2,11,16,19 83:1,3,
10,18,22 84:6,12,16

**their**
7:24 10:23 11:5,11 13:16
20:23 25:5 33:13 35:24

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

36:2 37:16 38:4 41:6
46:19 48:11,16 49:3 50:4
51:10,12,13,15,23,25
52:11 53:4,14 54:14 67:8
83:20,23 84:12

**them**
15:24 16:2 18:8,15 19:10
21:14 39:1 40:23 42:1
46:14 47:6,8 50:18 51:13
52:15 53:12 55:7 63:6,
13,14,15,17,24,25 71:20
72:5,10,13,16,21,24
73:4,8,10,11,14 75:1

**themselves**
84:1

**then**
8:20 9:8 11:4 59:23
67:14,15 68:10 80:19
81:5 82:2

**there**
6:5 7:4,5 8:11,18 10:8
12:6 13:17,24 14:5,12
15:7,22 16:16 17:21
18:22 22:12,18 26:7
29:22 31:12 33:2 39:14,
20 41:23 42:5,13,20,24
44:5 45:5,10 47:6,8,11,
19 48:3 50:8,12,17 52:13
53:14 54:24 62:19 63:1,
13,24 70:25 71:6,20
72:19,20 76:19,21 77:22
81:24 83:8,17

**there's**
7:17 8:3,17 11:23 58:5
63:2,6,8,13

**these**
28:12 47:24 81:23

**they**
7:23 8:4,23 9:8,14 10:12,

13,18,19 11:11,12,15
14:20,22,24 16:23 20:14,
22,24 21:1 25:25 28:12,
22 29:2 30:17 35:25 37:5
46:13 49:7,9,12,22 50:4
51:10,20 53:21 54:13,18
56:18 62:18 63:9 64:4
65:18 66:10 67:7,14
73:15,17,24 76:3,14
83:24 84:1,13,14,16,21

**they're**
9:10 10:19 11:4,13 14:22
20:18 33:16 37:5,6,21
38:22,25 49:15 51:11,14,
15 63:24 84:18

**thing**
83:12

**things**
10:20 28:12 64:6 70:10
71:21 76:18 78:11 80:20

**think**
16:4 27:9,21 31:4 59:3,4
62:11 76:7 82:15 83:12

**Thirty**
72:18

**this**
5:1 20:5 23:20 26:13
28:25 31:23 42:3,14,17
49:2,21 53:9 54:23 55:1
60:13 66:21 70:20 71:4,9
72:22,24 73:5 75:17 77:1
78:20 80:11,12 81:8,10
82:15 83:13

**those**
9:1 14:2 20:10 26:15
27:4,15 29:7,11 36:5
37:7 38:12 41:11 43:3,
10,15,20 45:15,18,19,23,
24 63:5,22 64:6,14 65:15

69:23

**though**
5:1 31:9

**thought**
78:21

**threat**
58:16 60:3

**three**
55:12,22

**through**
8:23 9:14,16,17 13:11
15:19 19:15 22:25 23:21
50:18 53:19,22 54:13,19
55:1,7 65:11 66:1 67:14
74:3 81:10,24 82:19

**time**
5:16 12:16 20:5 21:2
22:16 34:14,20 53:6,24
54:23 56:15 66:2,3,9
71:1 72:1 77:21 78:13
79:17

**Time-wise**
17:13

**times**
27:3 55:22 75:2

**tip-top**
33:25

**tired**
34:23 35:6

**title**
5:23

**to**
4:23 5:5,16,17 6:11 7:2,
5,22,23 8:4,20 9:3,4,12,
13,22 10:16,20,23 11:1,
4,5,9,11,13,20 12:7,11,
15,18,24 13:7,16,18,23,



25 14:4,5,10,16,21,23
15:1,8,9,19,20,21,24
16:2,11,18,23 17:14,16,
19,24,25 18:3,6,7,9,18,
19 19:3,20 20:3,5,9,11,
16,18,22,23,24,25 21:21
22:1,9,19,20 23:2,14,17,
21,23 24:3,6,10,14,22
25:10,17,19,21,23 26:1,
11,16,22,24 27:8,13,14,
18,19,23,25 28:5,9,14,
16,20 29:1,4,5,9,17,20
30:3,5,12,18,19,23 31:5,
6,8,17 32:1,4,5,6,11
33:1,3,5,7,13,15,16,17,
18,20,21 34:3,8,10,25
35:7,9,13,24 36:2,10,16,
23 37:1,2,4,6,22 38:9,11,
20 39:1,6,7,11 40:22,24
41:5,10,11,18 42:1,10,
13,18,21 43:1,2,4,12,18,
19,23,24 44:1,2,16,21,25
45:15,18,24 46:12,14,15,
18,19,20,21 47:3,7,9,17,
25 48:4,6,19,22 49:5,12,
15,16,20,24 50:5,11,15,
16,19,22,25 51:8,12,13,
14,17,18 52:1,3,7,11,13,
17,18,22,24,25 53:4,8,
12,23 54:5,9,14,17,20,
23,25 55:7,14,19,21,23,
25 56:8,10,15,19,20,23
57:4,11,13,15,16,17,18,
24,25 58:2,7,9,12,13,15,
18,25 59:5,11,17,20
60:2,6,9,11,25 61:6,12,
19,20 62:14,16,24 63:2,
6,8,11,13,14,17,21,22
64:8,11,12,22 65:7,22
66:1,2,3,5,8,21 67:6,7,24
68:1,12,20 69:11,13,21
70:1,3,6,10,16,17,19

71:4,11,12,14,18,19
72:7,15,22,24 73:4,17,
18,22,25 74:20 75:9,14,
23,24 76:2,3,8,9,13,15
77:2,4,8,11,16 78:5,9,18,
19 79:19,23 80:3,5,8,9,
13,21 81:10,12,17 82:2,
3,4,5,12,16,18,20,24
83:2,19,21 84:1,12,18,21

**today**
5:6 17:14 18:11,12 58:8

**together**
29:25 30:11 70:8,9 72:12

**told**
47:15 50:3 55:11 65:13
74:21 77:24 78:3,7,12

**Tom**
4:13

**too**
4:5 25:4

**took**
53:25 54:1

**total**
45:5 55:12

**touch**
33:1 35:13

**touched**
82:15 83:13

**tough**
63:14 66:5

**trade**
6:11,15

**train**
63:13,14,17

**trained**
56:13 63:8

**training**
8:11,18,23 9:8,14,22,24,
25 10:3,6 53:11,14,25
54:1,8,17,18,22 55:1
56:18 64:10,17 65:6,7,11
82:18 83:2

**trainings**
54:5 64:10,14

**transcript**
74:10,15

**transferring**
35:14 37:3 51:16

**transport**
33:18 39:4

**transported**
39:8 51:4

**transporting**
35:16 36:20 38:22 39:4,
7,16,21 40:19 49:6,15
50:21 51:21 52:12,23
84:3

**transports**
9:13 33:7

**trial**
76:2 84:25

**tries**
51:8 52:17

**Trochesset**
4:2,11

**trouble**
27:1,22

**truck**
65:14

**truth**
4:24 26:14

BENSON vs GALVESTON COUNTY, et al.                                124
HENRY TROCHESSET - VOL.1, 08/26/2022            Index: try..verse

**try**
14:24 29:3 33:20 50:25
51:17 52:13,25 63:17

**trying**
52:3,7 80:21

**turn**
70:16

**turned**
18:23 23:15 25:16 30:9
64:19

**turnover**
71:11

**two**
29:16,18 40:22 45:5 55:1

**two-man**
40:10 45:7,11

**type**
82:18 83:24

───────── U ─────────

**ultimately**
13:12 46:24,25 68:16

**unconscious**
45:12

**uncuffing**
43:23 44:1

**under**
4:21 58:23 61:23 62:6
70:13 77:8 79:15 80:1,7
81:12 82:11

**undergo**
9:9

**understand**
4:21 5:3,12 59:21,24
78:2,6 83:9

**understanding**
5:10 58:22 77:20 82:17

**Understood**
71:23

**uniform**
55:18,22 83:20,23

**unincorporated**
6:3 76:8

**unit**
38:24 39:1

**Unknown**
13:1,6 41:20

**unlawfully**
67:18,23

**unrestrain**
44:21,25 45:15 46:13

**unrestraining**
44:17 47:4

**Unsure**
56:12

**until**
84:25

**up**
13:11 22:17 24:3 26:7,22
27:3,7 35:15 55:18 60:9
63:22 64:12 65:16 69:4
82:12

**update**
11:23 12:2,9 29:2

**updated**
11:22 12:1,4

**us**
5:17 29:2 42:1 57:21
64:22 71:14

**use**

10:19 12:4,7 38:9,12
43:11,16,24 44:2,17
45:16 48:4,12,17,20,24
49:3,19 50:4,9 53:4,8
54:6,9,19 55:7,8,11,23
56:3,9,24,25 60:23 64:4
67:4 68:22,23 69:14
76:12 78:22 80:8,16
82:12 84:13

**used**
64:3 67:7

**uses**
21:13 59:12

**using**
49:21 50:14 63:10 79:17
84:22

**usually**
29:13 40:13 41:7,25

**UTMB**
78:17 80:1

───────── V ─────────

**vague**
11:20 12:11,18 13:23
20:25 31:2 36:10,16
37:22 51:18 56:4,10
58:1,18 59:5 60:6

**valid**
34:23,24

**variable**
63:7

**variables**
63:2,5,14

**veer**
12:3 60:11

**verse**

AdvancedONE LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                          125
HENRY TROCHESSET - VOL.1, 08/26/2022                          Index: video..what

57:12

**video**
29:23 30:1,7,9 31:16
32:10

**violate**
46:3 67:25

**visit**
39:1,2

**visits**
46:14 51:5

**vs**
56:8 66:15

————————————

**W**

————————————

**walk**
37:6

**walked**
27:14

**wall**
67:16

**want**
17:25 33:1 35:13 38:20
57:16 58:4 74:14 75:9
76:21 83:24 84:14

**warrant**
77:22 78:9

**was**
7:1,7,8 8:24 9:3 11:21
12:1,4,16,22 13:2,20
16:15,16,17 17:18,21,23
18:16,23,25 21:17 22:10,
12,13,15 23:10,15,21
24:2,21 25:5,9,12,14,15
26:7,8,14 27:12,14 28:3,
9 29:19 30:3 31:12,14,
15,18,19,20,21,23 32:8,9

34:20,21 36:8,18 42:2,
13,16 44:5,9,11 45:7,10,
11 47:15 50:8 55:12,13
60:12,17,22,25 61:11,14,
17 62:1,2,11 64:19 65:17
66:11,24 67:2,4,7,8,10,
17 68:3,15,20 69:6
70:22,24,25 71:3 72:6,7,
19,20 73:1 74:3,18,20,
22,23 75:3,7,17,18,22,
23,24 77:21,22,24,25
78:3,7,8,9,12,13,16,17,
18,19 79:8,9,12,17,22
80:1,8 82:21 83:6

**wasn't**
29:22 42:5 56:17 61:3,4,
17 80:25

**way**
20:17 41:21 42:6 47:16
63:6,8,13 72:20 81:22

**ways**
48:3

**we**
4:4 5:2 7:19 8:1 12:2
14:8 29:13 48:24 54:22
56:5 64:23,24 65:1
82:10,11,15 84:2,9

**we'll**
16:11 21:3 64:24 84:25

**we're**
5:1 9:3 81:10

**we've**
30:9

**weapon**
50:4 51:8,15 52:22,24
53:1,4,8 54:14 62:18
64:2 84:13,15,19,22

**weapons**
38:3,9,13 51:10,12,13
65:10

**wearing**
36:8,18

**weight**
80:23 81:2,4

**well**
6:17 32:21 35:22 42:24
51:11 54:13 64:25 69:20
71:19 81:17 82:19

**went**
7:2,4 8:15 24:3,10 66:8
82:11,19

**were**
7:4 8:1 9:2 27:4 45:5
66:2,10 67:6 70:9 73:15
76:3

**what**
4:10,15 5:23 6:14,20,23
7:20 8:22 9:8,10,14,23
10:5 11:7 14:2 15:17
16:21,25 19:12,17 20:1
21:6,11 27:4,11,12 28:3,
25 33:4,6 35:2,21,22,25
36:15,18,19 37:9,13,16,
20 38:3,12,21 39:5 40:7,
14 43:17 44:4,11 49:5,9,
19,21 50:16 51:20,25
53:11,16,17,19 54:4,8,
16,18 55:6 57:20 58:14,
15 59:2,3,21,23,25 60:2,
5,22 62:14,20,24 63:16,
20 65:1 66:23 67:2,11
69:8,18,21 70:15,22,24
72:4,9,14 73:1,4,7,10,11,
14 74:17,23 75:21 76:1,
25 77:24 78:3,7,12 79:3
80:20 81:12 82:14,17,18

(866) 715-7770
advancedONE.com

AdvancedONE
LEGAL

BENSON vs GALVESTON COUNTY, et al.                                    126
HENRY TROCHESSET - VOL.1, 08/26/2022                Index: what's..written

83:9,17

**what's**
74:24

**whatever**
24:20 37:5 74:12 80:8

**when**
7:1,4 8:1,24 9:2 11:21,25
12:3,16 13:20,25 16:10,
15 17:11 28:22 29:5
30:24 34:20 37:20 38:10,
11 39:4 40:7 46:13,20
48:4,12 49:15 50:17
51:4,15 52:23 53:23,24
56:18 59:11 64:4 73:11
80:12 82:10,15

**where**
5:2,20 6:7,9 20:17 22:23
23:1 26:8 31:13 37:6
49:22 53:4,8,22 54:25
57:10 69:23 70:4

**where's**
38:17

**whether**
15:14 47:3 71:17 78:16

**which**
32:15 34:6 36:5 54:14
59:16 77:3 79:3,4

**while**
37:10 40:18 46:4 49:5
52:12,22 63:9,10

**who**
10:2,17 13:8 14:21 15:22
16:4,6,13,16 22:12,13,15
23:21 24:2,3,10 27:19
29:7,11 30:15,19 31:18,
22 33:6,25 34:1,2,9
35:15,19 39:8 42:21
47:12 50:12 76:15 79:22

**whole**
26:14 66:17

**whose**
46:25

**why**
25:5,9 42:16 46:2 51:7
60:17 61:3,17 62:2 67:7
68:15 73:12,17,24 80:25

**will**
5:2,13 6:6 12:14 21:4
29:1 71:11 76:2

**willing**
71:11,18

**with**
10:19 17:2 22:25 26:4
27:14 28:22 29:15,21,24
31:7,21,22 34:2 35:15
38:13 39:6,12,23 40:7,23
45:6,10 47:6,8,23 48:12
49:7,9 51:8 53:12,13
54:5,9,19 56:9 60:9
63:10 64:20 66:8,12,14,
18,23 67:2 71:3 72:4,10
73:4,7,14 74:10,17 75:1,
5 76:22 77:16 78:14,22
79:8 80:19 81:1 83:14

**Withdrawn**
68:7

**within**
9:11 33:5 72:6

**without**
31:15

**witness**
29:20 30:4,24 55:3 62:9
71:17 74:2 75:10 76:24
79:6 81:14

**witnesses**

29:24 30:11

**word-for-word**
57:22,23 81:11

**work**
6:7 11:13

**worked**
6:5 39:17 83:8

**working**
7:1,7 37:21

**Works**
6:8

**would**
10:21,24 12:8 15:19
18:12,15 19:17 20:9,22
21:2,14 22:6,7 25:13
26:14,21 28:2,23 30:17,
18 33:24 34:6,11,13
35:25 36:5 37:13,16
38:10,11,12 40:17 41:7
42:1 50:2,7 51:20,21,25
52:3,7 55:6,11,17 58:14,
20 59:3,7 60:9 64:16
73:15,17,21,24 74:19
75:10 77:3,11 78:14
79:7,21 80:19 81:1 82:7
84:2

**wouldn't**
22:18 27:18 47:16 70:3

**write**
15:14 16:23

**write-ups**
27:4

**writing**
17:2,4

**written**
14:8,9 27:3,7

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

BENSON vs GALVESTON COUNTY, et al.                                    127
HENRY TROCHESSET - VOL.1, 08/26/2022            Index: wrong..yourself

**wrong**
27:14 32:24 68:16

**wrongful**
68:11

---

**Y**

---

**y'all**
9:16 14:6 64:13,16,22
72:12

**y'all's**
66:23

**yeah**
14:18 16:1 37:2 43:14
71:16 75:10

**year**
6:20,23 13:18 53:13
54:13 55:1 64:9 65:7

**years**
6:6 7:8 8:2,15 9:25 12:8
13:18 19:20 27:9 31:24
39:17 55:1 64:8 72:18
82:19 83:8

**yes**
4:20,22,25 5:4,7,15,19
7:16 10:14,15,25 13:5
14:1,9,13 15:6 16:14
17:10 19:25 21:23 22:4,5
27:10 31:4,11 36:25
37:25 38:15 39:25 40:12
44:8,13 47:2 49:15,18
50:24 51:2 53:11 56:15
57:6 60:16 64:15 65:19
67:3 72:20,25 74:8 75:20
76:17 77:6,18,19 78:3,
12,15 79:11,14 80:3,11,
18 81:16,21 82:1,6,9,25
83:5 84:17

**yet**
29:7

**you**
4:5,12,15,18,21 5:3,5,8,
9,12,13,14,16,20,25 6:5,
7,9,11,20,22,23,24 7:3,4,
5,15,20 8:7,10,11 9:1,2,
20,22 10:2,3,5,24 11:25
12:3,6,15,21 13:2,7,20
14:9,14,16,20 15:4,14,
17,24 16:1,4,12,15 17:7,
11,21 18:2,5,7,8,11,16
19:2,6,21 20:1,9,16,20,
21,23 21:16 22:11,23
23:5,9,20 24:1,9,16,19,
20,25 25:5,8,13,24 26:6,
14,21 27:5,11,18,20,21,
22 28:13,24,25 29:1,4,23
30:3,8,22 31:3,4,12,13,
24,25 32:5,9,13,18,19,23
33:12,24 34:5,6,13 35:4
36:5,9,13,21,23 38:8,18
39:14,19,23 40:21 41:14,
21 42:6,16 43:9,12 45:9
47:1,15,16,23 48:4 49:25
50:2,3,7,25 51:3,7,13
53:3,7,11,24 54:5,8
55:11,17,21 56:3,17
57:16,21 58:2,4,7 59:3,
21,22 60:1 61:8,22 63:4,
9,16,21 64:7,19,24 65:1,
7,13 66:1,2,3,12,14,18
67:6,11 68:4 69:5,13,18,
20 70:4,19 71:8,11,14,
15,24 72:1,2,4,9,16,21,
24 73:4,7,9,10,11,14,17,
22 74:13,14,16,17,22,23
75:1,5,9,14,21 76:6,7,21
77:2,4,5,8,15,23 78:1,6,
14,20,22 79:4,7,21
80:12,19 81:1,11,15,18,

24 83:12,13,15 84:8

**you'll**
5:17

**you're**
4:21,23 6:14 8:14,17,21
9:7,12 13:13 19:22 21:1
28:16 30:8 33:4 36:13
40:7 42:24 47:8,13 54:22
62:23 69:9 71:8 80:12
84:15,16

**you've**
18:5,12

**your**
4:10,15 5:1,23,25 7:22
10:16 12:9 13:8,25 14:6
17:14 18:24 21:21 23:15,
16 25:22 28:17 29:1,5,
12,16,19,23 30:2,10,17,
23,24,25 31:5,9 32:21,22
35:3,19 36:4 38:9 39:11
41:3,14,22 42:7,20,25
43:18 46:3,4,9,12,19
47:3,4,5,7,15 49:2,23
50:3,18 51:1,7 52:11,20
53:18 54:8 55:6,18,22,23
56:3,6,7,13,24,25 57:8,
13 58:7,14,22 59:10,22,
24 60:1,4 61:1,5,12,14,
24 62:11,19,24 63:4,21
65:5,8,10,11,21 67:17,25
68:11,23 69:3,6,13,18
70:3,4,15,17 71:3,11
76:7,12,14 77:9 82:17,24
83:14

**yourself**
65:6 76:21,22

(866) 715-7770
advancedONE.com