**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **DENNIS REYNARD BENSON** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No. 3:21-CV-00200** |
| **v.** | § | |
| | § | |
| **COUNTY OF GALVESTON,** | § | |
| **EDWARD BENAVIDEZ, Individually** | § | |
| **HENRY TROCHESSET, In his** | § | |
| **Official Capacity** | § | |
| | § | |
| **Defendants** | § | |

**DEFENDANTS', GALVESTON COUNTY'S AND HENRY TROCHESSET'S, IN
HIS OFFICIAL CAPACITY, OBJECTIONS TO UNSUPPORTED STATEMENTS
AND REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE DISTRICT JUDGE JEFFREY V. BROWN:

Defendants, County of Galveston and Henry Trochesset, in his official capacity,

(collectively, "County Defendants"), file Objections to Unsupported Statements and Reply

to Plaintiff's Response (the "Response") to Defendants' Motion for Summary Judgment,[1]

and in support thereof, respectfully show as follows:

I.      **OBJECTIONS TO UNSUPPORTED AND UNCITED STATEMENTS**

1.      Plaintiff's seventy-plus-page Response is full of statements where Plaintiff

fails to cite to any summary judgment evidence in support. FRCP 56(c)(1).  A party should

---

[1] Galveston County and Trochesset's Motion is ECF Document No. 39 and Plaintiff's
Response is ECF Document No. 45.

include specific, not general, citations to the summary judgment proof. *See e.g.*, *Smith v. U.S.*, 391 F.3d 621, 625 (5th Cir. 2004).

2.     County Defendants object to the numerous factual statements made in Plaintiff's Response, which do not cite to any source or exhibit. Federal Rule of Civil Procedure 56(c)(1)(A) requires that:

> **(1)Supporting Factual Positions.**  A party asserting a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to the particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;

3.     Plaintiff's Statement of Facts, Response pages 13-18, contain no citation to evidence at all.  County Defendants object to each factual statement that are wholly unsupported by competent evidence.

4.     Additional facts are recited throughout Plaintiff's Response, without citation. For example in the second paragraph on page 39 of the Response, Plaintiff states Sheriff Trochesset stated "no" when asked whether Benavidez conduct was unlawful. (Response at p. 39).  There is no citation for such statement.  In fact, Benavidez was terminated upon investigation into the incident. ([ECF No. 39-1] (*Trochesset Decl.*) at ¶ 19).

5.     County Defendants object to paragraphs and statements in Plaintiff's Response *lacking any citations* to evidence to support statements made, including for example:

a. statements made in Response paragraphs on pages 63 through 66 purporting to relate to negligent hiring, training and supervising allegations cite to no support;

b. statements made on Response pages 66 through 74 purporting to relate to tolerating use of force violations appear to be blanket recitations of Plaintiff's First Amended Complaint ("FAC") and which are wholly unsupported.

6.     "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 408 (5th Cir. 2011) (quotation marks and citations omitted).  County Defendants object to uncited and unsupported recitations.

## II. REPLY POINTS TO PLAINTIFF'S RESPONSE

7.     Despite filing a rather lengthy (70+ page) Response largely consisting of restated and unsupported argument and allegations from his FAC, Plaintiff has failed his burden to show the existence of a genuine issue of material fact.[2]

8.     County Defendants "[bear] initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir. 2015) (internal quotation marks and citation omitted).  If the burden of production at trial

---

[2] A fact issue is material "only if its resolution could affect the outcome of the action. *Manning v. Chevron Chem. Co., LLC.*, 332 F.3d 874, 877 (5th Cir. 2003) (quotation marks and citation omitted).  "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Inc. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks and citation omitted).

"ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310-11 (5th Cir. 2017) (quotation marks and citation omitted). Once a party "meets the initial burden of demonstrating that there exists no genuine issues of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (quotation marks and citation omitted). Plaintiff-Benson "must do more than simply show that there is some metaphysical doubt as to the material facts. [He] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id*. (internal quotation marks and citation omitted).

## A.     Plaintiff Misrepresents The Record In Proposing That GSCO's Policy is Vague and Ambiguous.

9.     Without support, Plaintiff attempts to create ambiguity in the GCSO Policy where none exists. Specifically, Plaintiff proposes that the County's use of force policy is vague and ambiguous as to dealing with a fleeing suspect. (*See* Response at pp. 27, 29). This argument is completely inconsistent with the undisputed language of the GCSO Policy and testimony. The evidence before the Court shows that Section 201 Use of Force provisions apply in dealing with an escapee. (*See* [ECF No. 39] at ¶¶ 18-19). This is expressly stated in the Sheriff's Office Standard Operating Procedure Section 400.10, III.B, as follows:

> B. All staff members are bound by duty to take any measure as may be legally possible to prevent escapes and/or intervene and recapture the escapee(s). GCSO Policy GC.201 guides personnel in the use of force to prevent the escape or recapture the inmate(s).

4

(*See* [ECF No. 39-1] at pp. 34-35).  Moreover, Trochesset and expert Kelly Rowe confirm

that the provisions in question apply to escaped suspects just like arrestees. (*See* [ECF No.

39] at ¶¶ 18-19).  Benavidez also confirmed that in dealing with an escapee, a deputy should

refer to Section 201, and that was what he was taught. ([ECF 45-4] (*Benavidez Dep.*) 95:13-

98:6, 99:25-100:6).

10.    Plaintiff has provided no evidence of an ambiguity in the GCSO Policies.

Moreover, the conclusory and unsupported statements Plaintiff makes cannot raise a

genuine issue of material fact and cannot remotely defeat summary judgment. *Brandon*,

808 F.3d at 270.

### B.    Plaintiff Purposely Misreads the GCSO Policy to Claim it's Unconstitutional

11.    After attempting to create ambiguity in the GCSO Policy language, Plaintiff

then simply elects to misread or ignore the actual language.  Plaintiff posits that the GSCO

Policy is unconstitutional because it allows use of deadly force any time an officer believes

he is unable to apprehend an escaped detainee without use of deadly force. (Response at p.

31).   Notably, Plaintiff cites to *nothing* in support of these statements and County

Defendants object to the Court considering such statements as they are unsupported and

conclusory.  Regardless however, all evidence properly before the Court is to the contrary.

12.    First, the GCSO Policy language itself, cited in the Motion, only authorizes

deadly force to "[p]rotect the officer or others from what is reasonably believed to be an

immediate threat of death or serious bodily harm" or if there is a belief that "an armed and

dangerous person . . . will pose a significant threat of death or serious physical injury." (*See*

[ECF No. 39-1] at p. 26).[3]  That language does not support Plaintiff's reading.  Secondly, as stated above, Trochesset, Kelly Rowe and Benavidez confirm that the GCSO teaches and applies the above language of the Policy, and there is no evidence to the contrary. (*See* [ECF No. 39] at ¶¶ 18-19; [ECF No. 45-4] (*Benavidez Dep.*) 95:13-98:6, 99:25-100:6).  Finally, Benavidez was terminated upon review of the shooting by the GCSO despite his belief that deadly force was necessary. ([ECF No. 45-4] (*Benavidez Dep.*) 93:11-25).  There is no evidence that the GCSO Policy permits deadly force when an officer believes there is no other way to apprehend a suspect.  In short, the GSCO Policy is not unconstitutional and making conclusory statements to the contrary cannot defeat summary judgment.

### C.    There is No Custom of a Subjective Standard for Reasonableness

13.    Although the argument is somewhat unclear,[4] Plaintiff seems to suggest that testimony that "every officer is reasonable" means that the GCSO applies a subjective test for reasonableness. (*See* Response at pp. 38-39).  First, Trochesset never testified that every officer is reasonable; he stated that a "hope" that that was true. (*See* [ECF No. 45-3] at 58:22-59:8).  Further, Trochesset never testified, and Plaintiff has pointed to no testimony or other evidence showing, that the test for reasonableness is a subjective test, solely based upon the belief of the officer.  Again, the GCSO Policy states that it is an "'objectively reasonable' standard." (*See* [ECF No. 39-1] at p. 25).  Moreover, it is clear that the GCSO

---

[3] Notably, Plaintiff's Response quotes similar language without citation. (Response, at p. 26).

[4] Frankly, similarly obscure and confusing questioning during Sheriff Trochesset's deposition on the issue of "reasonable belief" is what resulted in the statement that "I would hope all the officers are reasonable." (*See* [ECF No. 45-3] at 58:22-59:8).

applies an objective standard as Benevidez stated he believed Benson posed an imminent

threat, but the GCSO investigation found a Policy violation based on an objective standard.

([ECF No. 45-4] (*Benavidez Dep.*) 93:11-25).   Additionally, Plaintiff's statement that

Sheriff Trochesset said "no" to a question of whether Benavidez acted unlawfully is

completely unfounded. (*See* Response at p. 39).   County Defendants again object to such

uncited and unsupported statements as evidence.   Nevertheless, Plaintiff can point to no

genuine issue of material fact warranting denial of summary judgment.

### D.    There is No Evidence Supporting a Genuine Issue of Material Fact for a Failure to Train Claim

14.    Plaintiff seems to assert that his failure to train claim is supported by

Trochesset's statement that officers are not required to "know the [entire] manual front and

back" or that officers are not necessarily tested on the entire policy manual before work or

annually. (Response at 43).   These generic statements provide no support for Plaintiff as

they give no insight on particular facts or elements pertinent to this case.   More specifically,

the testimony in question provides no comment on the training officers generally, or

Benavidez particularly, received on the legal requirements for the use of force or the GCSO

Policy related to the use of force.   The specific GCSO Policy at issue here is the Use of

Force Policy, which is one section of the much larger Policy Manual.   Plaintiff's

questioning and subsequent answers fail to show the testimony applies to any particular

provision of the GCSO Policy; thus, there is no genuine issue of *material* fact. *Manning*,

332 F.3d at 877 (5th Cir. 2003) (a fact issue is material only if its resolution could affect

the outcome of the action).  There is no indication of what portions of the Policy Manual are being referred to.

15.     Importantly, the only evidence in the record related to use of force training practices is that Benavidez had the requisite training that met constitutional standards at the time he was hired by GSCO. (*See* Motion at ¶¶ 13-14, 27).  Indeed, Corporal Lucio Martinez acts as a GCSO Firearms Training Coordinator and provided a declaration related to training required of GCSO officers, including statements regarding proper training of officers on use of force, continuing education, annual qualifications, and reviews of GCSO Use of Force Policies. (*See* [ECF No. 39-2] at ¶¶ 1-2, 7-8, 10, 18).[5]  The undisputed evidence here is that Benavidez, like other GCSO officers, was properly trained.

### E.     Cases Cited From Outside the District are Unhelpful to Plaintiff

16.     In two almost identical sections of the Response, Plaintiff cites *Zuchel v. City and County of Denver, Colorado*, 997 F.2d 730 (10th Cir. 1993) and *Young v. City of Providence*, 301 F.Supp.2d 163 (D.R.I. 2004) to support his request for denial of summary judgment. (*Compare*, Response, pp. 40-48, *with* Response pp. 52-59).  Review of each of these cases demonstrates why summary judgment is appropriate here.  For example, the *Zuchel* Court upheld judgment for a plaintiff on a claim that the City failed to train an officer leading to a shooting. 997 F.2d at 740.  The Court analyzed evidence presented,

---

[5] Notably, Trochesset was deposed as an individual, rather than as an organizational representative with requests for particular areas of inquiry such that the testimony might bind the GCSO or County.  Cpl. Martinez is knowledgeable of the specific GCSO requirements on use of force and continuing training, given his position directly related to training on use of force and qualifications. (*See id.*).

including specific warnings and advise from the local district attorney's office regarding six recent deadly force situations in a six-week period and recommending expansion of training,[6] evidence of training received by officers limited to movies and lectures,[7] and expert testimony as to the inadequacy of the training received and opinions on the size of the city potentially contributing to frequency of deadly shooting situations.[8]  Plaintiff has provided no such evidence in support of his case here.  Thus, even assuming this Court ignores the specific and undisputed evidence of substantial and relevant training received by officers, including Benavidez, as mandated by TCOLE and observed by case law such as *Tolan v. Cotton*,[9] there is no evidence of a failed or inadequate training program leading to Plaintiff's injuries.  Accordingly, *Zuchel* supports granting summary judgment, rather than denial.

      17.    The *Young* case provides the same result.[10]  In *Young*, an off-duty officer was shot by another officer, presumably due in part to misidentification. *Id.* at 9.  The Court reviewed the evidence presented noting questions arising from conflicting evidence on the actual receipt of training by the officers, an absence of training on encounters with off-duty officers, and expert testimony on the need for such training specifically related to off-duty officer encounters. *Id.* at 18-19, 27-29.  Faced with that specific evidence properly before the Court, summary judgment could be denied.  Here however, the only record evidence is

---

[6] *Id.* at 738,

[7] *Id.*

[8] *Id.* at 739, 741.

[9] No. 4:09-CV-1324; 2015 WL 5310801, *2-3 (S.D. Tex Sep. 11, 2015).

[10] The corrected cite for the First Circuit opinion in *Young* is 404 F.3d 4 (1st Cir. 2005).

that Benavidez received significant and substantial training on the use of force through his TCOLE classes and peace officer certifications, and a specific use of deadly force policy is provided to and enforced for deputies. (*See* Motion at ¶¶ 13-14, 27). There is no contrary evidence. Again, applying *Young*, summary judgment is warranted.

**F.    Plaintiff's Attempt to Assert a Texas Tort Claim for Hiring and Supervision is Improper, the Claim is not in the FAC and this Court has Already Ruled that Such Claims are Meritless**

18.    Plaintiff seems to reassert a claim that County Defendants are liable under Texas Tort law for improper hiring and supervision of Benavidez. (Response at pp. 60-65). Plaintiff's inclusion of these allegations here is improper as such allegations are not asserted in the FAC. (*See generally*, FAC [ECF No. 12]). Moreover, in its order denying Plaintiff's Motion for Leave to file a Second Amended Complaint, this Court considered and denied the validity of a tort claim for negligent hiring or supervision under Texas law due to the application of immunity principles. (*See* [ECF No. 34] at pp. 3-5). To the extent the Court is willing to entertain a Texas Tort Claim for hiring and supervision practices, County Defendants incorporate the arguments made in their response to Plaintiff's Motion for Leave [ECF No. 31]. Any such claims are meritless and summary judgment is appropriate.

**G.    Plaintiff Did Not Address Trochesset's Argument that Dismissal of Him is Appropriate Due to Redundancy.**

19.    To the extent any part of Benson's case survives against County Defendants, claims against Henry Trochesset, in his official capacity, should be dismissed. A claim against the Sheriff in his official capacity is simply a suit against the County. *Goodman v.*

*Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009); s*ee also, Chavez v. Alvarado*, 550 F. Supp. 3d 439, 450 (S.D. Tex. 2021) ("Because the plaintiffs are suing the City of Houston, their official-capacity claims against the individual officers are redundant and are dismissed."); *Holland v. City of Houston*, 41 F. Supp. 2d 678, 689 (S.D. Tex. 1999).

### III. <u>CONCLUSION</u>

Pursuant to Federal Rules of Civil Procedure 56 and based on the lack of legal and evidentiary support for Benson's claims, County Defendants asks that the Court grant summary judgment on each and every claim brought by Benson.  County Defendants further ask for all other relief to which they are entitled, whether at equity or law.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By: */s/ Joseph R. Russo, Jr.*
    **Joseph R. Russo, Jr.**
    Federal I.D. No. 22559
    State Bar No. 24002879
    **jrusso@greerherz.com**
    **Jordan S. Raschke**
    State Bar No. 24108764
    Federal I.D. No. 3712672
    **jraschkeelton@greerherz.com**
    One Moody Plaza, 18th Floor
    Galveston, Texas  77550
    (409) 797-3200 (Telephone)
    (866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS, GALVESTON COUNTY AND SHERIFF HENRY TROCHESSET, IN HIS OFFICIAL CAPACITY**

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 24th day of October 2022 the foregoing was served in accordance with the Federal Rules of Civil Procedure to the following counsel of record:

***<u>Via electronic service</u>***

Genevieve Bacak McGarvey
Bryan R. Lasswell
McLeod, Alexander, Powel & Apffel, P.C.
802 Rosenberg - P.O. Box 629
Galveston, Texas 77553
dwpoole@mapalaw.com
brlasswell@mapalaw.com

Jarvis Rice
3306 Manzanita Lane
Manvel, Texas 77578
attorneyjarvisrice@gmail.com

*/s/ Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.
