**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| **Dennis Reynard Benson,** | § |
| **Plaintiff,** | § |
| | § **CIVIL ACTION NO.: 3:21-cv-00200** |
| | § |
| **v.** | § |
| | § |
| **Galveston County, et al** | § |
| **Defendants.** | § **JURY DEMANDED** |

**PLAINTIFF DENNIS BENSON'S REPLY IN SUPPORT OF HIS RESPONSE
TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

**I.      SUMMARY OF THE BASIS FOR THE RESPONSE TO REPLY**

Plaintiff Dennis Benson submits this Reply in support of his Response to the Defendant's Motion for Summary Judgment and respectfully asserts that Defendant's claims against him should be dismissed because:

1. The Defendant's Motion for Summary Judgement and Reply is based entirely on disputed facts. Not one piece of evidence provided by the Defendant proves that there is no dispute of material fact.

2. Not one of the Defendant's Exhibits was used outside his Statement of Facts in his Motion for Summary Judgment. There was no Exhibits or evidence offered by the Defendant in his argument section of his Motion for Summary Judgement.

3. Defendant's Motion for Summary Judgement and Reply offered no evidence to support that the Plaintiff's claims should be barred by Heck v. Humphrey.

4.   Defendant's Reply did not address or offer any evidence to why he believed that Texas
     Penal Code 9.52 was not unconstitutional.

5.   Defendant's Motion for Summary Judgement and Reply did not meet his burden to
     establish that he was entitled to qualified immunity.

6.   Defendant's Motion for Summary Judgement and Reply did not address or offer any
     evidence on why the Plaintiff's First Amendment Retaliation claim should be dismissed.

7.   Defendant's Reply focused mainly on the fact that Benson was a Pre-Trial detainee but
     does not address or provide any evidence to why even as a pre-trial detainee his
     constitutional rights were not violated.

8.   Defendant has failed to bring forth competent evidence demonstrating that there was no
     genuine issue of material fact, or to support his legal arguments. The Defendant listed
     several items as summary judgment evidence, but barley made reference to them in his
     Motion for Summary Judgement.

9.   Defendant's Motion for Summary Judgment states facts that are not in evidence.
     Defendant's Summary Judgement Motion stated the Defendant relied on Texas Penal
     Code 9.52, when shooting Benson. The Defendant did not provide one piece of evidence
     to back up that claim.

10.  A major factor in determining whether an action was objectively unreasonable is the
     officer's mind set at the time, not hind site 20/20. There is no dispute that Defendant
     Benavidez stated that he shot Benson because he was tired and to protect the public. Not
     because he was acting under the authority of Texas Penal Code Section 9.52.

11.  The Plaintiff's response offered the same evidence that the defendant presented for
     summary judgment.

2

12. The facts that the Plaintiff used in his Response to the Defendant's Motion for Summary Judgment comes from the Exhibits in the Defendant's Motion for Summary Judgement. This was done purposely to show that there is a genuine issue of material fact in this case.


## II.    <u>EXHIBITS</u>

1. **Benson Exhibit #7**   Sworn Affidavit to Texas Ranger by Defendant Benavidez

2. **Benson Exhibit #8**   Benavidez Deposition


## III.    <u>RESPONSE TO GROUNDS LISTED IN DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE</u>


### (1) <u>Plaintiff's Response offered no evidence to support his unsubstantiated and conclusory factual assertions</u>

Plaintiff response offered plenty of legal and factual evidence to support his assertions. The Defendant on the other hand provided no evidence to back up his claims listed in the Motion for Summary Judgement.

All of the Defendant Exhibits listed in his Motion for Summary Judgement were used in his Factual Background Section. There was not one piece of evidence in the form of the Exhibits he provided that was used to address his claims.

What the Exhibits was used for was to attempt to misconstrue the facts in this case. The Defendant tried to intertwine certain general statements that are proven by the Exhibits, with facts that are clearly in dispute, by placing them after the facts proven by the Exhibits. In the Defendant's Factual Background section, the Defendant made this statement,

"A third video from a bystander's cell phone captures the events leading up to the shooting. Despite repeated commands to stop, to get on the ground, and finally warnings that Benavidez would shoot, Benson crawled over two walls to gain entrance to a parking garage.7 There were numerous cars in the parking lot."

"Benson had fallen after scaling the second wall and was getting up and leaning on a car. Benavidez believed that Benson was resting with the intent to reengage him physically, or to continue to run into the parking garage to further his escape. When Benson failed to comply with the last command to stay down, Benavidez fired a shot purposefully targeting Benson's leg in an effort not to kill him. Benson was struck in the leg. Benavidez approached and began applying first aid. Despite having been shot, Benson continued to squirm as if in an effort to continue to escape from Benavidez. Eventually, medical personnel arrived and returned Benson to the emergency room for treatment of the gunshot wound."

As you can see by the two paragraphs above the Defendant tries to confuse the facts that are in evidence. The Defendant in the first paragraph gives a description of what he believes the video shows and provides the exhibit number to the video.

He then continues to describe the incident as if the video shows what happens in the following paragraph that starts with Benson had fallen, which it does not. At the end of that paragraph, you will notice that there is not a reference to an exhibit. That is because the entire second paragraph is story the Defendant came up with after the incident happened.

Defendant Benavidez gave a sworn statement to a Texas Ranger detailing the incident. In that affidavit Defendant Benavidez gave a totally different story. Defendant Benavidez stated

that Benson climbed over the second wall and fell. At that point he stated that he was physically tired and did not see anyone in sight. He stated that as Benson started to push up of the ground, he shot Benson because he thought he was about to run. (Benson Exhibit 6: Page 2-3, Benavidez Depo 46:20-21)

The Defendant never stated that Benson was resting on the car in the initial statement he gave. The fact that the Defendant change his story to Benson standing or leaning on a car in an upright position is very alarming, because he is now giving the impression that Benson was actively fleeing and not getting up off the ground.

The statement that was given by the Defendant to the Texas Ranger was sworn statement that he signed. The Motion for Summary Judgement that he provided to this court is a sworn legal document that he agreed to and was signed on his behalf by his attorney.

The fact that these two legal statements provided by the Defendant are in direct conflict with each other proves that there is a material dispute of fact in this case.

There was no wavering between and arrestee and a pre-trial detainee from the Plaintiff. As the Plaintiff's original petition states his § 1983 claim incorporated both the fourth and fourteenth amendment, due to the disputed facts in this case.

The defendant in his Summary Judgment Motion choose to mainly address the Fourth amendment claim. The Plaintiff believes that the Fourth or Fourteenth amendment standard applies to this case, the Defendant's use of force was excessive and objectively unreasonable, violating the Plaintiff's constitutional rights.

Also, this case presents a unique chance to challenge Texas Penal Code 9.52, which was last debated close to thirty years ago, in Brothers, the Defendant's primary authority in this case.

Texas Penal Code 9.52 due to the modernization of the jail system and the change in the way some laws are prosecuted, by the plain language of the statute, would unconstitutionally grant the right to an officer or deputy to execute a first-time offender charged with a misdemeanor who tries to escape a correctional facility. Making matters worse Galveston County sheriff deputies are not required to pass any physical tests to become a deputy.

The public perception about the use of deadly force by law enforcement official has drastically changed over the last thirty years, since Brothers was decided. Millions of people have taken to the streets to march, and millions of dollars of property has been destroyed due to the excessive use of force by law enforcement officials. Choke holds that once were legal are now outlawed, the use of a buttons that was standard practice is a thing of the past. The advancement of less lethal uses of force has made the use a firearm almost obsolete. Society has gravitated to the use of a firearm being objectively reasonable only when someone life is in danger.

The Plaintiff in his response to the Motion for summary judgement explained:

1.) How his claim was not barred by Heck V. Humphrey by showing that the elements of his § 1983 claim would not imply the invalidity of his sentence. The Plaintiff looked to the state court records relating to Plaintiff's underlying criminal conviction, and then compared those crimes for which Plaintiff was convicted to the elements of the present claims.

2.) How the force authorized by Texas Penal Code 9.52 is rife with contradictions of state and constitutional standards. Most obvious is the abandonment of the usual limitations

imposed on justifications in Texas Law and more strikingly is that it violates the constitutional norms explicated in Tennessee v. Garner

The plain language of the statute permits a correctional officer or peace officer to use deadly force if, for example, the officer reasonably believes they will not be able to apprehend an escapee otherwise.

No regard is paid to whether the person escaping has been convicted of a crime, whether any alleged crime involved violence, or whether the escapee poses a danger to others if apprehension is delayed.

**3.)** Why the Defendant was not entitled to qualified immunity due to the fact he violated a constitutional right that was clearly established at the time and his actions were objectively unreasonable considering the situation.

**4.)** That the Plaintiff amended his complaint based on the Defendants' election of remedies and removed Defendant Benavidez. Consequently, this portion of Defendant's motion is moot. and;

5.) How Benson exercised his constitutionally protected right to be arrested without harm when he raised his hands and retaliatory animus for Benson fleeing was a substantially motivating factor in the excessive force used by the Defendant.

### (2) <u>Plaintiff's Response Consistently Misrepresents His Legal Status</u>

The majority in the case cited by the Defendant, *Brothers v. Klevenhagen* relies

on *Valencia v. Wiggins,* 981 F.2d 1440 (5th Cir. 1993), cert. denied, U.S., 113 S.Ct. 2998, 125

L.Ed.2d 691 (1993), to conclude that Brothers was not protected by the Fourth Amendment;

however, I do not believe that *Valencia* is dispositive of the instant issue in Benson's case.

In *Valencia,* the Court held that the Due Process Clause and not the Fourth Amendment provided the applicable legal standard to adjudicate claims of excessive force. Valencia, 981 F.2d at 1445.

However, the *Valencia* court rooted its decision primarily in the fact that the plaintiff had been in custody for three weeks before the disputed incident, a fact not emphasized by the majority opinion in *Brothers*.

The court concluded that the fourth amendment was not the appropriate constitutional basis for protecting against deliberate official uses of force occurring after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time.

The court in *Valencia* gave three specific reasons why the fourth amendment would not apply in that case. The first was that the incident of arrest was complete. Second the plaintiff had been released from the arresting officer custody and third the plaintiff had been in detention awaiting trial for a significant time.

In Benson's case the arrest was not complete. Benson had not been released from the arresting officer's custody and he had not been in detention for a significant amount of time.

Benson was transported to the hospital by his arresting officer. The fact that the officer shift ended, and another officer replaced him does not mean Benson was released into the custody of the Galveston County Sheriff's Jail facility.

Finally, Benson was not in custody for an extended period of time. Benson was arrested in court and became ill on the way to being transported from the Courthouse to the Galveston County jail. He was then taken to UTMB by ambulance.

In *Brothers* the plaintiff had been arrested earlier that day and charged with auto theft. *Brothers* was book into the Jersey Village Police Department jail and was being transported to the Harris County jail by officers when he was shot. In *Valencia* the plaintiff had been arrested and in custody for three weeks when his incident happened.

The facts in *Valencia and Brothers* are different from the facts in our case. Valencia and Brothers both had been arrested and book into custody before their incident happened. They had been processed which usually consist of being searched, fingerprinted, and officially placed in the jail facility records.

Benson never was processed into Galveston County Jail; he was denied entry. Benson was never fingerprinted or placed in any formal jail facility records. Matter of fact Benson was not even searched, that is how he was able to swallow the drugs on his way being transported from the courthouse to the Galveston County Jail.

Also, I believe that the warrant Benson was arrested on, that initiated this incident, proves that Benson was not in custody of the Galveston County Jail. Benson showed up to court and found out that there was a warrant for his arrest. The warrant was for a drug raid in which Benson was transported to the hospital for health reasons, instead of being taken to the Galveston County Jail.

When the officers found out that Benson would be staying overnight, they left Benson at the hospital and a warrant issued for his arrest on the drug charges. When Benson left the hospital the next morning on his own, he was not charged with escape.

Second *Valencia and Brothers* were both released from the custody of their arresting officer. Brothers was arrested by the Jersey Village Police department, booked in, and transferred to the custody of the Harris County officers. Valencia had been released from his officer custody and in jail for three weeks.

Benson was never released from his arresting deputy custody. Deputy Steadham was Benson arresting deputy and deputy Steadham transported him to the hospital. Deputy Steadham shift ended, and Deputy Benavidez replaced him. There was no transferring of custody of Benson to the custody of another agency or correctional facility.

Third *Valencia and Brothers* spent a considerable amount of time in jail before their incidents happen. Brothers had been taken into custody and spent several hours in a jail cell and Valencia had been in custody for three weeks.

Benson did not spend any time in Galveston County Sheriff Jail. Benson became ill on his way being transported from the courthouse to the Galveston County Jail. He was denied entry into the Galveston County Jail and taken to the University of Texas Medical Branch.

The reason that Galveston County Jail denies arrestees who need medical attention from entering their facility is for liability reason. When Galveston County Jail denies that person, they are no longer responsible for what happens to that individual. By not processing them in, they are escaping liability.

That is what happened here. The Galveston County Jail denied Benson entry effectively waving custody to avoid liability. Not only did Galveston County Jail deny Benson entry, but they also added an extra level of protection on him entering their facility, by stipulating that he must be cleared by doctor in order to be booked into custody.

Therefore, since Benson was never in custody, was never released from his arresting deputy and did not spend a considerable amount of time in jail, the Defendant Motion for Summary Judgement should be denied.

### (A) Fourteenth Amendment Argument Excessive Force Claim

The Fourteenth Amendment applies to excessive force claims brought by pretrial detainees.  Specifically, the Supreme Court has held, "It is clear … that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).

More recently, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015), the Supreme Court held that to prove an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the officers' use of force was "objectively" unreasonable; the detainee is not required to show that the officers were "subjectively" aware that their use of force was unreasonable.

In *Kingsley v. Hendrickson,* the United States Supreme Court considered what the appropriate standard was for determining whether a use of force on a pretrial detainee was excessive under the Constitution.

The Court concluded that use of force on a pretrial detainee would be judged by an objective reasonableness standard. In doing so, the Court cleared up several variations among the Circuits as to the appropriate use of force standard when dealing with a person who was no longer a free citizen but was also not a sentenced prisoner.

Up until this decision, the various U.S. Circuit Courts of Appeal would determine the appropriate Constitutional standard based on the status of the prisoner. The Court has now made clear that until an inmate is sentenced the objective reasonableness standard applies.

Under 42 U.S.C. § 1983, a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim. This determination must be made from the perspective of a reasonable officer including what the officer knew at the time, see *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443, and must account for the legitimate interests stemming from the government's need to manage the facility in which the individual is detained, appropriately deferring to  policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish,* 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447.

Several considerations lead to this conclusion. An objective standard is consistent with precedent. In *Bell v. Wolfish,* 441 U. S. 520, 540, 547, for instance, this Court held that a pretrial detainee could prevail on a claim that his due process rights were violated by providing only objective evidence that the challenged governmental action was not rationally related to a legitimate governmental objective or that it was excessive in relation to that purpose. 441 U. S., at 541–543. Cf. *Block v. Rutherford*, 468 U. S. 576, 585–586.

Experience also suggests that an objective standard is workable. It is consistent with the pattern jury instructions used in several Circuits, and many facilities train officers to interact with detainees as if the officers' conduct is subject to objective reasonableness.

Finally, the use of an objective standard adequately protects an officer who acts in good faith, by acknowledging that judging the reasonableness of the force used from the perspective and with the knowledge of the defendant officer is an appropriate part of the analysis.

**(B) Fourth Amendment Argument Excessive Force**

The Fourth Amendment may also be applicable.  In *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), the Supreme Court observed that it was an open question "whether the Fourth Amendment continues to provide individuals with protection against deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins."  But with regard to pre-arraignment custody, the Ninth Circuit has held that the Fourth Amendment provides protection against the use of excessive force.  *Pierce v. Multnomah*

The Court then explained that "As in other Fourth Amendment contexts... the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." The Court also cautioned, "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

**(C) Objective Standard of Reasonableness**

An objective standard of reasonableness requires the finder of fact to view the circumstances from the standpoint of a hypothetical reasonable person, absent the unique particular physical and psychological characteristics of the defendant.

A subjective standard of reasonableness asks whether the circumstances would produce an honest and reasonable belief in a person having the particular mental and physical characteristics of the defendant, such as their personal knowledge and personal history, when the same circumstances might not produce the same in a general reasonable person.

The Court then outlined a non-exhaustive list of factors for determining when an officer's use of force is objectively reasonable: "the severity of the crime at issue", "whether the suspect poses an immediate threat to the safety of the officers or others", and "whether he is actively resisting arrest or attempting to evade arrest by flight".

In *Hyde v. City of Willcox*, 23 F.4th 863 (9th Cir. 2022), the Ninth Circuit held that the use of force is constitutionally excessive when officers continue to use force after a pretrial detainee had been restrained and is not resisting, at least where the officers had sufficient time to realize that the defendant could no longer resist and did not pose a threat. "The following considerations may bear on the reasonableness (or unreasonableness) of the force used: 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Id.* at 870 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "The most important factor is whether the suspect posed an immediate threat." *Id.* (citng *Mattos v.*

14

*Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)). "This analysis is not static, and the reasonableness of force may change as the circumstances evolve." *Id.* (citing *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017)).

Defendant Benavidez stated in his sworn statement that he shot Benson as he was attempting to push up off the ground because he was tired. There is not one piece of evidence that the defendant provided stating that he was relying on section 9.52 when he shot Benson. The Defendant stated in his sworn statement that he shot Benson because he was exhausted and wanted to protect the public. Not once nowhere did the Defendant recite Texas Penal Code 9.52 as a defense. (Exhibit #7 pgs. 1-3)

Analyzing this case using the non-exhaustive list. Benson was arrested on a nonviolent drug case. At the time he was shot he was not a threat to the officer or the public and he was not actively resisting arrest. At the time Benavidez shot Benson he did not state that 9.52 was on his mind. Defendant Benavidez stated in his deposition that he did not remember any of his deadly force training. When asked to define deadly force Benavidez he stated to protect the public. (Benavidez Depo 13:23-25, 14:1-25, 15:1-25, 16:1-25, 17:1-25)

### (3) **Plaintiff Failed to Demonstrate Why His Case is not Barred by Heck v. Humphrey**

The Plaintiff explained in detail how his present claims elements did not invalidate or challenge his original conviction. Benson is not alleging that Deputy Benavidez falsely arrested him, instead, Benson is saying that Deputy Benavidez made a lawful arrest in an unlawful manner. Therefore, a judgement in Benson favor in his civil case, will have no effect on the validity of his escape conviction.

*Heck v. Humphrey*, 512 U.S. 477 explained that a prisoner may not "seek damages in a §
1983 suit" if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his
conviction or sentence." *Heck*, 512 U.S. at 487.

In *Heck*, the Supreme Court held that, in order to recover damages for an allegedly
unconstitutional conviction or imprisonment, or for other harm caused by actions whose
unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that
"the conviction or sentence has been reversed on direct appeal, expunged by executive order,
declared invalid by a state tribunal authorized to make such a determination, or called into
question by a federal court's issuance of a writ of habeas corpus." Id. at 486–87. "A claim for
damages bearing that relationship to a conviction or sentence that has not been so invalidated is
not cognizable under § 1983." Id. at 487.

A court faced with a suit for damages under § 1983 must first "consider whether a
judgment in favor of the plaintiff would necessarily imply the invalidity of his sentence." *Heck*,
512 U.S. at 487. If so, the complaint must be dismissed "unless the plaintiff can demonstrate that
the sentence has already been invalidated." The court must undertake an analysis of whether a
judgment in favor of Plaintiff on his current claims of excessive force would invalidate his
underlying conviction of Escape.

Accordingly, we look to the state court records relating to Plaintiff's underlying criminal
conviction, and then compare those crimes for which Plaintiff was convicted to the elements of
the present claims. See generally Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997); *Wisneski v.
Denning*, 2014 WL 1758118, at *12 (W.D. Pa. 2014) ("Application of the Heck rule is, of
necessity, a fact-intensive inquiry by which a court must determine what essential facts were
determined by the jury in the criminal trial, and what affect those decisions have on a later §

16

1983 claim."). State Court Records reflects that Plaintiff was charged with Escape Texas Penal Code Sec. 38.06 (C). Court records show that the Plaintiff plead guilty to the crime of Escape.

**(A) Elements of Texas Penal Code 38.06**

Plaintiff's Escape charge was based on Texas Penal Code 38.06 which provides that "a person commits this offense:

(A) if the person escapes from custody when the person is (1) under arrest for, lawfully detained for, charge with, or convicted of an offense; (2) in custody pursuant to an lawful order of the court; (3) detained in a secure detention facility, as that term is defined by section 51.02 (Definitions), family code; or (4) in custody of a juvenile probation officer for violating an order imposed by a juvenile court under Section 52.01 (Taking into Custody; Issuance of Warning Notice), Family Code.

(B) except as provided in subsection (c), (d), and (e), an offense under this section is a class A misdemeanor.

(C) an offense under this section is a felony of the third degree if the actor is (1) under arrest for, charged with, or convicted of a felony; (2) is confined or lawfully detained in a secure correctional facility or law enforcement facility; or (3) is committed to or lawfully detained in a secure correctional facility, as defined by Section 51.02 (Definitions), family code, other than a halfway house, operated by or under contact with the Texas Juvenile Justice Department.

(D) an offense under this section is a felony of the second degree if the actor to affect his escape causes bodily injury.

(E) an offense under this section is a felony of the first degree if to affect his escape the actor: (1) causes serious bodily injury; or (2) uses or threatens to use a deadly weapon.

**(B) Elements of Fourth and Fourteenth Amendments**

The elements of Plaintiff's present claim for a Fourth Amendment Excessive Force Claim under 42 U.S.C. § 1983 requires a plaintiff to show: 1) defendant acted under state law; 2) while acting under color of state law, defendant deprived plaintiff of a federal constitutional right.

The elements of Plaintiff's present claim for a Fourteenth Amendment Excessive Force Claim under 42 U.S.C. § 1983 requires that: 1.) determination of reasonableness must be made from the perspective of a reasonable officer on the scene, including what the officer knew at the time; 2) must account for the "legitimate interests stemming from the government's need to manage the facility in which the individual is detained and; 3) appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.

Here, none of Plaintiff's present claims, the fourth or the fourteenth amendment claims, negates or calls into question any element of the crime of escape and none challenges the validity of Plaintiff's convictions. See *Garrison v. Porch*, 376 Fed.App'x 274 (3d Cir. 2010) (holding that arrestee's § 1983 and state law claims were not barred by the Heck doctrine despite his guilty plea to assaulting a police officer).

Accordingly, Plaintiff's claims of excessive force are not barred by the favorable termination requirement of *Heck v. Humphrey*. Therefore, Defendants' Motion for Summary Judgement should be denied in this regard.

**(4) Plaintiff's Response did not meet his burden to establish that qualified immunity does not apply.**

Qualified immunity shields individuals from suit unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted).

Qualified immunity "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (citation omitted).

When evaluating a qualified immunity defense, courts "consider only the facts that were knowable to the defendant officers." *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam); see also Cole, 935 F.3d at 456. We consider only what the officers knew at the time of their challenged conduct."). "Facts that an officer learns after the incident ends whether those facts would support granting immunity or denying it are not relevant." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam); Brown, 623 F.3d at 253

"A qualified immunity defense must be denied if (a) the defendant's action violate clearly established law, or (b) it was objectively unreasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996).

"Where a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment on the basis of qualified immunity must fail." *Johnson v. Ganim*, 342 F.3d 105, 117 (2d Cir. 2003).

In moving for summary judgment, Deputy Benavidez argues Plaintiff cannot establish an excessive force claim as a matter of law and Deputy Benavidez is entitled to qualified immunity.

Thus, the Court first examines whether Plaintiff can show a violation of his constitutional right to be free from excessive force and then considers whether that right was clearly established at the time of the Deputy's alleged misconduct. Then the court examines was it objectively unreasonable for the defendant to believe that his actions did not violate the law.

**(A) Violation of a Constitutional Right**

The Fourth Amendment confers a right to be free from excessive force during an arrest, investigatory stop, or other "seizure" of person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016).

The Fourteenth Amendment states, that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim. This determination must be made from the perspective of a reasonable officer including what the officer knew at the time. see *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443

First, "the court requires a plaintiff to have 'suffered at least some sort of injury." *Curtis v. Mosher*, No. 3:1 2-CV-4866-B, 2014 WL 2452571, at *8 (N.D. Tex. June 2,2014) (quoting *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). The "injury must be more than a de

minimis injury and must be evaluated in the context in which the force was deployed." *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005).

In this case the Plaintiff suffered a severe injury. His foot had to be amputated due to the gunshot wound he suffered.

**(B) Cleary excessive and objectively unreasonable**

The remaining two inquiries, whether Plaintiff's injury resulted from the use of clearly excessive and objectively unreasonable force, are "often intertwined." See *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

Determining whether force is excessive or unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id.

Additional considerations that "may bear on the reasonableness or unreasonableness of the force used include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiffs injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). Moreover, the "reasonableness" of a particular use of force is judged from the perspective of an officer at the scene, rather than the 20/20 vision of hindsight. Graham, 490 U.S. at 396.

It is undisputed that Deputy Benavidez shot Mr. Benson as he attempted to push up off the ground after falling over a wall. Benavidez admitted to shooting him because he was tired.

(Exhibit #6 pgs. 2-3) It is also undisputed that no one's life was in danger at the time Deputy Benavidez shot Benson. (Benavidez Depo 50:5-19)

Material fact disputes preclude judgment as a matter of law. A jury could conclude that a reasonable deputy would have found Deputy Benavidez's use of force clearly excessive and objectively unreasonable. Under the totality of the circumstances as alleged by Plaintiff, Benavidez shooting him while he was attempting to push up off the ground, because he was tired is excessive and unreasonable. Thus, a fact issue exists on whether Benavidez violated the Plaintiff's constitutional right to be free from excessive force.

**(C) Clearly Established Right**

At the time of the incident at issue, it was clearly established law that an officer violates the Fourth and Fourteenth Amendment if he unlawfully shots a person attempting to flee. Under Plaintiffs version of the facts, Deputy Benavidez unlawfully shot Benson because he was tired. Deputy Benavidez stated that in his affidavit. (Exhibit #6 pgs. 2-3)

A reasonable deputy would have known the Fourth Amendment constitutional implications of Tennessee v. Garner when using deadly force on a fleeing suspect. A reasonable Deputy would have known not to shoot a person because they were tired, which would be an excessive use of force. Deputy Benavidez was fired due to his actions being excessive.

A reasonable deputy would have known the Fourteenth Amendment constitutional implications of using deadly force on a fleeing pre-trial detainee. A reasonable Deputy would have known not to shoot a person because they were tired, which would be objectively unreasonable. Deputy Benavidez was fired due to his actions being unreasonable.

The Defendant should be denied qualified immunity because the Fourth Amendment requirements to be free from excessive force and the Fourteenth Amendment requirements to be free from objectively unreasonable force was clearly established at the time of the shooting incident and the deputy's actions were objectively unreasonable in light of this clearly established law.

Qualified immunity must be denied "'if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Genuine material fact issues preclude a determination of whether Deputy Benavidez is entitled to qualified immunity on Plaintiffs excessive force claim. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find Deputy Benavidez violated Plaintiffs right to be free from excessive use of force, a right clearly established at the time of Plaintiff's arrest.

Consequently, we request that the Court denies the Defendant's motion for summary judgment on Defendant's entitlement to qualified immunity concerning Plaintiffs excessive force allegation.

**(5) Plaintiff's Response incorrectly argues that Benavidez sought dismissal pursuant to Rule 12 (c), when in fact the Motion is for Summary Judgement pursuant to Rule 56.**

The defendant stated, Plaintiff inexplicably contends that Benavidez seeks dismissal pursuant to Rule 12 (c). Benavidez does not seek dismissal under Rule 12 (c) but seeks summary judgment based on the unchallenged evidence and legal authorities in his motion.

The first line in the section title Legal Standard in the Plaintiff's response states that the Defendant seeks judgment against the Plaintiff under Rules 12(c) and 56. That clearly means that the Plaintiff understood that the Defendant was seeking judgement under rule 56.

There is also a complete section that was dedicated to rule 56 in the Legal Standard section. That section stated Under Rule 56, summary judgment may be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing whether a dispute to any material fact exists, the court should consider all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 343 (5th Cir. 2007) (citations omitted).

## CONCLUSION AND PRAYER

Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could find that Defendants' actions in this case were clearly excessive, objectively unreasonable, violated Plaintiffs clearly established constitutional rights and are not legally barred by *Heck*.

Accordingly, Defendants' motions for summary judgment should be denied.

Jarvis D. Rice
Bar No. 24103597
Attorney for Plaintiff Dennis Benson
3306 Manzanita Lane
Manvel Texas 77578
P: (409) 888-0006
F: (832) 336-5954
Attorneyjarvisrice@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October 2022 the foregoing was served in accordance with the Federal Rules of Civil Procedure to the following counsel of record:

**Via electronic service**.

Genevieve B. McGarvey
Bryan R. Lasswell
McLeod, Alexander, Powel & Apffel,
P.C. 802 Rosenberg - P.O. Box 629 Galveston, Texas77553
dwpoole@mapalaw.com
brlasswell@mapalaw.com

Joseph R. Russo
Greer, Herz & Adams, LLP
One Moody Plaza, 18th Floor
Galveston TX 77550
JRusso@greerherz.com